**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

        Plaintiff,

        v.

Roxy Huber, in her capacity as Executive
    Director, Colorado Department of Revenue,

        Defendant.

_____

### FIRST AMENDED COMPLAINT
_____

     The Plaintiff, the Direct Marketing Association ("the DMA"), brings this complaint

for declaratory and injunctive relief against the Defendant, Roxy Huber, in her capacity

as the Executive Director of the Colorado Department of Revenue ("Department"), and

states as follows:

### Introduction

     1.    This is an action by the DMA, the nation's largest trade association of

businesses and nonprofit organizations marketing products directly to consumers via

mail order, telephone orders, and the Internet, to enjoin enforcement by the Defendant

of the unconstitutional requirements of a new Colorado law specifically targeted at out-

of-state retailers.  The new law represents an unprecedented attempt by the State, in

violation of multiple constitutional protections, to compel businesses and organizations located outside of Colorado to report to the Department the identities and purchasing behavior of their customers who reside both within and outside the state.   Effective March 1, 2010, the State of Colorado enacted House Bill 10-1193, an act "Concerning The Collection Of Sales And Use Taxes On Sales Made By Out-Of-State Retailers, And Making An Appropriation Therefor" ("the Act").   The Act purports to require retailers located outside the state who have no obligation to collect Colorado sales tax to notify each of their Colorado customers of the customer's obligation to self-report use tax, and to disclose to the Department the name and the amount of purchases of each Colorado customer.   The notice and reporting requirements of the Act, and of the regulations promulgated thereunder by the Department, violate both the United States Constitution and the Colorado Constitution by: (a) imposing discriminatory treatment on out-of-state retailers lacking any physical presence in the state; (b) trampling the right to privacy of Colorado residents, as well as certain non-residents; (c) chilling the exercise of free speech by certain purchasers and vendors of products that have expressive content; (d) exposing confidential information regarding consumers and their purchases to the risk of data security breaches; and (e) depriving retailers, without due process or fair compensation, of both the value of their proprietary customer lists and the substantial investment made to protect such lists from disclosure.  DMA members and their Colorado purchasers will suffer irreparable harm to their constitutionally protected rights and interests as a result of the notice and reporting requirements imposed under the Act.   The DMA, on behalf of its affected members and their customers, seeks a

declaration that the Act's provisions, and the Department's regulations to implement them, are unconstitutional, and also seeks an injunction preventing the Defendant from enforcing the Act.

## The Parties

2.     The Plaintiff, the Direct Marketing Association, is a not-for-profit corporation with headquarters in New York, New York.  Founded in 1917, the DMA is the leading trade association of businesses and nonprofit organizations using and supporting multichannel marketing methods, with more than 3,000 members from all fifty states and numerous foreign countries.  Members of the DMA market their products directly to consumers via catalogs, magazine and newspaper advertisements, broadcast media, and the Internet.

3.     The Defendant, Roxy Huber, is the duly appointed Executive Director of the Colorado Department of Revenue ("Department").  The Defendant is charged with the enforcement of the Act and the regulations promulgated by the Department pursuant to the Act.

## Jurisdiction and Venue

4.     The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, as well as jurisdiction under 42 U.S.C. § 1983, because the action presents multiple claims arising under the Constitution of the United States.  The Court also has jurisdiction under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908).  This lawsuit does not seek to enjoin, suspend or restrain the assessment, levy or collection of any tax.

5.     The Court has supplemental jurisdiction over the DMA's claims for violation of the Colorado Constitution pursuant to 28 U.S.C. § 1367(a), because such claims are so related to the DMA's claims for violation of the United States Constitution that they form part of the same case or controversy.  All of the DMA's claims arise out of the same statutory and regulatory requirements imposed on affected out-of-state retailers under the Act and have a common nucleus of operative facts.

6.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## Standing

7.     The DMA has standing to bring this action on behalf of affected DMA members and their customers pursuant to the standards for association standing established by the Supreme Court in *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333 (1977), and the principles of *jus tertii* standing set forth in *Craig v. Boren*, 429 U.S. 190 (1976).  A central purpose of the DMA is to advance the interests of direct marketers in securing fair and non-discriminatory treatment under both federal and state laws and regulations.  Hundreds of DMA members with no physical presence in Colorado who would have standing in their own right are purportedly subject to the unconstitutional notice and reporting requirements of the Act, which, in turn, directly implicate the privacy and free speech rights of the members' Colorado customers.  Affected DMA members face injuries as a result of the Act which are real, immediate and direct.  No individual retailer's participation is required for the relief sought by the DMA to redress the injuries suffered by DMA members — a declaration that the notice and reporting obligations imposed on out-of-state retailers

under the Act are unconstitutional, on their face and as applied, and an injunction prohibiting their enforcement.

### Factual Background

8.      Direct to consumer marketing via catalog, print and broadcast media, and the Internet allows business of all sizes, as well as non-profit organizations including educational, religious, political and advocacy groups, to reach consumers nationwide, including in Colorado.  The diversity of different organizations relying upon direct marketing methods, and of the products and services they offer to consumers, is virtually limitless.

9.      Retailers utilizing direct marketing methods do not need to have facilities, employees or personal property in a state to sell products and /or services to consumers in the state.  Many direct marketers have no physical presence in Colorado, but sell products and services to Colorado consumers from outside the state using the instrumentalities of interstate commerce.

