IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01546-REB-CBS

THE DIRECT MARKETING ASSOCIATION,

      Plaintiff,

v.

ROXY HUBER, in her capacity as Executive Director,
COLORADO DEPARTMENT OF REVENUE,

      Defendant.

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

---

      Defendant, Roxy Huber, in her official capacity as the Executive Director of the Colorado Department of Revenue moves to dismiss the First Amended Complaint filed by Plaintiff, Direct Marketing Association (DMA), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### CERTIFICATION

      Pursuant to REB Civ. Practice Standard V.I.1, undersigned counsel has read and complied with the governing Practice Standards of this Court.  Pursuant to REB Civ. Practice Standard V.I.3, undersigned counsel conferred with DMA's counsel regarding the grounds for dismissal of the complaint.  DMA then filed a First Amended Complaint.

**FACTUAL BACKGROUND**

DMA brings suit challenging a new Colorado statute, HB 10-1193 ("the Act"). <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112 (2010).[1]  The Act applies to all retailers or vendors who sell goods to Colorado consumers and whose gross sales meet or exceed $100,000 annually to Colorado consumers.   <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112(3.5)(b).  Retailers with less than $100,000 in gross sales are considered de minimis and are not subject to the Act.  <u>Exh. B.</u>, 1 CCR 201-1, Reg. 39-21-112.3.5(1)(a)(iii).

Retailers who do not otherwise collect sales tax must inform Colorado purchasers at the time of the purchase that although sales tax is not being charged, the purchase is subject to Colorado's use tax.   <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112(3.5)(c)(I); <u>Exh. B.</u>, 1 CCR 201-1, Reg. 39-21-112.3.5(2).   At the end of the year, retailers must send customers an annual report of the total amount spent, reminding purchasers that they must pay use tax on the goods.  <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112(3.5)(d)(I)(A); <u>Exh. B.</u>,1 CCR 201-1, Reg. 39-21-112.3.5(3).   Retailers also must make an annual report to the Colorado Department of Revenue ("Department") detailing Colorado residents' names, addresses, and the total amount of goods they purchased. <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112(3.5)(d)(II)(A); <u>Exh. B.</u>,1 CCR 201-1, Reg. 39-21-112.3.5(4).   The annual report to customers and the Department covers only those customers who purchased at least $500 of goods in the prior calendar year.  <u>Exh. B.</u>, 1

---

[1] Consideration of the Act does not convert this motion to one for summary judgment. When a party challenges subject-matter jurisdiction, the Court has "wide discretion" to review additional documents to resolve disputed jurisdictional facts.  *See, e.g., Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir. 2003).  On a motion to dismiss, the Court may consider a document "central to the plaintiff's claim and referred to in the complaint" without converting the motion into one for summary judgment.  *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 -1254 (10th Cir. 2005).

CCR 201-1, Reg. 39-21-112.3.5(3)(c) and (4)(d).   Retailers are prohibited from revealing any information about the actual good purchased; the annual report to the Department may include only taxpayers' names, addresses, and total amounts spent. Exh. B., Reg. 39-21-112.3.5(4)(a)(IV).

The Department is under a statutory mandate to keep all personal and tax information collected pursuant to Article 21 of Title 39 of the Colorado Revised Statutes strictly confidential.  Colo. Rev. Stat. § 39-21-113(4)(a).

## INTRODUCTION, STANDARDS OF REVIEW, AND BURDEN OF PROOF

Plaintiff brings suit asserting that the Act violates the United States and Colorado Constitutions, both facially and as applied.  Specifically, Plaintiff contends that the Act violates the Commerce Clause, that the Act violates consumers' rights of privacy, that it violates the First Amendment rights of retailers and consumers, that it deprives retailers of property without due process under the Fourteenth Amendment, and that the Act constitutes a taking of property in violation of the Fifth and Fourteenth Amendments.

Defendant moves to dismiss each of Plaintiff's claims under both Rule 12(b)(1) and Rule 12(b)(6).  First, all of Plaintiff's claims are subject to dismissal under Rule 12(b)(1) because Plaintiff does not have standing to bring the claims.  Plaintiff neither satisfies the test for associational standing nor does the doctrine of *jus tertii* standing apply in these circumstances.

Second, Plaintiff's claims of violation of the Colorado Constitution must be dismissed because those claims run afoul of the Eleventh Amendment and because they are not properly pleaded under § 1983.  Further, as detailed *infra*, supplemental

jurisdiction may not be exercised over claims that are barred by the Eleventh Amendment.

Third, Plaintiff's individual claims for relief fail to state a claim and should be dismissed under Rule 12(b)(6).  The violations of privacy and free speech alleged by Plaintiff have not been recognized by courts and do not plausibly state an injury. Plaintiff's alleged violations of the Fifth and Fourteenth Amendment similarly fail to state a claim.

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the action, regardless of the sufficiency of the allegations in the complaint.  *KVOS, Inc., v. Associated Press*, 299 U.S. 269, 277-78 (1936).  The jurisdiction of the federal courts is limited, and there is a general presumption against jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005); *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).  Accordingly, the burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction.  *Merida Delgado*, 428 F.3d at 919.  A court without jurisdiction cannot render judgment, and it must dismiss the cause of action when at any time it is discovered that jurisdiction is deficient. Fed. R. Civ. P. 12(h)(3); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss under Rule 12(b)(6) challenges whether a complaint is legally sufficient to state a claim for which relief may be granted.  *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003).  When considering a motion to dismiss for failure to state a claim, well-pleaded factual allegations are accepted as true and construed in the light most favorable to Plaintiff.  *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d

1210, 1215 (10th Cir. 2007).  A complaint, however, must include enough facts to state a claim that is plausible on its face.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

"'Plausibility' in this context must refer to the scope of the allegations in a complaint: "the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).  Conclusory statements that recite the elements of a cause of action are not sufficient to survive a motion to dismiss.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009) (noting that the Rules of Federal Procedure do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Finally, because DMA is challenging the constitutionality of the Act, it bears a heavy burden throughout the proceedings.  To demonstrate that the Act is facially unconstitutional, DMA must show "that no set of circumstances exists under which [the Act] would be valid," *United States v. Stevens,* ___U.S. ___,103 S.Ct 1577,1587 (2010); *West v. Derby Unified Sch. Dist. No. 260*,  206 F.3d 1358,1367 (10th Cir. 2000) (both cases quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), or that the statute lacks any "plainly legitimate sweep." *Stevens,* 103 S.Ct. at 1587 (quoting *Washington v.*

*Glucksberg*, 521 U.S. 702, 740 (1997)).[2] This burden has been described as " the most difficult challenge to mount successfully." *Derby,* 206 F.3d at 1367 (quoting *Salerno,* 481 U.S. at 745). To demonstrate that the Act is unconstitutional as applied, DMA must establish beyond a reasonable doubt that the Act as applied to its particular situation is unconstitutional. *United States v. Platte*, 401 F.3d 1176, 1189 (10th Cir. 2005). With respect to the allegations in the First Amended Complaint, DMA cannot meet these burdens.

