EXHIBIT B

**HB10-1193**

*Colorado Legislative Council Staff Fiscal Note*
# STATE and LOCAL
# REVISED FISCAL IMPACT
(replaces fiscal note dated February 2, 2010)

| | |
|---|---|
| **Drafting Number:** LLS 10-0739 | **Date:** February 8, 2010 |
| **Prime Sponsor(s):** Rep. Pommer | **Bill Status:** Senate Appropriations |
| Sen. Heath | **Fiscal Analyst:** Fiona Sigalla (303 866-3556) |

**TITLE:** CONCERNING THE COLLECTION OF SALES AND USE TAXES ON SALES MADE BY OUT-OF-STATE RETAILERS, AND MAKING AN APPROPRIATION THEREFOR.

| Fiscal Impact Summary | FY 2009-2010 | FY 2010-2011 | FY 2011-2012 |
|---|---|---|---|
| **State Revenue** General Fund | Up to $0.9 million | Up to $4.7 million | Up to $4.6 million |
| **State Expenditures** General Fund | | $161,584 | $85,959 |
| **FTE Position Change** | | 1.0 | 1.0 |
| **Effective Date:** Upon signature of the Governor, or upon becoming law without his signature. Effective for sales occurring on or after March 1, 2010. ||||
| **Appropriation Summary for FY 2010-2011:** See the State Appropriations section. ||||
| **Local Government Impact:** Undetermined revenue gain. ||||

## Summary of Legislation

As amended in the Appropriations and Finance committees of the Senate, this bill requires online retailers to collect sales tax from Colorado residents starting March 1, 2010, if they sell, lease, or deliver tangible personal property in the state through solicitation by any constitutional means, including an agreement with a nonexempt affiliate. Retailers are deemed to be doing business in the state if they have a relationship with a nonexempt affiliate that receives commission or other consideration for referring potential customers to the retailer. The requirement to collect sales tax only applies if the retailer's cumulative gross receipts from Colorado sales generated by all affiliates in the state exceeds $10,000 in the preceding year. Sales tax must also be remitted for local jurisdictions.

The Department of Revenue (DOR) will notify retailers and affiliates that are in violation of their exempt status. Th bill contains a process that allows retailers to rebut the presumption that the affiliate has engaged in solicitation. The retailer may terminate the relationship with the affiliate to avoid sales tax collection responsibility.

Retailers that do not collect Colorado sales tax shall send notification to Colorado purchasers that sales or use tax is due on purchases made from the retailer, and that a sales or use tax return is required to be filed with the Department of Revenue. The DOR is authorized to subpoena

information from any retailer. This subpoena power can be used to obtain customer information to enforce use tax collection.

The DOR is required to account for the revenue attributable to this bill, and make quarterly reports to the legislature about the revenue gain to the extent information is available. The bill directs that no new revenue be used to fund additional state FTE.

**Background**

Current law requires Colorado residents to remit use tax on purchases from out-of-state firms if the same purchase would have been subject to sales tax when bought from an in-state firm. Without an enforcement mechanism, this requires consumers to declare tax obligations and remit payment voluntarily.

A 1967 U.S. Supreme Court ruling held that the U.S. Constitution prohibits a state from requiring retailers whose only connection with customers in the state is by common carrier or mail to collect and remit sales and use tax.[1] In 1992, the U.S. Supreme Court clarified that states can only make companies collect sales tax if they have a physical presence in the state.[2]

In 2008, New York state clarified the definition of sales tax vendor to include online retailers with New York-based remote affiliates.[3] The state asserts that New York-based affiliates, who encourage customers to purchase from the online retailer, establish the physical presence necessary to be under state jurisdiction. The New York law requires retailers making more than $10,000 in annual sales in the state through affiliates to charge sales tax on all sales in the state, not just those resulting from the affiliate program. North Carolina and Rhode Island have passed similar laws.

The New York law is being challenged in court. The state of New York is expected to be able to keep revenue remitted under the new law, even if the law is found to be unconstitutional because the tax was legally due from consumers.

