**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

       Plaintiff,

       v.

Roxy Huber, in her capacity as Executive
    Director, Colorado Department of Revenue,

       Defendant.

_____

## DECLARATION OF PROFESSOR KEVIN LANE KELLER
_____

     I, Kevin Lane Keller, pursuant to 28 U.S.C. § 1746, do depose and state as follows:

    1.  I am the E.B. Osborn Professor of Marketing at the Tuck School of Business at Dartmouth College.  I have been retained by the law firm of Brann & Isaacson, as counsel to the Direct Marketing Association ("DMA"), to present my opinions regarding the effect that a new Colorado law (House Bill 10-1193, "An Act Concerning The Collection Of Sales And Use Taxes On Sales Made By Out-Of-State Retailers, And Making An Appropriation Therefor" ("the Act")), will have on the business of affected Internet and catalog retailers, and on their relationships with Colorado customers.  My opinions in that regard are based upon my experience and expertise in the field of marketing, as well as on my review of the result of a survey of Colorado consumers

1

conducted in June 2010 by Resource Systems Group, Inc. ("RSG"), concerning consumers' reactions to the requirements of the Act and of related regulations adopted by the Colorado Department of Revenue ("Department").   I conclude, as described more fully in this declaration, that out-of-state retailers affected by the law will likely suffer lost sales and permanent injury to their relationships with customers as a result of complying with the requirement that they disclose their customers' purchasing information to the Department.

2.  Much of my work, both as an academic and as a consultant to businesses, focuses on the relationship between retailers (or brands) and consumers, including the importance to a retailer (or brand) of establishing and maintaining the trust of its customers.  My work also frequently involves the use and/or analysis of consumer surveys. During my MBA and PhD studies, I took graduate level courses in marketing research that included survey design and interpretation.  Since receiving my PhD, I have run countless academic research studies that involved the design, conduct and analysis of surveys.  Many of my activities with consulting clients have also involved survey work, including projects with Procter & Gamble, Ford, Samsung, and other companies.   A copy of my current *curriculum vitae* is attached hereto as Exhibit A.

3.  It is my understanding that the new Colorado law requires out-of-state retailers who do not collect Colorado sales tax to: (a) give Colorado purchasers notice with each transaction that the retailer does not collect Colorado sales tax, but that the purchaser has an obligation to self-report use tax to the Department, even on catalog and Internet sales; (b) send each Colorado purchaser (at least those who purchase $500 in taxable

goods or services from the retailer) an annual notice informing them, among other things, of their total purchase amount for the past year and that the retailer is required to report their name and total amount of purchases to the Department; and (c) file an annual report with the Department listing for each Colorado purchaser (regardless of purchase amount) the purchaser's name, billing address, shipping address and total amount of purchases.

4.   I am aware that RSG conducted a survey of Colorado consumers in June 2010 to determine their reactions to the requirements of the new Colorado law.  Indeed, I reviewed a draft of the survey questionnaire when it was being prepared, and I have reviewed a document prepared by RSG entitled "Colorado Consumer Survey, *Final Results*," dated August 9, 2010 ("*Final Results*"), setting forth the results of the full survey.   A copy of the *Final Results* is attached to the Declaration of Thomas J. Adler, PhD, as Exhibit B.   I have also reviewed the declaration of Dr. Adler concerning the survey.

5.   The objectives of the RSG survey were: (1) to determine whether Colorado consumers consider the requirement that out-of-state retailers must report their purchasing information to the Department to be an invasion of their privacy or, instead, if Colorado consumers do not mind the disclosure of such information to the Department; and (2) to determine whether the reporting requirement will affect, in any way, Colorado consumers' future purchases from out-of-state retailers who are required to provide such information to the Department.  Based on my understanding of the requirements of the new law and the objectives of the survey, I believe that the survey

was well-designed and executed.  I am confident in relying upon the results of the survey in support of my opinions expressed in this declaration.

### Retailers Who Must Disclose Customer Purchasing Information to the Department Will Lose Sales as a Result

6.   Based upon my experience in the field of consumer marketing, and the results of the RSG Survey, it is my opinion that many consumers will view negatively the obligation of affected out-of-state retailers to disclose the customers' names, addresses and amount of purchases to a government agency.  Indeed, many consumers who become aware of the requirement, including past or current customers of the retailer, will be less likely to make a purchase from such a retailer than they would be if the retailer was not required to report their information to the government.  This will be just as true for consumers residing in Colorado as in any other state.

