IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

    Plaintiff,

    v.

Roxy Huber, in her capacity as Executive
   Director, Colorado Department of Revenue,

    Defendant.

_____

## DECLARATION OF THOMAS J. ADLER, PHD.
_____

    I, Thomas J. Adler, PhD., pursuant to 28 U.S.C. § 1746, do depose and state as follows:

    1.  I am the President of Resource Systems Group, Inc. ("RSG"), a professional research and consulting firm with offices in White River Junction and Burlington Vermont, Salt Lake City, Utah and Chicago, Illinois.  I make this declaration upon my personal knowledge.

    2.  I have worked in the field of complex data collection and analysis, including specifically consumer choice modeling and research, for more than thirty (30) years.  I hold a BS in Civil and Environmental Engineering from Cornell University and a Master of Science and PhD. in Transportation Systems from the Massachusetts Institute of Technology.  From 1976 to 1986, I was a professor at Dartmouth College, where I

1

taught courses in consumer choice modeling, statistics, operations research, computer science, and engineering. While at Dartmouth, I served as director of the graduate program in Resource Policy and was principal investigator for several large, federally sponsored research projects.  In 1986, I co-founded RSG and have served as its President for the last 24 years. In connection with my work both prior to and since founding RSG, I have developed a particular expertise in designing, conducting and analyzing the results of sophisticated market research studies and consumer surveys. While at RSG, I have directed over 200 major projects, including market strategy studies for numerous Global 1000 firms, as well as detailed planning studies for both public and private sector initiatives.  Our work at RSG involves the design of sophisticated approaches to collecting, modeling, and communicating meaningful, nuanced data that organizations and government agencies can use to make informed policy and operational decisions.  A copy of my current *curriculum vitae* is attached hereto as Exhibit A.

 3.  RSG was retained in May 2010 by Brann & Isaacson, as counsel to the Direct Marketing Association ("DMA"), to perform a survey of Colorado consumers to determine their reactions to the requirements of a new Colorado law, enacted in February 2010, and referred to as As Act Concerning the Collection of Sales and Use Taxes On Sales Made By Out-of-State Retailers, and Making an Appropriation Therefor ("the Act").   The Act and the regulations adopted by the Colorado Department of Revenue ("Department") to implement it impose certain notice and reporting obligations on out-of-state retailers that do not collect Colorado sales tax.  Among other things, the

2

law requires out-of-state retailers that do not collect Colorado sales tax to report to the Department the name and total amount of purchases of each Colorado customer of the retailer.  The survey, which was fielded in June 2010, had two primary objectives: (1) to determine whether Colorado consumers consider the requirement that out-of-state retailers must report their purchasing information to Department to be an invasion of their privacy or, instead, if Colorado consumers do not mind the disclosure of such information to the Department; and (2) to determine whether the reporting requirement will affect, in any way, Colorado consumers' future purchases from out-of-state retailers who are required to provide such information to the Department.

4.   As described in more detail, below, RSG designed the survey, took appropriate steps to ensure its objectivity, oversaw its administration, ensured that the data were accurately gathered and reported, processed and analyzed the data in accordance with accepted statistical principles, and tabulated the results. In sum, the survey of Colorado consumers conducted by RSG was in all respects consistent with generally–accepted survey principles and produced statistically valid results regarding the survey objectives.

5.   RSG produced a document entitled Colorado Consumer Survey, *Final Results*, dated August 9, 2010 ("*Final Results*"), setting forth the results of the full survey.   A copy of the *Final Results* is attached hereto as Exhibit B.   The results demonstrate that more than two-thirds (69%) of Colorado Internet and catalog shoppers either agree or strongly agree that the requirement of the law that retailers must report their purchase information to the Department constitutes an invasion of their privacy.  [Ex. B., pp. 2, 5.] Furthermore, the results show that a substantial majority of Colorado consumers state

the disclosure requirement will cause them not to make purchases from out-of-state retailers who must report their customers' purchase information to the Department. Two-thirds of Colorado Internet and catalog shoppers (67%) will decrease their purchases from such retailers in the coming year, while sixty-three percent (63%) would most likely not make a similar purchase again from the affected the out-of-state retailer from whom they most recently purchased.  [Ex. B, pp. 2, 6.] Forty-three percent (43%) of catalog/online purchasers would instead buy from Colorado retailer that is not required to disclose such information to the Department. [Ex. B, p. 6.]