10.     The ability to reach a nationwide clientele allows and encourages specialized businesses and organizations engaged in direct marketing to target their products and services to consumers having very specific interests, needs and preferences.  Consequently, many businesses and organizations that sell directly to consumers are closely identified with particular product categories, personal concerns, and belief systems of relevance to their customers.  In many circumstances, the mere status of an individual as a customer of such a remote seller will reveal personal information about the purchaser, including not only the purchaser's private interests and

individual predilections, but also, for example, his or her religious beliefs, political opinions, medical conditions, financial situation, family issues, or sexual orientation.  In addition, many such remote sellers also offer products that contain or embody expressive content, including books, magazines, video and audio recordings, art work, and advocacy materials concerning the seller's particularized focus with respect to, among other things, potentially controversial, unpopular, revealing, personal and/or sensitive subject matters.

11.     The DMA is a national association of remote sellers, the great majority of whom are located outside of Colorado.

12.     The DMA's members include businesses and organizations engaged in every type of direct-to-consumer marketing and offering a vast array of different products and services.

13.     DMA members enter into remote sales transactions with thousands of Colorado consumers and businesses each day.

14.     The identities, contact information, and recent purchasing histories of a direct marketer's customers ("Customer List") constitute valuable, proprietary, trade secrets.  Retailers, including DMA members, invest substantial resources in compiling, maintaining and protecting from disclosure to competitors and other unauthorized third-parties such Customer Lists.

15.     Retailers, including DMA members, are obligated pursuant to numerous federal and state laws, as well as their own privacy policies, to maintain the confidentiality of certain information collected from customers and to protect it from

unauthorized disclosure to third-parties.  Retailers invest substantial resources to ensure that such confidential customer information is protected against data breaches that may expose customers to a risk of identity theft or other injury.

16.     Retailers with a physical presence in Colorado are required under Colorado law to obtain a sales tax license from the Department and to collect and remit Colorado sales tax to the Department on all non-exempt, retail sales.

17.     Retailers that have no office, store, property, employees or other physical presence in Colorado are not obligated under Colorado law, and are protected by the Commerce Clause of the United States Constitution from being required, to collect Colorado sales tax on retail sales to Colorado consumers.  Many DMA members with no physical presence in Colorado do not collect Colorado sales tax.

18.     For retail sales on which the retailer does not collect sales tax, Colorado law requires the purchaser to self-report the transaction and remit use tax to the Department.

19.     Colorado purchasers are expected to report their use tax liability on a Colorado Consumer Use Tax Return, Form DR 0252W.

20.     Colorado's Individual Income Tax Return, Form 104, does not include a section enabling Colorado taxpayers to report their use tax when reporting their state income tax.  The individual income tax returns of more than twenty other states include a section for a taxpayer to report and pay consumer's use tax in order to facilitate their citizens' self-reporting of use tax.

**The Act's Notice and Reporting Provisions and the Obligations
Imposed On Out-Of-State Retailers Under The Act and Department Regulations**

21.     Enacted in February 2010, the Act imposes new notice and reporting

obligations upon "each retailer that does not collect Colorado sales tax," as codified at

Colorado Revised Statutes § 39-21-112(3.5).  Because retailers that are located in

Colorado must collect Colorado sales tax, each retailer that does not collect Colorado

sales tax is, by definition, located outside the state.  Thus, the Act imposes notice and

reporting obligations solely on retailers who have no physical presence in Colorado and

who make sales to Colorado purchasers via the instrumentalities of interstate

commerce.  The Act does not impose these notice and reporting obligations upon

Colorado retailers.

22.     Under the Act, each retailer that does not collect Colorado sales tax is

required to: (a) notify its customers that Colorado sales tax is due on certain sales by

the retailer and that the purchaser is required to report such tax to the Department

("Transactional Notice"); (b) send to each Colorado customer by First Class Mail an

annual statement containing certain information regarding the customer's purchases

during the prior year and informing the customer that s/he is required to report sales/use

tax to the Department ("Annual Purchase Summary"); and (c) file with the Department

an annual report identifying each Colorado purchaser and setting forth the total amount

of the customer's purchases from the retailer during the prior calendar year ("Customer

Information Report").  C.R.S. § 39-21-112(3.5).

23.     The Department has promulgated regulations that set forth requirements

for the content and delivery of the Transactional Notice, the Annual Purchase Summary,

and the Customer Information Report.  On February 28, 2010, the Department

promulgated an emergency regulation regarding the Transactional Notice that applies

prior to the effective date of permanent regulations.  On June 18, 2010, the Department

modified the emergency regulation and adopted a permanent regulation for the

Transactional Notice, the Annual Purchase Summary, and the Customer Information

Report ("Regulations").

24.     The Act by its terms applies to all businesses and organizations that sell

goods at retail to Colorado purchasers and do not collect Colorado sales tax.  The

Regulations provide that retailers whose Colorado sales are "de minimis" within the

meaning of the Regulations are not subject to the Act's notice and reporting

requirements.  Reg. 39-21-112.3.5(1)(a)(iii).   Many DMA members with no physical

presence in Colorado that do not collect Colorado sales tax have annual gross sales in

Colorado, and reasonably expect future annual gross sales in Colorado, that exceed the

"de minimis" amount set forth in the Regulations and thus are affected by the

requirements of the Act and Regulations.

25.     The Regulations define "Colorado purchaser" to mean, with respect to

sales of goods that are shipped, any purchaser who requests that goods be shipped to

Colorado, including a purchaser located outside of Colorado who requests that the

goods purchased be shipped to a recipient located in Colorado.   Reg. 39-21-

112.3.5(1)(b)(i).  The Regulations do not require that the out-of-state purchaser have

any connection to Colorado other than requesting that goods be shipped into the state.

Colorado purchasers are thus defined to include not only Colorado residents, but also

any residents of other states who purchase from an affected out-of-state retailer and request that the retailer ship the goods to a location in Colorado.  On information and belief, each year there are hundreds of thousands of Colorado purchasers who make purchases from affected out-of-state retailers.