## ARGUMENT

### I.    DMA LACKS STANDING TO BRING THIS SUIT.

In order to claim violation of a constitutional right, Plaintiff must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff must demonstrate: 1) actual injury to the plaintiff; 2) a causal relationship between the injury and the challenged actions; and 3) redressability of the injury through a favorable decision from the court. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993)). Standing under federal law is comprised of two criteria - one constitutional and one subconstitutional, or "prudential." *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *Pitt News v. Fisher*, 215 F.3d 354, 359 (3rd Cir. 2000). The constitutional criterion is a limit on the jurisdiction, and the prudential is a limit on its exercise. *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004).

---

[2] The only exception to this rule, which is not "casually employed," is First Amendment challenges to laws based on overbreadth. *Derby,* 206 F.3d 1367 (quoting *Los Angeles Police Dept. v. United Reporting Publ'g.,* 528 U.S. 32, 38 (1999)). As discussed, *infra,* DMA does not sufficiently allege First Amendment overbreadth.

Standing "is considered a component of subject-matter jurisdiction and analyzed under Fed.R.Civ.P. 12(b)(1)." *Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd.,* --- F. Supp. 2d ---, 2010 WL 1380389, at *3 (D. Colo. Mar. 31, 2010).  DMA bears the burden of proving subject matter jurisdiction, including the burden to show standing. *Id.*; *see also Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007).  Issues of standing must be resolved before proceeding to the merits of a case.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

This Court does not have subject matter jurisdiction over any of Plaintiff's claims. DMA has not asserted that it has standing to sue on its own behalf.  For those claims it raises on behalf of its members, DMA has not demonstrated the elements required for standing of an association.  For those claims it brings on behalf of its members' customers, DMA has not demonstrated the elements necessary for *jus tertii*, or third party, standing.

### A.   DMA Lacks Standing as an Association to Sue on Behalf of its Members.

DMA contends on behalf of its member-retailers that the Act violates the Commerce Clause (Counts I and II), the First Amendment (Count V and VI), the Due Process Clause of the Fourteenth Amendment (Count VII), and that the Act is a taking of private property in violation of the Fifth and Fourteenth Amendments (Count VIII).  As an association, DMA does not have standing to bring these claims.

To meet the requirements for association standing, DMA must show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Furthermore, to demonstrate injury in fact, DMA must show that the injury to its members is concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61. The injury also must affect the members in a personal and individual way. *Id.*

In *Hunt,* the challenged statute affected every member of the association. *Hunt* 432 U.S. at 343. Courts otherwise have required plaintiffs to identify members suffering injury. *Nat'l Collegiate Athletic Ass'n v. Califano*, 622 F.2d 1382, 1392 (10th Cir. 1980) (holding that an association "must prove facts conferring standing with respect to at least one of its members."); *Coal. for Icann Transparency Inc. v. Verisign, Inc.*, 464 F. Supp. 2d 948, 956 (N.D. Cal. 2006) (denying motion to dismiss where the complaint identified by name member of the association who would suffer injury); *see also Cal. Bankers Ass'n v. Schultz*, 416 U.S. 21, 44 (1974) (expressing doubt of association's standing to bring suit on behalf of its members without sufficient allegations of ability to represent members' interests).

In this case, DMA has not shown that its members would have standing on their own. DMA similarly fails to sufficiently allege an injury in fact or that a favorable decision will redress any injury other than a speculative one. The Act does not affect retailers with Colorado gross sales of less than $100,000 per year. The First Amended Complaint fails to plausibly allege that its members meet this threshold. Rather, DMA vaguely asserts only that "many" of its unnamed 3,000 plus members meet the threshold amount. First Amend. Compl., ¶¶ 24, 37, and 47. The First Amended

Complaint does not identify any particular retailer-members that meet the threshold who would suffer injury. The complaint does not even specify how many retailer-members would be affected. *See, e.g.,* First Amend. Compl., ¶ 7 (generically alleging that "hundreds" of retailers are "purportedly" subject to the reporting requirements). Only those retailer-members meeting the gross sales threshold could suffer an injury and sue in their own right. Without the participation of members with at least $100,000.00 in Colorado sales, DMA does not have standing.

Additionally, as further detailed *infra*, Plaintiff's failure to state a claim of a constitutional violation endangers its standing. For example, Plaintiff alleges a taking of property without due process of law in violation of the Fourteenth and Fifth Amendments (Counts VII and VIII). DMA, however, does not establish that its retailer-members' customer lists are proprietary trade secrets in which members have made a substantial investment and have a protected property right. If the customer lists are not protected trade secrets, DMA has no standing because the members would not have standing to sue in their own right.

Finally, DMA has not demonstrated standing as to its claims of a deprivation or taking of private property (Counts VII and VIII) because the alleged injury is not actual or imminent, and thus, the claims are not ripe for adjudication.[3] *See Lujan,* 504 U.S. at 560-61. A ripeness inquiry focuses on whether the harm alleged has matured sufficiently to warrant judicial intervention. The ripeness doctrine addresses a timing

---

[3] "Although standing and ripeness are analytically distinct concepts, they overlap substantially, and especially where the issue is whether the plaintiff has sustained an injury-in-fact, "the issues of standing and ripeness are difficult to divorce.'" *Bristol Co. P'ship. v. Bosch Rexroth Inc., No 06-cv-00011(REB-CBS), 2006 WL 1050109* at *2 (D. Colo. April 20, 2006) (internal citation omitted).

question - when it is appropriate for a court to take up an asserted claim. *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (citations omitted).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated or may not occur at all." *Bristol Co. P'ship.,* at *2 (quoting *Texas v. United States*, 523 U.S. 296 (1998)).

Here, the Act requires retailers to prepare an annual report listing Plaintiff's members' Colorado customers.  This is not a taking of property under the Due Process or Takings Clauses. As further detailed *infra*, the Department is precluded from disclosing the information contained in the annual reports.  Even if information from the annual reports ever were inadvertently disclosed, Colorado law provides a process for the payment of just compensation.  As a result, Plaintiff has not alleged a violation of the Takings Clause that is ripe for review.  Plaintiff's claims of a taking of private property would not be ripe until a taking occurred and just compensation was denied.