*What is affiliate marketing?* Affiliate marketing is where a business pays commission for each customer brought to its website from an affiliate's marketing efforts. Affiliate marketing can take many forms, including through e-mail newsletters, preferential treatment in search engines, reward sites, and by using one website to drive traffic to another. For example, an affiliate marketing website may compare items for purchase, review books or music, and then link to the retailer's website so the consumer can purchase items. This bill, as revised by the House Finance Committee, applies only to affiliate marketing when a Colorado-based individual, such as a religious leader or club president, orally and publicly encourages a group of individuals to participate in an affiliate marketing relationship. This bill was revised by the Senate Finance committee to define an exempt

---

[1] National Bellas Hess, Inc. v. Department of Revenue of State of Illinois, 386 U.S. 753 (1967).

[2] Quill Corp. v. North Dakota, 504 U.S. 298 (1992).

[3] Chapter 57 of the Laws of 2008, State of New York. Tax Law Section 1101 (b)(8) and Sales and Use Tax Regulations Section 526.10(a)(3).

Page 3  
February 8, 2010

**HB10-1193**

affiliate as one that utilizes electronic media to a degree greater than 80 percent to solicit business for the retailer.

### State Revenue

General Fund revenue will increase up to $0.9 million in FY 2009-10, up to $4.7 million in FY 2010-11, and up to $4.6 million in FY 2011-12. The revenue estimate for FY 2009-10 represents a partial-year impact. The revenue impact decreases in FY 2011-12 because, under current law, vendors will begin retaining 3.33 percent of the taxes they collect on July 1, 2011.

It is unclear if the revenue generated under this bill will be collected through increased sales tax or increased use tax compliance. Retailers may terminate affiliate relationships to abstain from sales tax collection responsibilities, if they desire. However, if online retailers choose to not collect sales tax, provisions enhancing use tax enforcement should increase tax compliance from their customers.

Colorado is estimated to generate about 1/5 ($159 million) of New York's total Internet sales based on a report by William Fox of the University of Tennessee and New York Internet sales tax projections for FY 2009-10. Applying a 2.9 percent tax rate generates state revenues of $900,000 in FY 2009-10. Sales taxes are estimated to increase 2.5 percent in FY 2010-11.

This revenue estimate assumes that Colorado's experience with out-of-state tax collections generated by affiliates will be similar to that of New York. Internet retailers discontinued relationships with affiliate marketers in North Carolina and Rhode Island following the adoption of a similar law. If Internet retailers discontinue their relationships with Colorado-based affiliates, the revenue generated by this bill would be less than currently estimated. North Carolina and Rhode Island are still estimating the revenue gain associated with this new law. Rhode Island is unsure if the new law has generated additional revenue. North Carolina has increased collections, but can not quantify the gain at this time.

### State Expenditures

**The bill spends $161,584 and 1.0 FTE in FY 2010-11 and $85,959 and 1.0 FTE in FY 2011-12 from the General Fund.**

*Department of Revenue.* The department (DOR) will hire 0.5 FTE to maintain records regarding online retailers, including seeking out and investigating retailers, sending letters, responding to calls, and building a database to track information. This position will be ongoing. DOR will hire 0.5 FTE for policy and legal research to respond to legal actions by retailers. This position will be needed for two years. DOR anticipates that legal action by online retailers will result in legal costs from the Department of Law of $40,000 in FY 2010-11 and $20,000 in FY 2011-12. DOR will need $30,000 in FY 2010-11 to contract with the State Internet Portal Authority to develop an online tax payment system. In FY 2010-11, six temporary employees will be needed for two months to answer questions from taxpayers. Two temporary employees will be needed in

FY 2011-12, because it is assumed that taxpayers will become familiar with the provisions of this bill.

| Table 1. Expenditures Under HB10-1193 | | |
|---|---|---|
| **Cost Components** | **FY 2010-11** | **FY 2011-12** |
| Personal Services | $91,584 | $65,959 |
| FTE | 1.0 | 1.0 |
| Operating Expenses and Capital Outlay | 30,000 | - |
| Legal Services | 40,000 | 20,000 |
| **TOTAL** | **$161,584** | **$85,959** |

*Department of Law.* The department indicated an indeterminate impact predicated on the assumption of potential litigation.

## Local Government Impact

This bill will result in an undetermined increase in revenue for local government entities because online retailers will collect local sales tax in addition to state sales tax.

## State Appropriations

In FY 2010-11, the Department of Revenue requires an appropriation of $161,584 and 1.0 FTE.

## Departments Contacted

Revenue
Law