7.   As a result, retailers required to make such disclosures to the Department will lose a substantial portion of their Colorado sales.  The amount of such lost sales for any particular retailer will depend upon a number of factors, but for a law that applies broadly to all Internet and catalog retailers with Colorado gross sales in excess of $100,000 that do not collect Colorado sales tax, the aggregate volume of such lost sales, industry wide, will be very large.

8.   My conclusion that Internet and catalog retailers who are required to disclosure their customers' information to the Department will lose sales as a result is supported by the results of the RSG survey.   The results of the survey show that two-thirds of Colorado Internet and catalog shoppers (67%) who aware of the disclosure requirement will decrease their purchases from such retailers in the coming year.  Even more

4

tellingly, when asked to reflect upon a recent purchase from an out-of-state retailer that does not collect Colorado sales tax, sixty-three percent (63%) of Colorado consumers would most likely not make a similar purchase again from the affected the out-of-state retailer because of the disclosure requirement.  In stark contrast, Colorado retailers will be directly benefitted by the law: forty-three percent (43%) of Colorado catalog/online purchasers responded to the RSG survey that they will make future purchases instead from a Colorado retailer that is not required to disclose their purchase information to the Department.   Of course, out-of-state Internet and catalog sellers can never recoup the sales they will lose from customers who decided not to buy from them, or who choose to buy from another, Colorado retailer.

<u>**The Harm to Retailers' Customer Relationships**</u>
<u>**and Businesses Will Be Permanent**</u>

9.    There are other, potentially more serious, even permanent, consequences for affected out-of-state retailers that elect to comply with the new law and turn-over such customer information to the Department.  By disclosing customer purchasing information to the Department, even if required to do so by law, out-of-state retailers will definitely alienate customers in Colorado and elsewhere, including many of their best customers (whom the retailer will be required to inform directly of the requirement that the retailer must report such information to the Department).

10. Establishing a relationship of reliability and trust with customers is the key to the long-term success of most retailers or brands.  High levels of customer satisfaction with a retailer derive not just from the retailer's products, but from the entire customer experience.  For many of the most successful Internet and catalog retailers and brands,

customer satisfaction depends upon maintaining the security and privacy of a customer's personal information, and not willingly disclosing it to any third-party, including a state government agency.  This is a major reason why almost all direct marketers adopt clear privacy policies and disclose those policies to the public.

11.  The privacy and security of personal information in the hands of both businesses and government agencies remains a significant concern to many consumers, and the extent to which government should be permitted access to customer information maintained by businesses is much debated by policy makers.  As the results of the RSG survey indicate, many consumers view information maintained by companies with which they do business, including generalized information such as their identity as a customer of the company and the frequency or volume of their transactions, to be private, confidential information that they would prefer not be shared with the government.  Companies that consent to allow governmental access to such personal customer information, rather than resist government demands for it, are viewed negatively by consumers, as the revelation in 2006 that telecommunications providers Verizon, AT&T and Bell South may have disclosed customer phone records to the National Security Agency illustrates.

12.  Breaching trust with the customer and failing to live up to customer expectations regarding protection of sensitive transaction information will have a long-lasting detrimental effect on a retailer.  Once the relationship of trust with a customer is destroyed, many such customers will be permanently lost.  Retailers that comply with the requirements of the Colorado law by disclosing their customers' information to the

Department can expect to lose customers (and thus future sales) in Colorado and elsewhere, as a result.

13.   My conclusions in this regard are supported by the results of the RSG survey. The survey shows that an overwhelming majority — nearly 70% (including 44% who "strongly agree") — of Colorado online and catalog shoppers believe that the requirement of the new law that out-of-state retailers must report their customers' purchase information to the Department constitutes an invasion of privacy, while only 14% of such consumers report that they do not mind the disclosure.  Such strong consumer sentiment indicates that retailers who make such disclosures will damage their relationships with many Colorado customers with lasting negative effects on the retailers' sales and business.

I declare under penalty of perjury that the foregoing is a true and correct. Executed on this 10th day of August, 2010

/s/ Kevin Lane Keller
Kevin Lane Keller

7