6.   In designing and implementing the survey, RSG followed accepted survey principles, techniques and methodologies.  While the new Colorado law potentially affects all Colorado purchasers who might shop via mail order, telephone, or online from an out-of-state retailer that does not collect Colorado sales tax, RSG recommended and adopted certain adjustments and safeguards in designing the survey to establish the appropriate universe of potential respondents in light of the law's requirements, the objectives of the survey, and other factors.  First, based on a variety of different considerations, we elected to exclude minors under the age of 18 from the survey population.  Next, although the notice and reporting requirements of the new law will in some cases impact residents of states other than Colorado who request that goods be shipped into Colorado, the purpose of the survey was to evaluate the reactions of Colorado consumers, so we excluded residents of other states.   In addition, RSG recommended that the survey should seek to identify those individuals who have made a recent purchase (*i.e.*, within the last 6 months) from a catalog or Internet retailer

4

because such individuals are likely to be more representative of the existing customers of the out-of-state sellers who are subject to the Act and regulations, and thus a more reliable population for evaluating the affect of the new law's requirements on consumer attitudes and behavior. Finally, consistent with good survey practice, we determined to exclude potential respondents working in either the market research field or in Internet or catalog sales since there is a higher likelihood that their responses would be influenced by external factors. These adjustments establish a proper universe of potential respondents for the survey.

7. In light of the target population, subject matter, survey objectives, timing, and other factors, including those listed in the prior paragraph, RSG recommended that the survey be conducted using a survey panel of Colorado residents (age 18 and over) obtained through a third-party firm (KnowledgeNetworks) specializing in supporting consumer surveys. RSG has used such panels in the past on many occasions and their use represents generally-accepted survey methodology and principles. Moreover, to ensure that the population did not include individuals that RSG recommended be excluded, the survey questionnaire itself included three screening/eligibility questions. Thus, individuals who began the survey but who responded that (1) they worked in either market research or Internet or catalog sales [*see* Ex B., p. 13], or (2) resided in a state other than Colorado [*see* Ex B., p. 14], or (3) had not made a purchase from a catalog or Internet retailer (expressly excluding purchases from individuals on auction-type sites like Craig's List or eBay), in the past six months [*see* Ex B., p. 15] were not permitted to complete the survey.

5

8. RSG further recommended, in light of all the factors, that the sample size should be one-thousand (1,000) completed survey responses. A sample of that size is more than adequate to generate statistically valid results regarding the reactions, preferences, and behavior of Colorado consumers. In the end, the survey ultimately encompassed the responses of 1,019 Colorado consumers selected and screened in the manner described above.   I am confident that the sample obtained was representative of the relevant universe of Colorado consumers and more than adequate to produce statistically valid results regarding the survey objectives.

9. I drafted and revised the survey questionnaire myself, working with others at RSG and with Brann & Isaacson, as well as Professor Kevin Lane Keller. A complete set of the final survey questions as presented to respondents is included within the *Final Results*, at pages 10 – 21.   In preparing the questionnaire, I reviewed the Act and regulations published by the Department. The questions were designed to be clear and not to suggest any particular response. So, for example, the survey was administered so that, for the question asking the respondents to "agree or disagree with each of the following statements" [Ex. B, p. 18], the order of the statements was randomized, so for some respondents the statement asking if the respondent considers the disclosure requirement "an invasion of my privacy" would be first, and for some respondents the statement "I do not mind the State of Colorado knowing" the respondent's purchase information would be first.  Likewise, for the question asking how the respondent's catalog and Internet purchases would likely be affected in the coming year, the order of the possible responses was randomized, as well. [Ex. B, p. 20.] The final questionnaire

presented to respondents is entirely consistent with generally-accepted survey principles and properly designed to collect the necessary information for the study.

10. Finally, I am confident that the survey data were gathered properly and accurately reported in the results.  RSG has frequently confirmed the reliability of the systems we use to record the results of similarly-administered surveys.  In addition, RSG maintains the source data and has verified the accuracy of the results.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 10th day of August, 2010

/s/ Thomas J. Adler<br>Thomas J. Adler, PhD.