26.     Under the Act and Regulations, out-of-state retailers that agree to collect Colorado sales tax, even though they have no obligation to collect sales tax under Colorado law and the United States Constitution, are not required to comply with the requirements for Transactional Notice, Annual Purchase Summary, or Customer Information Report.

27.     The Department's Tax Policy Director has stated publicly that he believes most affected retailers would choose to collect Colorado sales tax to avoid the more unpleasant option of having to send tax notices to their customers.

28.     The Act and Regulations contain no provisions setting data security standards to which the Department must, or will seek to, adhere, in order to ensure the protection of the Customer List information that must be submitted to the Department by affected retailers in their Customer Information Reports.

29.     The Department was cited in a May 2008 Report of the State Auditor for its failure to take appropriate measures to protect the confidentiality of personally identifiable information that it maintains in its databases.

30.     The Act includes an appropriation of moneys from the General Fund, not otherwise appropriated to the Department, for implementation of the Act.   According to the Colorado Legislative Counsel Staff Fiscal Note dated February 8, 2010 ("Fiscal

Note"), only $30,000 is appropriated by the Act for Operating Expense and Capital Outlay, with the remainder appropriated for the cost of full time or temporary employees of the Department.  On information and belief, and based on the Fiscal Note, this $30,000 appropriation is intended for the development of an online tax payment system for consumer's use tax by customers of affected out-of-state retailers whose names and purchase information must be included in the Customer Information Reports, rather than to implement measures to safeguard the Customer List information submitted by affected retailers.

31.     The Fiscal Note indicates that the Department will hire one half-time employee whose responsibilities will be to "maintain records regarding online retailers, including seeking out and investigating retailers, sending letters, responding to calls, and building a database to track information."

32.     On information and belief, the Act contains no appropriation for the Department to develop or implement procedures or systems to ensure the security of the confidential, valuable, proprietary Customer Lists to be submitted by affected out-of-state retailers in their Customer Information Reports, or to protect the private, personal information of the retailers' Colorado consumers contained in such Customer Information Reports.

<u>The Transactional Notice</u>

33.     Under the Act and Regulations, each retailer that does not collect Colorado sales tax is required, in connection with each sale to a Colorado purchaser, to provide a Transactional Notice informing the purchaser that: (a) the retailer does not

collect Colorado sales tax; (b) the purchase is not exempt from Colorado sales or use tax merely because it is made over the Internet or by other remote means; and (c) that the State of Colorado requires the purchaser to file a sales or use tax return and pay the tax on those purchases.  *See* C.R.S. § 39-21-112(3.5)(c); Reg. 39-21-112.3.5(2)(b). The Transactional Notice must be clearly legible and prominently displayed to the customer.   Reg. 39-21-112.3.5(2)(d).

34.    Affected retailers that fail to provide the Transactional Notice to Colorado purchasers in connection with each sale are penalized five dollars for each such failure. C.R.S. § 39-26-112(3.5)(c)(II); Reg. 39-21-112.3.5(2)(f).

35.    Affected out-of-state retailers must incur time and expense, and alter their standard business practices, to comply with the Transactional Notice requirements.

36.    Colorado retailers are not required to give the Transactional Notice and are not subject to the same burdens imposed on out-of-state retailers by the Act and Regulations.

<u>The Annual Purchase Summary</u>

37.    The Act requires each retailer that does not collect Colorado sales tax to send an Annual Purchase Summary to each of its Colorado purchasers by January 31 of each year concerning the prior calendar year. C.R.S. § 39-21-112(3.5)(d)(I)(A). Pursuant to the Department's Regulations, affected retailers may, but are not required to, send the Annual Purchase Summary to certain purchasers whose purchases are deemed "de minimis" under the Regulations.  Reg. 39-21-112.3.5(3)(c).   Many affected DMA members have Colorado purchasers whose purchases exceed the "de minimis"

amount set forth in the Regulations and will be required to send one or more Annual Purchase Summaries to Colorado purchasers.

38.     Under the Act and Regulations, each affected out-of-state retailer is required to send the Annual Purchase Summary separately to its Colorado purchasers via First-Class Mail, not included with other shipments, and must include the words "Important Tax Document Enclosed" on the exterior of the mailing.  C.R.S. § 39-21-112(3.5)(d)(I)(B); Reg. 39-21-112.3.5(3)(a)(i).  Because the term "Colorado purchaser" includes customers located outside the state who request that goods be shipped into Colorado, affected out-of-state retailers are required to send the Annual Purchase Summary to certain customers residing outside of Colorado.

39.     The Annual Purchase Summary provided to Colorado purchasers must state the total dollar amount of the customer's Colorado purchases from the retailer in the previous calendar year, including the date, amount and category of each purchase from the retailer.  The Annual Purchase Summary must also inform the purchaser that the State of Colorado requires the purchaser to file a sales or use tax return and pay tax on taxable purchases made from the retailer on which no tax was collected.  C.R.S. § 39-21-112(3.5)(d)(I)(A); Reg. 39-21-112.3.5(3)(a)(ii), (iii).   The Annual Purchase Summary must also inform the customer that the retailer is required by law to report to the Department the total dollar amount of purchases made by the purchaser.  Reg. 39-21-112.3.5(3)(a)(iv).

40.     Under the Act and Regulations, affected out-of-state retailers that fail to send Annual Purchase Summaries to Colorado purchasers are penalized ten dollars for

each such failure, absent reasonable cause.  C.R.S. § 39-21-112(3.5)(d)(III)(A); Reg. 39-21-112.3.5(3)(d).

41.     Affected out-of-state retailers who are required to provide customers the Annual Purchase Summary will incur substantial time and expense in preparing and mailing such Annual Purchase Summaries, including, but not limited to, computer programming costs and the postage charges associated with sending Annual Purchase Summaries to customers via First-Class Mail.