### B.   DMA Lacks *Jus Tertii* Standing to Sue on Behalf of its Members' Customers.

DMA further asserts standing to sue on behalf of its retailer-members' customers under the *jus tertii* doctrine for violation of customers' privacy rights (Counts III and IV) and violation of customers' free speech rights (Count V and IV).

Generally, a plaintiff must assert its own legal rights and interests and cannot rest a claim for relief on the legal interests or rights of third parties.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Aid For Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006). This principle is a prudential, as opposed to constitutional, limitation on standing. *See Kowalski*, 543 U.S. at 128.  The rule, however, is not absolute, and under the

doctrine of *jus tertii,* standing, a plaintiff may assert the rights of others not before the court. *Aid For Women*, 441 F.3d at 1111.

Under the doctrine of *jus tertii* standing, a plaintiff may invoke the rights of a third party if it can make two additional showings: 1) that it has a close relationship with the person who possess the right allegedly abridged; and 2) that there is a hindrance to the possessor's ability to protect his own interests. *Id.* at 1111-12 (citing *Kowalski*, 543 U.S. at 130). The plaintiff itself also must have an injury in fact itself, satisfying the constitutional requirement for standing. *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 954-55 (1984); *Craig v. Boren* 429 U.S. 190, 194 (1976).

Assertions of *jus tertii* standing generally arise in two contexts: 1) claims where enforcement of a restriction against a litigant prevents a third party from entering into a relationship with the litigant to which the third party has a constitutional entitlement, and 2) First Amendment challenges to a statute or regulation based on overbreadth. *Cole v. Orville Union High Sch. Dist.,* 228 F.3d 1092, 1099, n.3 (9th Cir. 2000); Note, *Standing to Assert Constitutional Jus Tertii*, 88 Harv. L. Rev. 423, 423-24 (1974); *see also Craig*, 429 U.S. at 195 n.4.  In both circumstances, injury to the plaintiff is required (case or controversy standing), as well as a constitutional right in or constitutional injury to the third party. *Cole* at 1099.[4]

---

[4] Plaintiff alleges *jus tertii* standing, claiming that the challenged statute affects customers' rights to purchase from its retailer-members.  Although facial overbreadth of the statute and regulations is not specifically alleged, that claim may be implied by DMA's assertions of consumers' First Amendment rights. *See* First Amend. Compl. ¶¶ 5, 110, 112, and 114. Therefore, standing to raise both types of third party claims will be analyzed.

### 1. DMA has not alleged a sufficiently close relationship with its members' potential customers.

The first requirement of *jus tertii* standing is that an established close relationship exists between the plaintiff and the third party.  The purpose of the close relationship requirement is to assure appropriate adversarial litigation. The litigating party must operate fully or as nearly as effectively as a proponent of the potential plaintiff's rights as the plaintiff himself.  *Aid for Women,* at 1112 (citing *Joseph  H. Munson, Co.*, 467 U.S. at 956).  The *jus tertii* plaintiff must be reasonably expected to frame the issues and present them with the necessary adversarial zeal.  *Joseph  H. Munson, Co.,* 467 U.S. at 956.

No bright line test defines a close relationship.  Most courts have required either a contractual relationship or a desire or right of the non-party to enter into a contractual relationship with the plaintiff.  *See, e.g., Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1352 (Fed. Cir. 2010); *Reese Bros. v. United States Postal Serv.*, 531 F. Supp. 2d 64, 65 (D.D.C. 2008).  For example, in *Craig v. Boren*, 429 U.S. 190 (1976), the Court held that a beer vendor had standing on behalf of 18-20 year-old males to challenge a statute on equal protection grounds when the statute permitted purchase of 3.2% beer by 18-20 year-old females but denied males of the same age that right.  *Id.* at 194-197.  The Court reasoned that the threatened imposition of government sanctions might deter the vendor and others similarly situated from selling the 3.2% beer to males, thus ensuring that enforcement of the challenged restriction against the vendor would result indirectly in the violation of the third part 18-20 year old males' rights.  The Court stated, "vendors and those in like positions have been uniformly permitted to resist

efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id.* at 195.

Following *Craig*, the Supreme Court explicitly stated, "[w]hen, however, enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship) to which the third party has a legal entitlement (typically a constitutional entitlement), third party standing has been held to exist." *United States v. Triplett*, 494 U.S. 715, 721 (1990) (permitting attorney to challenge constitutionality of a statute on grounds that existing client's due process rights would be deprived) (citing *Joseph  H. Munson, Co.,* 467 U.S. at 954-958).

Here, DMA has not established a close relationship with its members' customers to demonstrate *jus tertii* standing.  First, the relationship is too attenuated.  DMA does not allege, nor could it, that it has a contractual or otherwise close relationship with its members' customers.  Rather, the First Amended Complaint asserts that DMA is "the leading trade association of businesses and nonprofit organizations using and supporting multichannel marketing methods…"  First Amend. Compl., ¶2.  In turn, DMA's member-retailers market their products to consumers.  *Id.*  The First Amended Complaint does not allege that any customers have, desire to have, or have a right to, a contractual relationship with DMA.

Moreover, *Triplett* and other cases have turned on an existing relationship between the plaintiff and third party.  *See Triplett*, 494 U.S. at 720 (noting the existing relationship between the attorney and client); *Kowalski*, 543 U.S. at 131 (standing denied because attorney only had potential or hypothetical attorney-client relationship

with third parties).  In this case, DMA has not alleged, nor could it, that it has an existing relationship with any customers of its member- retailers.

Finally, the basic rationale for permitting vendor standing in *Craig* is missing in this case.  There, the Court stated, "[vendor] is entitled to assert those concomitant rights of third parties that would be diluted or adversely affected should her constitutional challenges fail and the statutes remain in force."  Otherwise, the Court noted, the "threatened imposition of government sanctions might deter [vendor] and other similarly situated vendors from selling 3.25% beer to young males, thereby ensuring that enforcement of the challenged restriction against the (vendor) would result indirectly in violation of third parties' rights."  *Id.* at 194-95 (citations and internal quotations omitted).

DMA has not alleged, nor could it, that the rights of the customers of its members are adversely affected.  DMA does not allege that the Act would deter its members from selling goods to Colorado purchasers and that, as a result, their customers' constitutional rights would be violated by being denied their right to purchase goods.

### 2.    DMA does not sufficiently allege that customers would be hindered from bringing their own suits.

The First Amended Complaint does not allege the second requirement of *jus tertii* standing – that there is a hindrance to the possessor's ability to protect his own interests.  *Kowalski*, 543 U.S. at 130.  DMA does not assert that any customers would be precluded from protecting their own interests by bringing suit.  DMA can make no such assertion. Customers, in similar circumstances, have not been precluded from protecting their own rights. *Aronson v. Sprint Spectrum, LP.*, 90 F.Supp.2d 662, 662

(W.D.Pa. 2000) (customers initiated suit against telecommunications company for invasion of privacy).