42.     The standard United States Postal Service ("USPS") charges for letters sent via First-Class Mail begin at $0.44 per mail piece, and increase with size and weight.  Such rates are set forth at:

http://www.usps.com/send/waystosendmail/senditwithintheus/firstclassmail.htm.

43.     A substantial majority of Colorado consumers who purchase from out-of-state retailers, when informed that an out-of-state retailer must report their names and the amount of their purchases to the Department, consider such reporting an invasion of their privacy and will discontinue or decrease their purchases from such retailers as a result.  On information and belief, customers of affected out-of-state retailers who reside outside of Colorado will likewise consider the reporting of their names and purchase amounts to the Department – a revenue agency in a foreign state – improper and an invasion of their privacy, and may discontinue or decrease their purchases from affected retailers as a result.  Affected retailers who comply with the Annual Purchase Summary requirements thus risk losing sales and alienating customers, and face substantial monetary penalties under the Act if they do not comply.

44.     Colorado retailers are not subject to the same burdens or expense because they are not required to provide their customers the Annual Purchase Summary.

<u>The Customer Information Report</u>

45.     Each retailer that does not collect Colorado sales tax is required to file with the Department on or before March 1 of each year a Customer Information Report concerning its Colorado purchasers showing the total amount paid by the customer for purchases from the retailer during the prior calendar year.   C.R.S. § 39-21-112(3.5)(d)(II).

46.     The Customer Information Report must include, in regard to each Colorado purchaser: the name of the customer; the billing address of the customer; all shipping addresses used by the customer; and the total dollar amount of purchases for the customer. Reg. 39-21-112.3.5(4)(a), (b).

47.     An affected out-of-state retailer who provides any customer with an Annual Purchase Summary is required to include in its Customer Information Report filed with the Department information with respect to all of the retailer's Colorado purchasers, even those customers whose purchases were deemed "de minimis."  Reg. 39-21-112.3.5(4)(e).  Many affected DMA members have Colorado purchasers whose purchases exceed the "de minimis" amount set forth in the Regulations and will be required to file a Customer Information Report with the Department.  Because affected out-of-state retailers are not required to provide an Annual Purchase Summary to "de minimis" Colorado purchasers but, nonetheless, are required to include the name,

address, "ship to" information, and purchase amount for such "de minimis" purchasers in the Customer Information Report submitted to the Department, many Colorado purchasers will receive no prior notice that their name, address and purchase amount information are being provided to the Department.

48.     Moreover, because the Regulations provide that the term "Colorado purchaser" includes customers located outside of Colorado who ship goods into the state, affected out-of-state retailers will be required to report to the Department not only the names, addresses, "ship to" information, and purchase amounts of the retailers' Colorado customers, but also the names, addresses, "ship to" information and purchase amounts of many customers residing in states other than Colorado.

49.     Affected retailers with more than $100,000 in Colorado gross sales during the prior calendar year are required to file the Customer Information Report electronically.  Reg. 39-21-112.3.5(4)(c).  The Regulations contain no standards for data security concerning the transmission, receipt, maintenance or disposal of Customer Information Reports filed by out-of-state retailers.

50.     Moreover, there is a substantial risk of public disclosure of the purchasers' personal information submitted to the Department.  The Act contains no provision restricting the release of information contained within the Customer Information Reports. In addition, the Department has been cited in the past for failing to take adequate steps to ensure the security of personally identifiable information in its custody.  Whether through intention, inadvertence, misconduct, or data breach, there is a real risk that

sensitive, personal information contained in the Customer Information Reports will become public.

51.     Under the Act, affected out-of-state retailers that fail to file the Customer Information Report with the Department are penalized ten dollars for each Colorado purchaser whose information should have been included in the Customer Information Report, absent reasonable cause.  C.R.S. § 39-21-112(3.5)(d)(III)(B).

52.     A substantial majority of Colorado consumers who purchase from out-of-state retailers, when informed that an out-of-state retailer must report their names and the amount of their purchases to the Department, consider such reporting an invasion of their privacy and will discontinue or decrease their purchases from such retailers as a result.  On information and belief, customers of affected out-of-state retailers who reside outside of Colorado will likewise consider the reporting of their names and purchase amounts to the Department – a revenue agency in a foreign state – an invasion of their privacy, and may discontinue or decrease their purchases from affected retailers as a result.  Affected retailers who comply with the Customer Information Report requirements thus risk losing sales and alienating customers, and face substantial monetary penalties under the Act if they do not comply.

53.     Colorado retailers are not subject to the same burdens or expense as affected out-of-state retailers because they are not required to file a Customer Information Report with the Department for all of their Colorado customers and out-of-state "Colorado purchasers."

<u>**COUNT I**</u>
<u>**Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201**</u>
<u>**For Discrimination Against Interstate Commerce in Violation**</u>
<u>**of the Commerce Clause of the United States Constitution, Art. I, Sec. 8, Cl. 3**</u>

54.     The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–53 as if fully set forth herein.

55.     The Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3, provides that Congress has the power to regulate commerce among the states.  Under the Commerce Clause, state laws may not discriminate against or burden interstate commerce.

56.     The Act and Regulations discriminate against interstate commerce.

57.     The Act and Regulations impose upon out-of-state retailers who do not collect Colorado sales tax, including affected DMA members, notice and reporting obligations concerning the Transactional Notice, the Annual Purchase Summary, and the Customer Information Report that the Act does not impose on Colorado retailers.

58.     The Transactional Notice, the Annual Purchase Summary, and the Customer Information Report requirements burden affected out-of-state retailers to the benefit of in-state retailers with whom they compete.

59.     Affected out-of-state retailers will incur compliance costs that Colorado retailers will not incur, including, but not limited to, the costs of sending the Annual Purchase Summary to each Colorado customer via First-Class Mail.