Indeed, the attenuated connection between DMA and the customers of its members demonstrates that DMA's interests are not aligned with the customers, and thus, DMA would not be as effective a proponent of the customers' alleged rights as the customers themselves.   Accepting DMA's allegations, the third-party customers are motivated solely by their personal interests in ensuring privacy in the identity of those from whom they purchase goods.   First Amend. Compl., ¶43.   DMA's members, in contrast, are motivated by business concerns and a profit motive. *Id.* ¶43; *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (regarding a petition to intervene and finding inadequate representation where intervenors were, unlike plaintiff, driven by profit motive).

> **3.      DMA does not sufficiently allege First Amendment overbreadth to claim *jus tertii* standing as to those claims for relief.**

In the area of the First Amendment, a plaintiff may bring a facial challenge to a statute, not because his or her own rights are being violated but to vindicate a third party whose rights of expressive conduct are potentially infringed.   *Broadrick v. Okla.*, 413 U.S. 601, 611-13 (1973); *Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010).[5]   Therefore, in the First Amendment arena, the *jus tertii* requirements of close relationship and hindrance to the third party bringing his own claim have been relaxed,

---

[5]   *Jus tertii* standing cannot be asserted for the First Amendment claims for the additional reason that the overbreadth doctrine does not apply to commercial speech. *Nat'l Council for Improved Health v. Shalala*, 122 F.3d. 878, 882 n.6 (10th Cir.1997). Thus, if the customers' speech is commercial, DMA cannot have standing to assert an overbreadth claim. The commercial nature of the speech at issue is discussed *infra*.

and other concerns enunciated that justify a lessening of the prudential limitations on standing. *Kowalski,* 543 U.S. at 129 (citing *Joseph H. Munson Co., 467 U.S.* at 956).[6] "Litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected free speech or expression." *Broadrick*, 413 U.S. at 612.  In other words, to assert *jus tertii* standing on a First Amendment claim, Plaintiff must sufficiently allege that a statute is facially overbroad.

A litigant's ability to raise an overbreadth challenge based on the rights of a third party, however, is not broad.  The challenged legislation must be a "substantial threat to free speech, such that third parties are forced to forgo their rights entirely or face criminal prosecution to vindicate them."  *Pitt News*, 215 F.3d at 364 (discussing *Eisenstadt v. Baird*, 405 U.S. 438 (1972), *Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620 (1980), and *Joseph H. Munson Co.*, 467 U.S. at 947).

Here, customers of DMA's members do not face criminal prosecution or civil penalties under the statute, nor are they foreclosed from exercising their alleged free speech rights by purchasing goods elsewhere.  *See Pitt News,* 215 F.3d at 365 (finding that advertisers prohibited from advertising in student publications could advertise in non-student publications available at the same locations as the student newspaper).  As a result, DMA fails to allege facts sufficient to make a facial overbreadth challenge on behalf of retail consumers.

---

[6] The overbreadth standing exception doctrine applies only to expressive activity.  *See Broadrick* 413 U.S. at 612-13; *Dickerson,* 604 F.3d at 742.  Accordingly, this exception cannot apply to Plaintiff's privacy claims, and those claims must be analyzed under the close relationship test of *Craig/Triplett, supra.*

The facial overbreadth exception to case or controversy standing becomes even more attenuated as the behavior subject to a statute or regulation moves from pure speech toward conduct. *Broadrick,* 413 U.S. at 615. Here, the statute is directed at conduct – the act of purchasing goods – not traditional expressive speech. The customer's conduct is not protected expressive speech for which third-party standing has been granted. DMA, therefore, is precluded from asserting third-party standing to raise the First Amendment rights of its members' customers.

DMA's standing on the First Amendment claims is further restricted by its failure to demonstrate an actual injury. As outlined *infra*, current First Amendment jurisprudence protects not the identities of the sellers or the purchasers, but information about the purchases. *See, e.g., Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 n.17 (Colo. 2002) (bookstore records that do not disclose titles of books purchased by customers are not protected by the First Amendment). Here, the Act's reporting requirements cover only the names of sellers and purchasers and the amount of purchases – not a description of items purchased. Because DMA cannot state a claim for violation of a First Amendment right, it does not have standing.

### 4.   DMA has not plausibly alleged that it has or will suffer the requisite injury.

As outlined *supra*, a plaintiff may not assert *jus tertii* standing without an injury of its own, although not necessarily one to its own legally protected interests. *Pitt News*, 215 F.3d at 362 (citing *Powers v. Ohio*, 499 U.S. 700, 411 (1991)); *see also Reese Bros.*, 531 F. Supp. 2d at 67. In this case, DMA does not allege anywhere in the First Amended Complaint that it has suffered any injury. Rather, DMA asserts only that its

members and their customers have or will suffer an injury.  As a result, DMA is not situated to assert *jus tertii* standing on behalf of third party customers.

**II.   ALTERNATIVELY, THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS (COUNTS IV, VI, VII, VIII).**

**A.   The Eleventh Amendment Bars DMA's Challenge to the Act Under the Colorado Constitution.**

Plaintiff brings this suit against Ms. Huber in her official capacity as the Executive Director of the Department.  The portions of the First Amended Complaint challenging the Act under the Colorado Constitution are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

It is well-settled that the Eleventh Amendment to the U.S. Constitution does not permit suits against states or their officials in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).  A limited exception exists, however.  A state's sovereign immunity is not implicated when suit is brought against a state official in her official capacity challenging the constitutionality of the official's conduct.  *Ex Parte Young*, 209 U.S. 123,159-60 (1908).  The *Ex Parte Young* exception applies only to suits seeking prospective injunctive relief based on an alleged violation of federal law. *See Edelman v. Jordan*, 415 U.S. 651, 666-68 (1974).

*Ex Parte Young* does not permit federal court actions alleging violations of state law.  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *see also Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) (holding that in cases challenging a statute under state law, the need to promote the supremacy of federal law, which underlies the *Ex Parte Young*

exception, is absent (quoting *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106));

*Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1187 (D. Colo. 1999).

DMA brings its claims pursuant to the *Ex Parte Young* doctrine and seeks only prospective, injunctive relief.   First Amend. Compl., ¶¶1, 4.   Because the doctrine cannot extend to Plaintiff's challenges under the Colorado Constitution, Plaintiff's state-law claims should be dismissed at the outset of this litigation pursuant to Rule 12(b)(1). *See Lewis v. N.M. Dept. of Health*, 261 F.3d 970, 979 (10th Cir. 2001) (holding that the scope of a state's immunity under *Ex Parte Young* is a matter of subject matter jurisdiction).