60.     Affected out-of-state retailers will lose sales and revenue as a result of the Act's requirements.  Many Colorado consumers are less likely to purchase products from out-of-state retailers who must file a Customer Information Report with the

Department regarding the consumer's Colorado purchases from the retailer, because they consider such disclosure an invasion of their privacy.  Many such consumers will instead seek to purchase the same or similar items from a retailer located in Colorado that is not required to file a Customer Information Report.  Affected retailers will also alienate customers who reside outside of Colorado and whose name, address and purchase amount information must be reported to the Department under the Regulations.

61.     Affected out-of-state retailers who fail to comply with the requirements of the Act and Regulations are subject to substantial monetary penalties under the Act.

62.     There is no legitimate justification for the Act's discriminatory treatment of out-of-state retailers that cannot be served by reasonable nondiscriminatory alternatives.

63.     As the state official charged with enforcement of the Act and Regulations, the Defendant is liable pursuant to 42 U.S.C. § 1983 for the deprivation of the rights secured for out-of-state retailers by the Commerce Clause.

64.     This Court is empowered, pursuant to 28 U.S.C. § 2201(a), to declare the rights of affected out-of-state retailers, including DMA members.

65.     The DMA is entitled to declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. § 1988, as requested below.

**COUNT II**
**Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201**
**For Improper Regulation of Interstate Commerce in Violation**
**of the Commerce Clause of the United States Constitution, Art. I, Sec. 8, Cl. 3**

66.     The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–65 as if fully set forth herein.

67.     The Commerce Clause of the United States Constitution limits the power of the states, including Colorado, to regulate interstate commerce.

68.     Under the Commerce Clause, there must be a sufficient, minimum connection between an out-of-state retailer and a state, in the form of a physical presence, before the state may impose regulatory obligations on such retailers of the type imposed by the Act and Regulations.  The Commerce Clause further bars state laws that unduly burden interstate commerce.

69.     The State of Colorado lacks sufficient connection to the out-of-state retailers targeted by the Act's notice and reporting requirements to allow the State to impose such obligations upon them consistent with the Commerce Clause.

70.     The requirements with respect to the Transactional Notice, the Annual Purchase Summary, and the Customer Information Report imposed under the Act and Regulations expressly apply only to out-of-state retailers, including DMA members, with no physical presence in Colorado.  Affected retailers who fail to comply with the requirements of the Act and Regulations are subject to substantial monetary penalties under the Act.

71.     The notice and reporting requirements imposed under the Act and Regulations also seek to regulate transactions in interstate commerce between non-

Colorado retailers and non-Colorado purchasers, by requiring affected retailers to provide Annual Purchase Summaries to so-called "Colorado purchasers" located entirely outside the state, and by requiring affected retailers to include such so-called "Colorado purchasers" located outside the state in the Customer Information Reports filed with the Department.

72.      The Act and Regulations do not promote a constitutionally significant interest of local concern that justifies the improper and burdensome regulation of interstate commerce.

73.      By relieving out-of-state sellers who agree to collect Colorado sales tax on purchases by Colorado customers from the Act's requirements and penalty provisions, the Act further seeks improperly to coerce affected out-of-state sellers to surrender their protection under the Commerce Clause in order to avoid the burdens and penalties imposed by the Act.

74.      The requirements with respect to the Transactional Notice, the Annual Purchase Summary, and the Customer Information Report are invalid under the Commerce Clause.

75.      As the state official charged with enforcement of the Act and Regulations, the Defendant is liable pursuant to 42 U.S.C. § 1983 for the deprivation of the rights secured for out-of-state retailers by the Commerce Clause.

76.      This Court is empowered, pursuant to 28 U.S.C. § 2201(a), to declare the rights of affected out-of-state retailers, including DMA members.

77.     The DMA is entitled to declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. § 1988, as requested below.

**COUNT III**
**Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201**
**For Violation of the Right of Privacy of Colorado Consumers**
**Guaranteed under the United States Constitution**

78.     The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–77 as if fully set forth herein.

79.     The United States Constitution protects an individual's right of privacy with respect to information concerning personal matters.

80.     An individual's status as a purchaser from certain businesses and organizations, including various direct marketers, will reveal personal information about the purchaser, including not only the purchaser's private interests and individual predilections, but also, among other things, potentially his or her religious beliefs, political opinions, medical conditions, financial situation, family concerns, or sexual orientation.  Colorado purchasers making purchases from such businesses and organizations have a reasonable expectation of privacy with respect to their purchasing information.

81.     Non-profit organizations, including political, educational, social, literary, religious, and advocacy groups, making sales at retail are deemed to be "retailers" required to collect sales tax on sales of non-exempt products and services under Colorado law.  Out-of-state nonprofit organizations that make non-exempt retail sales and do not collect Colorado sales tax are, therefore, subject to the Act's notice and reporting requirements.

82.     The requirement to file a Customer Information Report applies to all affected out-of-state businesses and organizations without any exception for retailers whose identity, mission or product line will reveal personal matters concerning their customers.  Moreover, affected out-of-state retailers must file a Customer Information Report regarding not only Colorado consumers, but also certain customers residing in states other than Colorado, including "de minimis" purchasers both inside and outside the state who will receive no prior notice that their information is being provided to the Department.  Affected retailers who fail to comply with the requirements of the Act and Regulations are subject to substantial monetary penalties under the Act.

83.     The requirement of the Act and Regulations that each retailer that does not collect Colorado sales tax must file a Customer Information Report with the Department is overbroad and will, in a substantial number of its applications, result in the disclosure to the Department of personal information regarding Colorado purchasers that is protected from disclosure by the right of privacy guaranteed under the United States Constitution.