Plaintiff's First Amended Complaint attempts to avoid the restriction on *Ex Parte Young* suits by asserting supplemental jurisdiction over its state-law claims.   First Amend. Compl., ¶5.   Supplemental jurisdiction, however, may not be asserted over claims barred by the Eleventh Amendment.[7]  *Raygor v. Regents of the Univ. of MN*, 534 U.S. 533, 541 (2002) (holding that the grant of supplemental jurisdiction does not extend to claims against nonconsenting state defendants, which are otherwise barred by the Eleventh Amendment).   As a result, Plaintiff's state-law claims should be dismissed for a lack of subject matter jurisdiction.

## B.   Section 1983 Cannot Be Employed to Assert Violations of State Law.

Plaintiff's Counts VII and VIII challenge the constitutionality of the Act under the Colorado Constitution.   Each of these counts is brought pursuant to § 1983.   First

---

[7] Plaintiff's assertion of supplemental jurisdiction fails for the additional reason that 28 U.S.C. § 1367(c)(1) provides that federal district courts may decline to exercise supplemental jurisdiction over claims that raise "novel or complex issue[s] of State law." Plaintiff's Complaint raises a number of new constitutional theories, none of which have been resolved by Colorado courts.

Amend. Compl., ¶¶132-152.   The state-law portions of these claims are subject to dismissal because the Tenth Circuit has repeatedly held that violations of state law cannot give rise to a § 1983 claim.   *See, e.g., D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) ("§ 1983 affords a remedy for violations of federal law and does not provide a basis for redressing violations of <u>state</u> law.") (emphasis in original, internal citation omitted); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (holding that to state a cause of action under § 1983, Plaintiff must allege deprivation of a federal right).   Accordingly, the state-law portions of Counts VII and VIII should be dismissed.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF CUSTOMERS' RIGHT TO PRIVACY.

Counts III and IV allege that the Act's annual reporting requirements violate purchasers' constitutionally-protected right to privacy.   The annual reporting requirements of the Act, however, do not implicate any recognized privacy rights protected by the Fourteenth Amendment or the Colorado Constitution.   Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6).

The Act requires retailers who do not otherwise collect sales tax to file an annual report with the Department.   This report is limited in scope.   It encompasses only the name, billing and shipping addresses and total annual dollar amount of purchases for each customer exceeding the "de minimis" threshold of $500.   <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112(3.5)(d)(II); <u>Exh. B.</u>, 1 CCR 201-1, Reg. 39-21-112.3.5(4)(a),(b).   The Act does not require the report to identify the particular items purchased from retailers, such a disclosure is specifically prohibited.   <u>Exh. A.</u>, Colo. Rev. Stat. § 39-21-112(3.5)(d)(II);

Exh. B., 1 CCR 201-1, Reg. 39-21-112.3.5(4)(a)(IV) ("No other information about the purchase *shall* be provided.") (*emphasis* added).

 The constitutionally-protected right to privacy protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition. *See, e.g., Moore v. E. Cleveland,* 431 U.S. 494, 503 (1977). The right to privacy implicates two distinct interests: an individual's interest in making decisions regarding matters central to personal dignity and autonomy, and an individual's interest in avoiding disclosure of personal information. *Whalen v. Roe,* 429 U.S. 589, 599 (1977).

 The Tenth Circuit generally has interpreted the interest in avoiding disclosure of personal information to include the right of non-disclosure of certain personal information *by* the government. *Herring v. Keenen,* 218 F.3d. 1171, 1175 (10th Cir. 2000) (internal citations omitted). However, in *Eastwood v. Department of Corrections*, the Tenth Circuit also extended the right to non-disclosure of information to include the right to non-disclosure of personal information *to* the government. 846 F.2d, 627, 631 (10th Cir. 1988).

 The right to non-disclosure of certain information to the government has only been extended to matters in which the government does not have a legitimate and proper interest. *Whalen,* 429 U.S.at 599 (privacy rights not implicated by statute requiring disclosure to state health department of all prescriptions written for Schedule II controlled substances). Matters in which the government does not have a legitimate and proper interest include that information in which the individual has a fundamentally protected privacy interest. *See Eastwood,* 836 F.2d. at 631 (State official's inquiries into employee's sexual history cannot be sanctioned); *Thorne v. City of El Segundo*, 726

21

F.2d 459 (9th Cir. 1983), *cert denied*, 469 U.S. 979 (1984) (City police force's inquiry into prospective employee's sexual history, recent miscarriage, her child's paternity held to violate "zone of privacy"); *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (interpreting the right to informational privacy to include only interests implicating a fundamental liberty).

An individual's privacy interest in non-disclosure to the government has not been extended to include the information covered by this Act.  Courts have not recognized that a constitutional right of privacy exists in such basic information as the name of the customer or taxpayer and the total amount of goods purchased from a particular retailer. Because the courts have not recognized an individual's purchasing information as so "deeply rooted in this Nation's history and tradition" as to qualify as a fundamental privacy right, DMA fails to state a claim for relief that is plausible on its face.

The First Amended Complaint further fails to plausibly allege that the annual report at issue would contain any information that would implicate privacy interests. DMA alleges in conclusory fashion that an individual's status as a purchaser *potentially* would reveal personal information about the purchaser, including not only his or her interests and predilections, but also his or her religious beliefs, political opinions, medical conditions, financial situation, family concerns, or sexual orientation.   First Amend. Compl., ¶80.  The First Amended Complaint, however, is devoid of actual facts supporting these conclusory statements.  Plaintiff does not give a single example of how the information required in the annual customer information report would reveal purchasers' constitutionally protected information, i.e., information pertaining to a fundamentally protected privacy interest.

Because DMA has failed to plausibly allege a violation of a recognized constitutionally-protected privacy interest, Counts III and IV should be dismissed pursuant to Rule 12(b)(6).

### IV. DMA'S COMPLAINT FAILS TO STATE A FIRST AMENDMENT CLAIM BECAUSE IT ALLEGES NO COMPELLED SPEECH OR DISCLOSURES PROTECTED BY THE FIRST AMENDMENT.

Counts V and VI of the First Amended Complaint allege that the Act's annual reporting requirements violate both retailers' and customers' First Amendment rights under the United States and Colorado Constitutions.  The First Amendment rights asserted by DMA, however, have not been recognized by courts, and Plaintiff additionally fails to plead facts sufficient to demonstrate any First Amendment violation. These counts, therefore, should be dismissed under Rule 12(b)(6).