84.     The privacy interests of Colorado purchasers with respect to purchasing information that reveals protected personal matters outweigh any interest the State of Colorado has in obtaining such purchasing information from out-of-state retailers.

85.     The Act and Regulations contain no provisions by which a Colorado purchaser whose protected personal matters will be reported to the Department in a Customer Information Report may assert his or her right to privacy before disclosure of such information to the Department occurs.  Moreover, there is no requirement that "de

minimis" purchasers receive any formal notice that affected retailers are required to submit their names and purchasing information to the Department.  The Act and Regulations thus fail to establish an appropriate legal process to ensure protection of an individual's privacy rights.

86.     As the state official charged with enforcement of the Act and Regulations, the Defendant is liable pursuant to 42 U.S.C. § 1983 for the deprivation of the privacy rights of Colorado purchasers secured by the Constitution.

87.     The DMA has standing to assert the rights of Colorado purchasers because the Act imposes upon out-of-state retailers, including affected DMA members, the requirement to disclose the private, personal information of their Colorado customers.

88.     This Court is empowered, pursuant to 28 U.S.C. § 2201(a), to declare the rights of Colorado purchasers and out-of-state retailers.

89.     The DMA is entitled to declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. § 1988, as requested below.

<u>**COUNT IV**</u>
<u>**Pursuant to C.R.S. § 13-51-101 et seq. and 28 U.S.C. § 2201**</u>
<u>**For Violation of the Right of Privacy of Colorado Consumers**</u>
<u>**Guaranteed under the Colorado Constitution**</u>

90.     The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–89 as if fully set forth herein.

91.     The Colorado Constitution protects an individual's right of privacy with respect to information concerning personal matters.

92.     An individual's status as a purchaser from certain businesses and organizations, including various direct marketers, will reveal personal information about the purchaser, including not only the purchaser's private interests and individual predilections, but also, among other things, potentially his or her religious beliefs, political opinions, medical conditions, financial situation, family issues, or sexual orientation.  Colorado purchasers making purchases from such businesses and organizations have a reasonable expectation of privacy with respect to their purchasing information.

93.     Non-profit organizations, including political, educational, social, literary, religious, and advocacy groups, making sales at retail are deemed to be "retailers" required to collect sales tax on sales of non-exempt products and services under Colorado law.  Out-of-state nonprofit organizations that make non-exempt retail sales and do not collect Colorado sales tax are, therefore, subject to the Act's notice and reporting requirements.

94.     The requirement to file a Customer Information Report applies to all affected out-of-state businesses and organizations without any exception for retailers whose identity, mission or product line will reveal personal matters concerning their customers.  Moreover, affected out-of-state retailers must file Customer Information Reports regarding not only Colorado consumers, but also certain customers residing in states other than Colorado, including "de minimis" purchasers both inside and outside the state who will receive no formal notice that their information is being provided to the

Department.  Affected retailers who fail to comply with the requirements of the Act and Regulations are subject to substantial monetary penalties under the Act.

95.     The requirement of the Act and Regulations that each retailer that does not collect Colorado sales tax must file a Customer Information Report with the Department is overbroad and will, in a substantial number of its applications, result in the disclosure to the Department of personal information regarding Colorado consumers that is protected from disclosure by the right of privacy guaranteed under the Colorado Constitution.

96.     The Act and Regulations contains no provisions by which a customer whose protected personal matters will be reported to the Department in a Customer Information Report may assert his or her right to privacy before disclosure of such information to the Department occurs.   Moreover, there is no requirement that "de minimis" purchasers receive any formal notice that affected retailers are required to submit their names and purchasing information to the Department.  The Act and Regulations thus fail to establish an appropriate legal process to ensure protection of an individual's privacy rights.

97.     The privacy interests of Colorado purchasers with respect to purchasing information that reveals protected personal matters outweigh any interest the State of Colorado has in obtaining such purchasing information from out-of-state retailers.

98.     The DMA has standing to assert the rights of Colorado purchasers because the Act imposes upon out-of-state retailers, including affected DMA members,

the requirement to disclose the private, personal information of their Colorado

customers.

99.     This Court is empowered, pursuant to 28 U.S.C. § 2201(a) and C.R.S. §

13-51-101 et seq., to declare the rights of Colorado purchasers and out-of-state

retailers.

100.     The DMA is entitled to declaratory and injunctive relief, as requested

below.

**COUNT V**
**Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201**
**For Violation of the Right of Free Speech of Out-Of-State Retailers**
**and of Colorado Consumers Guaranteed under the**
**First and Fourteenth Amendments to the United States Constitution**

101.     The DMA repeats and incorporates by reference each of the allegations

set forth in paragraphs 1–100 as if fully set forth herein.

102.     The First Amendment to the United States Constitution prohibits laws that

abridge the freedom of speech.

103.     The First Amendment applies to the State of Colorado under the

Fourteenth Amendment to the United States Constitution.

104.     The right to freedom of speech guaranteed by the Constitution applies to

both distributors and recipients of expressive content.

105.     Many businesses and organizations that employ direct marketing methods

and sell products and services at retail are highly specialized and closely associated

with particular ideas, issues, opinions, and beliefs.  Many such retailers offer, either

primarily or exclusively, products containing expressive content concerning particular ideas, issues, opinions, and beliefs.

106.    An individual's status as a purchaser from such businesses and organizations may reveal information regarding the expressive content of products obtained by the purchaser.

107.    Nonprofit organizations, including political, educational, social, literary, religious, and advocacy groups, making sales at retail are deemed to be "retailers" required to collect sales tax on sales of non-exempt products and services under Colorado law.  Out-of-state nonprofit organizations that make retail sales and do not collect Colorado sales tax are, therefore, subject to the Act's notice and reporting requirements.