Plaintiff bears the burden of demonstrating that the First Amendment protects disclosure of the conduct that it asserts is expressive – purchasing goods.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  "Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies.  To hold otherwise would be to create a rule that all conduct is presumptively expressive."  *Id.* at 294, n.5. Plaintiff must advance more than a mere plausible contention that a customer's purchase from a particular retailer is protected speech.  *Id.* at 294.

The United States Supreme Court has recognized that some conduct may be expressive enough to entitle it to First Amendment protection.  *See, e.g.*, *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995) (marching in a parade); *United States v. Eichman*, 496 U.S. 310 (1990) (burning the United States

flag); *Spence v. Washington*, 418 U.S. 405 (1974) (attaching a peace sign to an American flag and displaying the peace flag upside down); *Cohen v. California*, 403 U.S. 15 (1971) (wearing an armband to protest a war); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (wearing black armband at school to protest the Vietnam War); *United States v. O'Brien*, 391 U.S. 367 (1968) (burning Selective Service certificate on courthouse steps to protest war).  In all of these cases, the conduct in question formed a particularized message clearly understood by those who viewed it.

It is possible, however, to find expression in almost every activity a person undertakes.  *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  Accordingly, the United States Supreme Court has stated that it "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."  *O'Brien*, 391 U.S. at 376.

To determine if conduct is sufficiently expressive to warrant First Amendment protection and thus constitute "speech", courts inquire whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it.  *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  Moreover, the United States Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive."  *Rumsfeld v. Forum for Academic & Instit. Rights, Inc.*, 547 U.S. 47, 66 (2006).

Most conduct in the commercial sphere is not expressive.  *State v. Chepilko*, 965 A.2d 190, 198 (N.J. Super. 2009).  The sale of merchandise such as jewelry, clothing, or incense is ordinarily not expressive, and therefore, not entitled to First Amendment protection.  *Id.; see, e.g., Al-Amin v. City of New York*, 979 F. Supp. 168, 172-73

(E.D.N.Y. 1997) (holding that the sale of perfume oils and incense is not protected expressive activity under the First Amendment).   Likewise, although information regarding some purchases may be protected, the identity of sellers and purchasers is not information protected by the First Amendment.  *See Tattered Cover, Inc.*, 44 P.3d at 1053 n.17.

Courts have not recognized that retailers have a First Amendment right in the limited information covered by the Act.   Similarly, courts have not recognized that customers have a First Amendment right in the information.   Because Plaintiff has asserted a First Amendment right not recognized by the courts, it fails to state a claim and the First Amendment claims should be dismissed.

The First Amended Complaint additionally fails to plausibly allege a First Amendment violation.   DMA alleges "many" retailers are highly specialized and offer products containing expressive content and that an individual's status as a purchaser may reveal information regarding the expressive content of products purchased.   First Amend. Compl., ¶¶105-106.   The First Amended Complaint offers no specific facts to back up these very general allegations.   Plaintiff fails to identify a single example of a retailer whose name would reveal that it sold goods containing expressive content.   In particular, the Plaintiff fails to identify any such retailers that would be subject to the gross sales threshold established by the Act.   The First Amended Complaint further fails to detail how an individual's status as a purchaser from a retailer may reveal information regarding the expressive content of products obtained by the purchaser.   Plaintiff also fails to allege an intent by the purchasers to convey a particularized message as it relates to any such purchase.

Plaintiff also conclusorily alleges that the required disclosures would have a chilling effect on the exercise of the right to freedom of speech "by consumers with regard to purchasing and obtaining information and expressive content, and by retailers with regard to selling and distributing expressive content." *Id.*, ¶110. The First Amended Complaint again fails to set forth facts demonstrating how the reporting would chill either consumers or retailers. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (holding that conclusory allegations are not enough to withstand a motion to dismiss). As a result, Counts V and VI are insufficient to survive scrutiny under Rule 12(b)(6), and should be dismissed.

### V.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS BECAUSE IT HAS NOT PLAUSIBLY ALLEGED THAT PRIVATE PROPERTY IS AT ISSUE OR WOULD BE AFFECTED BY THE ACT.

DMA's Seventh and Eighth Claims for Relief allege that the Act's annual reporting requirements deprive retailers of property in violation of the Fifth Amendment Takings Clause and the Fourteenth Amendment Due Process Clause. Specifically, DMA alleges that retailer's "customer lists" are trade secrets, which are protected property, and that the Act's reporting requirements constitute both a deprivation of property without due process of law and a taking of private property for public use without just compensation. Defendant addresses these counts together because Plaintiff fails to state a claim under either theory by not alleged a protected property right. Plaintiff further fails to state a claim because it fails to allege plausibly allege any deprivation of a property right.

### A.    Plaintiff Fails to Plead Facts Sufficient to Establish a Property Right.

Customer lists may constitute trade secrets, a protected property right. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984).  Whether customer lists are protected property depends on existing rules or understandings that stem from an independent source such as state law.  *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980) (internal citations omitted); *First Bet Joint Venture v. City of Central City*, 818 F. Supp 1409, 1413, (10th Cir. 1993).

Colorado law recognizes customer lists as trade secrets, provided that the customer list is related to a business or profession, the owner has taken measures to ensure the secrecy of the information, and the information is of value. *See* Colo. Rev. Stat. *§ 7-74-102(4)*.  Factors to be considered in determining if a trade secret exists include: 1) the extent of which the information is known outside the business; 2) the extent to which it is known to those inside the business; 3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; 4) the savings effected and the value to the holder in having the information as against competitors; 5) the amount of effort or money expended in obtaining and developing the information; and 6) the amount of time and expense it would take for others to acquire and duplicate the information.  C*olo. Supply Co. v. Stewart,* 797 P.2d 1303, 1306 (Colo. App. 1991). Courts have also considered the extent to which the customers on the customer list were exclusive to the holder. *Id.*

DMA alleges that the customer lists are protected property in that the lists are valuable proprietary trade secrets, and that retailers invest substantial resources in compiling, maintaining, and protecting the lists from disclosure to competitors and other

unauthorized third parties.  First Amend. Compl. ¶¶13, 146, 147.  DMA does not allege any specific facts supporting its threadbare recitation of the elements necessary to find a protected property interest.  *See Stewart,* 797 P.2d at 1306.  For example, DMA does not allege any facts plausibly demonstrating that it has members who have taken any particular steps to protect its lists, that such lists are held confidential (for example, that members do not sell the lists), what members did to develop the lists, or that the lists have any particular value.  Mere recitations of the elements of a cause of action do not survive a motion to dismiss under Rule 12(b).  *Iqbal*, 129 S.Ct. at 1950.  Without establishing a plausible claim for a protected property right, Counts VII and VII fail to state a claim.