108.    The requirement to file a Customer Information Report applies to all affected out-of-state businesses and organizations without any exception for retailers whose identity, mission or product line(s) implicate the free speech rights of their customers.  Moreover, affected out-of-state retailers must file Customer Information Reports regarding not only Colorado consumers, but also certain customers residing in states other than Colorado, including "de minimis" purchasers both inside and outside the state who will receive no formal notice that their information is being provided to the Department.  Affected retailers who fail to comply with the requirements of the Act and Regulations are subject to substantial monetary penalties under the Act.

109.    The requirement of the Act and Regulations that each retailer that does not collect Colorado sales tax must file a Customer Information Report with the

Department is overbroad and will result in the disclosure of information regarding the expressive content of products obtained by Colorado consumers in a substantial number of its applications.

110.    The required disclosure of such information to the Department in the Customer Information Report will have a chilling effect on the exercise of the right to freedom of speech guaranteed by the Constitution by consumers with regard to purchasing and obtaining information and expressive content, and by retailers with regard to selling and distributing expressive content.

111.    Moreover, as set forth above, there is a substantial risk of disclosure of the purchasers' personal information to the public that will further chill the exercise of free speech rights by Colorado purchasers and retailers.

112.    The State of Colorado has no interest, let alone a compelling interest, that justifies interfering with the free speech rights of out-of-state retailers and of consumers both within and outside of Colorado.  Any purported State interest advanced by the Act could be achieved through alternative means.

113.    As the state official charged with enforcement of the Act and Regulations, the Defendant is liable pursuant to 42 U.S.C. § 1983 for the deprivation of the privacy rights of Colorado purchasers secured by the Constitution.

114.    The DMA has standing to assert the rights of Colorado purchasers because the Act imposes upon out-of-state retailers, including affected DMA members, the requirement to disclose the identity of their Colorado customers.

115.   This Court is empowered, pursuant to 28 U.S.C. § 2201(a), to declare the rights of Colorado purchasers and out-of-state retailers.

116.   The DMA is entitled to declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. § 1988, as requested below.

**COUNT VI**
**Pursuant to Colorado Constitution, Art. II, Sec. 10,**
**C.R.S. § 13-51-101 et seq. and 28 U.S.C. § 2201**
**For Violation of the Right of Free Speech of Out-Of-State Retailers**
**and of Colorado Consumers Guaranteed under the Colorado Constitution**

117.   The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–116 as if fully set forth herein.

118.   Article II, Section 10 of the Colorado Constitution prohibits laws that impair the freedom of speech, and guarantees that every person shall be free to speak.

119.   The right to freedom of speech guaranteed by the Colorado Constitution applies to both distributors and recipients of expressive content.

120.   Many businesses and organizations that employ direct marketing methods and sell products and services at retail are highly specialized and closely associated with particular ideas, issues, opinions, and beliefs.  Many such retailers offer, either primarily or exclusively, products containing expressive content concerning particular ideas, issues, opinions, and beliefs.

121.   An individual's status as a purchaser from such businesses and organizations may reveal information regarding the expressive content of products obtained by the purchaser.

122.    Nonprofit organizations, including political, educational, social, literary, religious, and advocacy groups, making sales at retail are deemed to be "retailers" required to collect sales tax on sales of non-exempt products and services under Colorado law.  Out-of-state nonprofit organizations that make non-exempt retail sales and do not collect Colorado sales tax are, therefore, subject to the Act's notice and reporting requirements.

123.    The requirement to file a Customer Information Report applies to all affected out-of-state businesses and organizations without any exception for retailers whose identity, mission or product line(s) implicate the free speech rights of their customers.  Moreover, affected out-of-state retailers must file Customer Information Reports regarding not only Colorado consumers, but also certain customers residing in states other than Colorado, including "de minimis" purchasers both inside and outside the state who will receive no formal notice that their information is being provided to the Department.  Affected retailers who fail to comply with the requirements of the Act and Regulations are subject to substantial monetary penalties under the Act.

124.    The requirement of the Act and Regulations that each retailer that does not collect Colorado sales tax must file a Customer Information Report with the Department is overbroad and will result in the disclosure of information regarding the expressive content of products obtained by Colorado purchasers in a substantial number of its applications.

125.    The required disclosure of such information to the Department in the Customer Information Report will have a chilling effect on the exercise of the right to

freedom of speech guaranteed by the Colorado Constitution by consumers with regard to purchasing and obtaining information and expressive content, and by retailers with regard to selling and distributing expressive content.

126.    Moreover, as set forth above, there is a substantial risk of disclosure of the purchasers' personal information to the public that will further chill the exercise of free speech rights by Colorado purchasers and retailers.

127.    The State of Colorado has no interest, let alone a compelling interest, that justifies interfering with the free speech rights of out-of-state retailers and of consumers both within and outside of Colorado.  Any purported State interest advanced by the Act could be achieved through alternative means.

128.    As the state official charged with enforcement of the Act and Regulations, the Defendant is subject to suit for the deprivation of the privacy rights of Colorado purchasers secured by the Colorado Constitution.

129.    The DMA has standing to assert the rights of Colorado consumers because the Act imposes upon out-of-state retailers, including affected DMA members, the requirement to disclose the identity of their Colorado purchasers.

130.    This Court is empowered, pursuant to C.R.S. § 13-51-101 et seq. and 28 U.S.C. § 2201(a), to declare the rights of Colorado purchasers and affected retailers.

131.    The DMA is entitled to declaratory and injunctive relief, as requested below.

**COUNT VII**
**Pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and C.R.S. § 13-51-101 et seq.**
**For Depriving of Out-Of-State Retailers of Property Without Due Process of Law**
**In Violation of the Fourteenth Amendment to the United States Constitution**
**and Article II, Section 25 of the Colorado Constitution**

132.   The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–131 as if fully set forth herein.

133.   Section 1 of the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Colorado Constitution prohibit the State of Colorado from depriving any person of property without due process of law.