> **B.     Even Assuming a Property Right Exists, Plaintiff Fails to Plead Facts Sufficient to Establish a Deprivation of Property.**

Even assuming that Plaintiff sufficiently alleged trade secrets entitled to protection, Plaintiff fails to state a claim that the Act's requirements constitute a deprivation of property in violation of the Takings Clause and Due Process Clause.

The property interest in a trade secret lies in the extent to which the owner of the secrets protects its interest from public disclosure to those under no obligation to protect the confidentiality of the information.  *Monsanto,* 467 U.S. at 1002 (internal citations omitted).  The value of a trade secret lies in the competitive advantage it gives the owner over competitors. *Id.*  Thus, it is only if the government publically discloses the trade secret that a deprivation of property occurs because it is the public disclosure enabling a competitor to use the information to improve its business that destroys the value of the trade secret. *Monsanto,* 467 U.S. at 1013-14.

Here, the Act requires retailers to submit customer data to the Department.  The Act contains no provisions for public disclosure of the data.  Exh. A., Colo. Rev. Stat. § 39-21-112(3.5)(d)(II).  In fact, any such disclosure would be contrary to Colorado law.  Colo. Rev. Stat. § 39-21-113(4)(a) (2010) (the Department or any of its agents shall not divulge or otherwise make known any information gathered pursuant to Article 21 of Title 39 of the Colorado Revised Statues.);  *Losavio v. Robb*, 579 P.2d., 1152, 1157 (Colo. 1978) (upholding the quashing of a grand jury subpoena duces tecum requesting information collected pursuant to Article 21 of Tile 39 of the Colorado Revised Statutes); *see also* Colo. Rev. Stat. § 39-21-113(6)(a) (2010) (imposing criminal penalties and state employment termination for any person violating § 39-21-113(4)).  Because the Act does not provide for public disclosure and Colorado law expressly prohibits such disclosure, any public disclosure of the retailers' trade secrets would be unanticipated, unintentional, and contrary to law.

Plaintiff alleges that the Act requires retailers to submit proprietary trade secrets to the Department without provisions ensuring the confidentiality of the customer information report, without an obligation to protect the information, and without funds appropriated to ensure security of the information.  First Amend. Compl., ¶¶28, 32, 149.  Plaintiff further alleges that a "substantial risk" for disclosure exists, as the Department was cited in the past for failing to take steps to ensure the security of personally identifiable information in its custody.  *Id.*, ¶¶29, 49, 50, 150.  DMA does not and cannot allege a deprivation of property based on the requirements of the Act.  Instead, DMA

requests relief based on events that have not occurred and may not occur at all.[8]   That

a customer list could *conceivably* be disclosed, *perhaps* depriving Plaintiff's members of

an alleged property interest, does not amount to a claim for relief plausible on its face.

The conclusory and speculative nature of these allegations does not nudge Plaintiff's

claims from conceivable to plausible.   *Red Hawk*, 493 F.3d at 1177.   Without a

deprivation of property, Plaintiff's claims for deprivation for property in violation of the

Fifth Amendment Takings Clause and Fourteenth Amendment Due Process Clause

cannot survive and must be dismissed.

### VI.   ALTERNATIVELY, PLAINTIFF HAS FAILED TO ALLEGE A ACTIONABLE VIOLATION OF THE DUE PROCESS CLAUSE.

Plaintiff's Seventh Claim for Relief alleges that the Act's annual customer

information reports deprive retailers of property without due process of law in violation of

the Fourteenth Amendment.   The Due Process Clause of the Fourteenth Amendment

confers both procedural and substantive rights.   *Miller v. Campbell County*, 945 F.2d

348, 352 (10th Cir. 1991) *cert denied*, 502 U.S. 1096 (1992), citing *Daniels v. Williams*,

474 U.S. 327, 337 (1986) (Stevens, J., concurring).   Plaintiff fails to plausibly allege a

violation of either.

#### A.   Due Process Violations Must Be Based on an Intentional Deprivation, Which DMA Does Not Plausibly Allege.

The Due Process Clause is intended to secure an individual from deliberate

governmental deprivations of life, liberty or property.   *Daniels,* 474 U.S. at 337.

---

[8] As argued *supra*, because Plaintiff's claim relies on facts that have not occurred and may not occur at all, this claim for relief is not yet ripe for review and should be dismissed pursuant to Rule 12(b)(1). *See Williamson County Reg'l. Planning Com'n. v. Hamilton*, 473 U.S. 172, 195 (1995); *Nat'l Advertising Co. v. City & County of Denver,* 912 F.2d 405, 413 (10th Cir. 1990).

Accordingly, the Due Process Clause is not implicated by the government's less than intentional act causing unintended loss of life, liberty, or property. *Id.*

Here, Plaintiff has not asserted a deliberate or intentional deprivation of property by the Department. Plaintiff has not even alleged an anticipated deliberate or intentional deprivation of property. Plaintiff also fails to allege any official policy, law, or intent by the Department to deprive them of their property. Instead, Plaintiff alleges that because the Department was cited for a previous disclosure made "through inattention, misconduct, or data breach," a "real risk" for such disclosure of the customer list exists. First Amend. Compl., ¶¶50, 137, 138. As discussed above, any disclosure of the customer list causing a deprivation of Plaintiff's property that may occur is not required by the Act, would be contrary to Colorado law, and therefore, would not be an intentional deprivation. As such, Plaintiff falls short of alleging a due process claim upon which relief can be granted.

### B. Plaintiff Has Not Plausibly Asserted a Procedural Due Process Violation.

First, Plaintiff fails to specifically allege a deprivation of property without notice or hearing. Second, Plaintiff does not sufficiently allege a failure to be given notice and a hearing. As previously discussed, the Act does not provide for disclosure of the customer list by the Department, Colorado law prohibits such disclosure, and therefore, any disclosure causing deprivation of the retailer's property interest would be unanticipated. The notice and hearing requirements of procedural due process cannot be afforded in instances where the deprivation was unanticipated. *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007) (citing *Parrat v. Taylor,* 451 U.S. 527, 535-44 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). In such instances, post-deprivation

state-law tort remedies satisfy due process. *Id.* Here, state-law tort remedies are available should the unanticipated deprivation actually occur, thereby meeting the procedural due process of the Due Process Clause. *See* Colo. Rev. Stat. § 38-1-101 (2010); Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101, *et. seq.* (2010). Thus, Plaintiff has failed to state a claim entitling it to relief.

### C.   Plaintiff's Substantive Due Process Claim Is Subsumed by Its More Specific Takings Claim.

Plaintiff's Count VII asserting a violation of substantive due process claim fails because it is subsumed by Count VIII, which asserts a governmental taking of private property for public use without just compensation in violation of the Fifth Amendment.