134.   The required disclosure by an affected out-of-state retailer of its Customer List of Colorado purchasers to the Department in the Customer Information Report compromises the value of the Customer List and deprives the disclosing retailer of its protected property right in the list, without due process of law.

135.   The Customer Lists of out-of-state retailers subject to the Act are valuable, proprietary trade secrets, in which such retailers make a substantial investment and have a protected property right.

136.   The Act and Regulations require each affected out-of-state retailer, including DMA members, to disclose its confidential, proprietary Customer List of Colorado purchasers to the Department in a Customer Information Report containing the personal information of all of its Colorado purchasers.

137.   The Department has no clear obligation under Colorado law to protect such Customer Lists from disclosure, and no obligation to provide the same level of data security for such information as the retailer provides.

138.     The Department has a history of failing to ensure the security of confidential data against risks of unauthorized disclosure.  The Act and Regulations make no provision for additional data security measures to protect the enormous volume of Customer List information that retailers are required to file with the Department in their Customer Information Reports.

139.     Affected retailers who fail to comply with the requirements of the Act and Regulations by filing a Customer Information Report are subject to substantial monetary penalties under the Act.

140.     As the state official charged with enforcement of the Act and Regulations, the Defendant is liable pursuant to 42 U.S.C. § 1983 and state law for the deprivation of the property rights of affected out-of-state retailers, including DMA members, secured by the United States and Colorado Constitutions.

141.     This Court is empowered, pursuant to 28 U.S.C. § 2201(a) and C.R.S. § 13-51-101 et seq., to declare the rights of out-of-state retailers.

142.     The DMA is entitled to declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. § 1988, as requested below.

**COUNT VIII**
**Pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and C.R.S. § 13-51-101 et seq.**
**For Taking of Property Without Due Process of Law**
**In Violation of the Fifth and Fourteenth Amendment to the United States**
**Constitution and Article II, Section 15 of the Colorado Constitution**

143.     The DMA repeats and incorporates by reference each of the allegations set forth in paragraphs 1–142 as if fully set forth herein.

144.    The Fifth Amendment to the United States Constitution and Article II, Section 15 of the Colorado Constitution prohibit the State of Colorado from taking private property for public use without just compensation.

145.    The Takings Clause of the Fifth Amendment applies to the State of Colorado under the Fourteenth Amendment to the United States Constitution.

146.    The requirement of the Act that an affected out-of-state retailer must disclose its Customer List of Colorado purchasers to the Department in the Customer Information Report constitutes, on its face, a final decision by the Colorado General Assembly to take the retailer's private property for public use. The Act provides no mechanism for compensating the retailer for the taking of its property.

147.    The Customer Lists of out-of-state retailers subject to the Act are valuable, proprietary trade secrets, in which such retailers make a substantial investment and have a protected property right.

148.    The Act and Regulations require each affected out-of-state retailer, including DMA members, to disclose its confidential, proprietary Customer List of Colorado purchasers to the Department in a Customer Information Report containing the personal information of all of its Colorado purchasers.

149.    The Department has no clear obligation under Colorado law to protect such Customer Lists from disclosure, and no obligation to provide the same level of data security for such information as the retailer provides.

150.    The Department has a history of failing to ensure the security of confidential data in its custody against risks of unauthorized disclosure. The Act and

Regulations make no provision for additional data security measures to protect the Customer List information that must be included in the Customer Information Report.

151.    Affected retailers who fail to comply with the Act's requirements are subject to substantial monetary penalties under the Act.

152.    As the state official charged with enforcement of the Act and Regulations, the Defendant is liable pursuant to 42 U.S.C. § 1983 and state law for the deprivation of the property rights of affected out-of-state retailers, including DMA members, secured by the United States and Colorado Constitutions.

153.    This Court is empowered, pursuant to 28 U.S.C. § 2201(a) and C.R.S. § 13-51-101 et seq., to declare the rights of out-of-state retailers.

154.    The DMA is entitled to declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. § 1988, as requested below.


**Prayer for Relief**

WHEREFORE, The DMA requests that the Court:

A. Declare the Act's notice and reporting obligations set forth in C.R.S. § 39-21-112(3.5), and all regulations promulgated pursuant thereto, unconstitutional;

B. Enter an injunction enjoining enforcement by the Defendant of any such requirements;

C. Award the DMA its attorneys' fees pursuant to 42 U.S.C. § 1988;

D. Award the DMA its costs; and

E.  Award such further relief as the Court deems just and proper.


Respectfully submitted,


Dated:  July 23, 2010                              /s/ George S. Isaacson

George S. Isaacson
Matthew P. Schaefer
BRANN & ISAACSON
184 Main Street, P. O. Box 3070
Lewiston, ME 04243−3070
Tel.: (207) 786−3566
Fax:  (207) 783-9325
E-mail: gisaacson@brannlaw.com
        mschaefer@brannlaw.com
*Attorneys for the*
*Direct Marketing Association*


Address of Plaintiff:
1120 Avenue of the Americas
New York, NY 10036-6713

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2010, I electronically filed the foregoing First Amended Complaint, using the CM/ECF system, which will send notification of such filing to counsel of record:

> Stephanie Lindquist Scoville
> Senior Assistant Attorney General
> State of Colorado
> 1525 Sherman Street, 7th Floor
> Denver, CO 80203
> stephanie.scoville@state.co.us
>
> Robert H. Dodd, Jr.
> Senior Assistant Attorney General
> State of Colorado
> 1525 Sherman Street, 7th Floor
> Denver, CO 80203
> robert.dodd@state.co.us
>
> Attorneys for Defendant

/s/ George S. Isaacson
George S. Isaacson