While the Due Process Clause of the Fourteenth Amendment confers some substantive due process rights, the extension of such subjective rights is primarily restricted to those liberties central to personal dignity and autonomy. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992) (internal citations omitted). Such extensions demonstrate that the Fourteenth Amendment embraces liberty interests beyond the express provisions of the Bill of Rights. However, in situations where specific guarantees are enumerated in the Bill of Rights, the more specific amendment, and not the generalized notion of substantive due process, must guide the analysis of such claims. *Graham v. Conner*, 490 U.S. 386, 395 (1989).

Because the Fifth Amendment Takings Clause provides explicit limitations on the governmental conduct challenged by Plaintiff, it is that amendment and not the Fourteenth Amendment's guarantee of substantive due process that applies in this situation. *Miller*, 945 F.2d at 352 (declining to extend new and potentially inconsistent

substantive or procedural due process protections when the factual situation fell squarely within the takings clause).

DMA does not allege any facts in support its Fourteenth Amendment Due Process Clause claim that would necessitate using the more generalized protections of the Due Process Clause over the more particularized requirements of the Takings Clause.  In fact, Plaintiff's Count VII allegations are identical to those alleged in Count VIII.  First Amend. Compl. ¶¶132-154.  As a result, Plaintiff's Count VII is subsumed by the Fifth Amendment Takings Clause alleged in Count VIII, and should be dismissed.

## VII.   PLAINTIFF'S TAKINGS CLAIM FAILS TO STATE A CLAIM FOR RELIEF.

DMA fails to state a claim that the Act's requirements constitute an unconstitutional taking of that property interest.  Specifically, Plaintiff fails to assert that the provisions of the Act have or will deprive members of a property interest, and that just compensation has been denied.

Governmental action, even in the absence of acquisition of title or occupancy, in which the effects are so complete as to deprive the owner of all or most of its interest in the property, amounts to a taking requiring just compensation.  *See United States v. General Motors Corp.,* 323 U.S. 373, 377 (1945).  A physical taking occurs when there is a condemnation or physical appropriation of property while a regulatory taking prohibits the private use of the property through regulation.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l. Planning Agency*, 535 U.S. 302, 325 (2002).   Statutory requirements that a business submit trade secret information to the government have been analyzed as a regulatory taking.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. at 1003-04; *Philip Morris, Inc. v. Reilly*, 312 F.3d, 24, 34 (1st Cir. 2002).

Such a taking requires that the government: 1) deprive the property owner of its property; and 2) refuse to compensate the owner for the loss. *Miller,* 945 F.2d at 352 (citing *Williamson*, 473 U.S. at 195 ).  In determining whether a property deprivation has occurred, courts consider factors such as "the character of the governmental action, its economic impact, and its inference with reasonable investment-backed expectations." *See Penn Cent. Transp. Co. v. New York City,* 438 US 104, 124 (1978); *Monsanto,* 467 U.S. at 1005; *Philip Morris*, 312 F.3d at 36-45.  As discussed *supra*, a property owner with a reasonable investment-backed expectation of data confidentiality is not deprived of his property unless or until the trade secret information is disclosed, enabling a competitor to use the information to improve its business.  *Monsanto,* 467 U.S. at 1010-12.

As previously discussed, there is no provision in the Act for public disclosure of the data and any such disclosure would be contrary to Colorado law.  As such, the retailers could not be deprived of their property interest unless an unanticipated, inadvertent data disclosure occurred.  Even if an unanticipated, inadvertent data disclosure were to occur, the taking is not complete.  A property owner has not suffered a taking in violation of the Fifth Amendment until it has unsuccessfully attempted to obtain just compensation through the procedures provided by the government for obtaining such compensation.  *Williamson*, 473 U.S. at 195; *Nat'l Advertising Co.,* 912 F.2d at 413.   Colorado law provides mechanisms for an owner to seek just compensation for a property deprivation caused by government action.  *See* Colo. Rev. Stat. § 38-1-101; Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101, *et. seq.*

Here, DMA alleges that the Act requires retailers to submit proprietary trade secrets to the Department without provisions ensuring the confidentiality, without clear obligation to protect the information, and without funds appropriated to ensure security of the information.  First Amend. Compl. ¶¶28, 32,149.  Plaintiff further alleges that a "substantial risk" for disclosure exists as the Department was cited in the past for failing to take steps to ensure the security of personally identifiable information.  First Amend. Compl. ¶¶28, 29, 32, 49, 50, 149, 150.  DMA also alleges that the Act does not provide a mechanism for compensating the retailer for the taking.  *Id.* ¶146.  These allegations, even taken as true, do not rise to the level of a governmental taking for public use without just compensation.  Plaintiff fails to allege an economic loss, any deprivation of property, or any denial of just compensation.  Instead, Plaintiff requests relief based on events that have not occurred and may not occur at all.  That the customer list could *conceivably* be disclosed, *perhaps* depriving Plaintiff of his property interests, and that Plaintiff *may* not be justly compensated, does not amount to a plausible claim for relief for an unconstitutional taking.

## CONCLUSION

Plaintiff's First Amended Complaint fails to show standing and fails to allege claims upon which relief may be granted. Based on the authorities and arguments cited above, Defendant respectfully requests that the Court dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Respectfully submitted this 30 day of July, 2010.

JOHN W. SUTHERS
Attorney General

  *s/  Karen M. McGovern*
_____

KAREN M. MCGOVERN, 32140*
Assistant Attorney General
ROBERT H. DODD, JR., 27869*
Senior Assistant Attorney General
Revenue, Business and Licensing
Telephone: (303) 866-4589 (Dodd)
Telephone: (303) 866-5455 (McGovern)
Fax: (303) 866-5395
E-mail: robert.dodd@state.co.us
E-mail: karen.mcgovern@state.co.us
*Counsel of Record

STEPHANIE LINDQUIST SCOVILLE*
Senior Assistant Attorney General
Civil Litigation and Employment Law Section
Telephone:  303.866.5241
FAX:  303.866.5443
E-Mail: stephanie.scoville@state.co.us

Attorneys for Defendant

1525 Sherman Street, 7th Floor
Denver, Colorado  80203

*Counsel of Record

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on the 30 day of July, 2010, a copy of the foregoing MOTION TO DISMISS was, in addition to being electronically filed with the Clerk of the Court using the CM/ECF system, sent to the following e-mail addresses via the CM/ECF system:

gissacson@brannlaw.com
mschafer@brannlaw.com

s/   Steve Morrow
_____

_cc: Via inter-office mail_
Ms. Roxy Huber
Executive Director
Colorado Department of Revenue
1375 Sherman Street
Denver, Colorado  80261