

DEPOSITION
EXHIBIT
17
10/21/10

PENGAD 800-631-6989

### DMA/Colorado:  Questionnaire

*(Version 9a - For Final Review)*

Thank you for agreeing to participate in this survey. The purpose of the survey is to understand some of the factors that may affect your purchase decisions. The survey is being conducted by Resource Systems Group, Inc., an independent survey research firm. Please be assured that your answers will be kept strictly confidential and will not be associated with your name in any way. Absolutely no sales or marketing activity will result from your participation.

Please click "Next Question" to begin.

Please use the "Next Question" button in the lower left corner of the browser to go forward. If you back up to change an answer, please be sure to click "Next Question" to continue forward. It is important that you do NOT use your web browser's "forward" button because your new answers will not be recorded.

To review a previous question, use the browser's "back" button, which is the left-pointing arrow in the upper left corner of the browser.

Please click "Next Question" to continue.

*Programming note: a progress bar should be shown at the bottom of the screen during the survey.*

1. Are you or any of your immediate family members currently employed in any of the following areas?

Please select all that apply.

    a. Advertising or public relations

    b. Agriculture or farming

    c. Construction

    d. Consulting

    e. Law or law enforcement

    f. Financial services or banking

    g. Education

    h. Market research → Terminate

    i. Media

    j. Manufacturing

    k. Public service or Not-for-profit

KLK 00225

l.  Government agency

m.  Real estate

n.  Internet or catalog sales → Terminate

o.  Retailing

p.  Wholesaling

q.  Other

r.  None of the above

2.  In what state do you currently live?

(use pull-down list of states) → Terminate if not Colorado

3.  Have you purchased any products from an Internet or catalog retailer at any time within the past 6 months?

Please do not include purchases from individuals, such as individual sellers on eBay or Craig's List.

    a.  YES

    b.  NO → Terminate

4.  For the next set of questions, please think about the MOST RECENT purchase that you made from an Internet or catalog retailer that is not located in Colorado and did not charge sales tax on the transaction. Again, please do not include purchases from individuals, such as individual sellers on eBay or Craig's List.;

Which of the following best describes the type of product you purchased?

Please select all types that you bought as part of that most recent purchase.

    a.  Books, music or video

    b.  Clothing or accessories

    c.  Drugs or cosmetics

    d.  Consumer Electronics

    e.  Computers and computer accessories

KLK 00226

f.   Jewelry

g.   Tools/hardware

h.   Furniture/homeware

i.   Cooking/Kitchenware

j.   Outdoor/garden

k.   Food or drinks

l.   Software

m.   Office Supplies

n.   Other _____ please describe

o.   None of the above

5.   How did you make this purchase?

a.   Over the Internet

b.   By telephone

c.   By mail

6.   Assume that in the future, the seller of this item, along with other out-of-state retailers, would be required to report your name, billing address, shipping address, the amount of your purchases, and the name of the retailer to the Colorado Department of Revenue.

Please indicate whether you agree or disagree with each of the following statements. (the following are all on 5-point Likert agree/disagree scale)

a.   Reporting my name, billing address, shipping address, and the amount of my purchases to the State is an invasion of my privacy

b.   I do not mind the State of Colorado knowing the kinds of products I buy, from whom I buy them, where I have them shipped, and how much I spend

7.   If you were to make this type of purchase in the future under similar circumstances, but with this new disclosure requirement in place, what would you most likely do?

a.   Purchase the item from this seller just as I did

b.   Purchase this item by phone, mail, or internet from a retailer located in Colorado that is not required to report my name, billing address, shipping address, and the amount of my purchases to the Colorado Department of Revenue

KLK 00227

c. Purchase the item in person from a store located in Colorado that is not required to report my name, billing address, shipping address, and the amount of my purchases to the Colorado Department of Revenue

d. Not purchase the item at all

e. Other (please describe) _____

8. A new Colorado law requires each Internet and catalog retailer that does not collect Colorado sales tax to file annually with the Colorado Department of Revenue a written statement identifying each Colorado consumer who made purchases from the retailer during the previous calendar year and showing the total amount paid by each purchaser.

Under this new law, the Colorado Department of Revenue requires each Internet and catalog retailer that does not collect Colorado sales tax to give the purchaser notice with each purchase that:

i. The retailer does not collect Colorado sales tax.

ii. The purchase is not exempt from Colorado sales or use tax merely because it is made over the Internet or by other remote means.

iii. The retailer is required by law at the end of the year to report to the Colorado Department of Revenue the purchaser's name, billing address, shipping address, and total dollar amount of Colorado purchases made over the Internet or by other remote means on which no Colorado sales tax was collected.

iv. The State of Colorado requires that a Colorado purchaser must file a sales/use tax return at the end of the year reporting all taxable Colorado purchases that were not taxed and pay sales/use tax on those purchases.

v. The retailer will send the purchaser an end-of-year summary of all Colorado purchases in order to assist in filing the use tax return.

As a result of this law, how would your Internet and catalog purchases from out-of-state retailers who must report your name, address and purchase amount to the Department of Revenue likely be affected over the coming year?

a. Increase as compared to the past year

b. Remain the same as in the past year

c. Decrease as compared to the past year

Thank you very much for your input so far!  The survey is almost complete.  The last few questions will be used only to categorize your answers.  Once again, please be assured that your answers will be kept strictly confidential and will not be associated with your name in any way.

9.  Which of the following categories represents your age?

    a.  Under 21

    b.  21 – 34

    c.  35 – 44

    d.  45 – 54

    e.  55 – 64

    f.  65 – 74

    g.  75 or older

10. Do any children under the age of 18 are currently live in your home?

    a.  Yes

    b.  No

11. What is your gender?

    a.  Female

    b.  Male

12. Which of the following categories includes your HOUSEHOLD'S total income for 2009 before taxes and including all sources of income?

    a.  Less than $30,000

    b.  $30,000 - $49,999

    c.  $50,000 - $74,999

    d.  $75,000 - $149,999

KLK 00229

    e.  $150,000 - $249,999

    f.  $250,000 or more

Thank you very much for your valuable input!  All of your answers have been saved and you have now completed the survey. You may close your browser or visit other websites.

KLK 00230

Geog/Matt

DMA — NTC

Jerry steracell — SUP

CO — legislation          state revenue dept
        3(1              (remote sales)

Nexus
  legislative
     ry          → physical     — employees/facility
                   presence       agents

Sr. Christian Ned        economic   state
Joseph Neb               presence   tried

Tom Adler
RSB

unbiased
single
sharp (C

Direct
     Chewing        non-collect            (collect retailers)           prelim injunch /damages
                    retailer
                          — sales transacts — notice                    threat
                    ①                    use                            irreparhard
invoice of                              product                          here—
consumer            — retailer — tax duty
product
                      — consumer

                    ② annual filing

                    ③

suture

DEPOSITION
EXHIBIT CF
29
10/21/10
PENGAD 800-631-6989

| | |
|---|---|
| **From:** | Matthew P. Schaefer |
| **To:** | Kevin L. Keller |
| **Cc:** | George S. Isaacson |
| **Bcc:** | Jolene LaJoie |
| **Subject:** | RE: Declaration in Support of Motion for Preliminary Injunction |
| **Date:** | Friday, August 06, 2010 3:39:00 PM |
| **Attachments:** | 20100806 Declaration of Kevin Keller (draft).docx |

Kevin:

Thank you for getting back to us.  I attach a revised version of your declaration based upon George's further review.  With regard to your questions, I think the declaration is short enough that a conclusion is not needed. I am proposing to emphasize Tom's role as draftsman, especially since there were a few final round changes after your review, so we are comfortable in this case describing your role as a reviewer. I would propose that we schedule a short call to review and finalize the document.  Please let us know what time early next week would be good for you.

Thanks,

Matt


-----Original Message-----
From: Kevin L. Keller [mailto:Kevin.L.Keller@tuck.dartmouth.edu]
Sent: Tuesday, August 03, 2010 10:39 AM
To: Matthew P. Schaefer
Cc: George S. Isaacson
Subject: Re: Declaration in Support of Motion for Preliminary Injunction

--- "Matthew P. Schaefer" wrote:
Kevin:

I attach for your review a draft of your declaration to be filed in support of the Direct Marketing Association's motion for preliminary injunction regarding the Colorado notice and reporting law, together with the current drafts of Tom Adler's declaration and RSG's report of the results of the survey of Colorado customers fielded in June, to which your declaration refers.

Please propose any revisions you feel are appropriate.   We will plan to work together with you to further revise and refine your declaration in the next week or so.  Let us know if you have any questions.

Thanks,

Matt
--- end of quote ---

Hi Matt/George,

I thought this basically looked fine.  I usually end with conclusions section ...
but may not be necessary here.

Be sure Adler report aligns ... there is passage ...

9.      I drafted and revised the survey questionnaire myself, working with others at RSG and with Brann & Isaacson.

Shouldn't I be included here too?

There was also a typo on 2007 for data collection in his report.

Happy to talk more!

Best,

KLK

Kevin Lane Keller
E.B. Osborn Professor of Marketing
Tuck School of Business
100 Tuck Hall
Dartmouth College
Hanover, NH 03755-9011
(603) 646-0393 (o)
(603) 646-1308 (f)

KLK 00275

DEPOSITION
EXHIBIT  CP
2 CP
10/21/10
PENGAD 800-631-6989

**From:** Kevin L. Keller
**To:** George S. Isaacson
**Cc:** Matthew P. Schaefer
**Subject:** Re: Affidavit for Preliminary Injunction Motion
**Date:** Saturday, July 17, 2010 10:56:39 AM

--- "George S. Isaacson" wrote:
Kevin,
We anticipate having a draft, for your review, of your affidavit in support of a preliminary injunction motion within the next 10 days. It will rely heavily on the favorable results obtained from the RSG survey. Will you generally be available/reachable during that time period?
Thanks.
--- end of quote ---

Thanks for update George ... plan sounds good ... I am largely around next 10 days ... no trips. Best. KLK

Kevin Lane Keller
E.B. Osborn Professor of Marketing
Tuck School of Business
100 Tuck Hall
Dartmouth College
Hanover, NH 03755-9011
(603) 646-0393 (o)
(603) 646-1308 (f)

KLK 00270

DEPOSITION
EXHIBIT CP
25
10/21/10
PENGAD 800-631-6989

**From:**     Kevin L. Keller
**To:**        Matthew P. Schaefer
**Subject:**  Re: Declaration in Support of Motion for Preliminary Injunction
**Date:**     Friday, July 30, 2010 1:35:18 PM

--- You wrote:
Kevin:

I attach for your review a draft of your declaration to be filed in support of the Direct Marketing Association's motion for preliminary injunction regarding the Colorado notice and reporting law, together with the current drafts of Tom Adler's declaration and RSG's report of the results of the survey of Colorado customers fielded in June, to which your declaration refers.

Please propose any revisions you feel are appropriate.   We will plan to work together with you to further revise and refine your declaration in the next week or so.  Let us know if you have any questions.

Thanks,

Matt
--- end of quote ---

Thanks Matt (and George) ... I'll review this weekend and let you know of any necessary revisions next week.  I am around next week too if we need to talk.  In the meantime ... have a great weekend!  Best.  KLK

Kevin Lane Keller
E.B. Osborn Professor of Marketing
Tuck School of Business
100 Tuck Hall
Dartmouth College
Hanover, NH 03755-9011
(603) 646-0393 (o)
(603) 646-1308 (f)



DEPOSITION
EXHIBIT *CP*

*26*

*10/21/10*

PENGAD 800-631-6989

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

      Plaintiff,

      v.

Roxy Huber, in her capacity as Executive
      Director, Colorado Department of Revenue,

      Defendant.

---

## <u>DECLARATION OF PROFESSOR KEVIN LANE KELLER</u>

---

      I, Kevin Lane Keller, pursuant to 28 U.S.C. § 1746, do depose and state as

follows:

      1.  I am the E.B. Osborn Professor of Marketing at the Tuck School of Business at

Dartmouth College.  I have been retained by the law firm of Brann & Isaacson, as

counsel to the Direct Marketing Association ("DMA"), to present my opinions regarding

the effect that a new Colorado law (House Bill 10-1193, "An Act Concerning The

Collection Of Sales And Use Taxes On Sales Made By Out-Of-State Retailers, And

Making An Appropriation Therefor" ("the Act")), will have on the business of affected

Internet and catalog retailers, and on their relationships with Colorado customers.  My

opinions in that regard are based upon my experience and expertise in the field of

marketing, as well as on my review of the result of a survey of Colorado consumers

1

KLK 00045

conducted in June 2010 by Resource Systems Group, Inc. ("RSG"), concerning consumers' reactions to the requirements of the Act and of related regulations adopted by the Colorado Department of Revenue ("Department").   I conclude, as described more fully in this declaration, that out-of-state retailers affected by the law will likely suffer lost sales and permanent injury to their relationships with customers as a result of complying with the requirement that they disclose their customers' purchasing information to the Department.

2.   Much of my work, both as an academic and as a consultant to businesses, focuses on the relationship between retailers (or brands) and consumers, including the importance to a retailer (or brand) of establishing and maintaining the trust of its customers.  My work also frequently involves the use and/or analysis of consumer surveys. During my MBA and PhD studies, I took graduate level courses in marketing research that included survey design and interpretation.  Since receiving my PhD, I have run countless academic research studies that involved the design, conduct and analysis of surveys.  Many of my activities with consulting clients have also involved survey work, including projects with Procter & Gamble, Ford, Samsung, and other companies.   A copy of my current *curriculum vitae* is attached hereto as Exhibit A.

3.  It is my understanding that the new Colorado law requires out-of-state retailers who do not collect Colorado sales tax to: (a) give Colorado purchasers notice with each transaction that the retailer does not collect Colorado sales tax, but that the purchaser has an obligation to self-report use tax to the Department, even on catalog and Internet sales; (b) send each Colorado purchaser (at least those who purchase $500 in taxable

2

KLK 00046

goods or services from the retailer) an annual notice informing them, among other things, of their total purchase amount for the past year and that the retailer is required to report their name and total amount of purchases to the Department; and (c) file an annual report with the Department listing for each Colorado purchaser (regardless of purchase amount) the purchaser's name, billing address, shipping address and total amount of purchases.

4. I am aware that RSG conducted a survey of Colorado consumers in June 2010 to determine their reactions to the requirements of the new Colorado law. Indeed, I reviewed a draft of the survey questionnaire when it was being prepared, and I have reviewed a document prepared by RSG entitled "Colorado Consumer Survey, *Final Results*," dated August __, 2010 ("*Final Results*"), setting forth the results of the full survey. A copy of the *Final Results* is attached to the Declaration of Thomas J. Adler, PhD, as Exhibit B. I have also reviewed the declaration of Dr. Adler concerning the survey.

5. The objectives of the RSG survey were: (1) to determine whether Colorado consumers consider the requirement that out-of-state retailers must report their purchasing information to the Department to be an invasion of their privacy or, instead, if Colorado consumers do not mind the disclosure of such information to the Department; and (2) to determine whether the reporting requirement will affect, in any way, Colorado consumers' future purchases from out-of-state retailers who are required to provide such information to the Department. Based on my understanding of the requirements of the new law and the objectives of the survey, I believe that the survey

3

KLK 00047

was well-designed and executed.  I am confident in relying upon the results of the survey in support of my opinions expressed in this declaration.

### Retailers Who Must Disclose Customer Purchasing Information to the Department Will Lose Sales as a Result

6.   Based upon my experience in the field of consumer marketing, and the results of the RSG Survey, it is my opinion that many consumers will view negatively the obligation of affected out-of-state retailers to disclose the customers' names, addresses and amount of purchases to a government agency.  Indeed, many consumers who become aware of the requirement, including past or current customers of the retailer, will be less likely to make a purchase from such a retailer than they would be if the retailer was not required to report their information to the government.  This will be just as true for consumers residing in Colorado as in any other state.

7.   As a result, retailers required to make such disclosures to the Department will lose a substantial portion of their Colorado sales.  The amount of such lost sales for any particular retailer will depend upon a number of factors, but for a law that applies broadly to all Internet and catalog retailers with Colorado gross sales in excess of $100,000 that do not collect Colorado sales tax, the aggregate volume of such lost sales, industry wide, will be very large.

8.   My conclusion that Internet and catalog retailers who are required to disclosure their customers' information to the Department will lose sales as a result is supported by the results of the RSG survey.   The results of the survey show that two-thirds of Colorado Internet and catalog shoppers (67%) who aware of the disclosure requirement will decrease their purchases from such retailers in the coming year.  Even more

4

KLK 00048

tellingly, when asked to reflect upon a recent purchase from an out-of-state retailer that does not collect Colorado sales tax, sixty-three percent (63%) of Colorado consumers would most likely not make a similar purchase again from the affected the out-of-state retailer because of the disclosure requirement.  In stark contrast, Colorado retailers will be directly benefitted by the law: forty-three percent (43%) of Colorado catalog/online purchasers responded to the RSG survey that they will make future purchases instead from a Colorado retailer that is not required to disclose their purchase information to the Department.   Of course, out-of-state Internet and catalog sellers can never recoup the sales they will lose from customers who decided not to buy from them, or who choose to buy from another, Colorado retailer.

## The Harm to Retailers' Customer Relationships and Businesses Will Be Permanent

9.   There are other, potentially more serious, even permanent, consequences for affected out-of-state retailers that elect to comply with the new law and turn-over such customer information to the Department.  By disclosing customer purchasing information to the Department, even if required to do so by law, out-of-state retailers will definitely alienate customers in Colorado and elsewhere, including many of their best customers (whom the retailer will be required to inform directly of the requirement that the retailer must report such information to the Department).

10. Establishing a relationship of reliability and trust with customers is the key to the long-term success of most retailers or brands.  High levels of customer satisfaction with a retailer derive not just from the retailer's products, but from the entire customer experience.  For many of the most successful Internet and catalog retailers and brands,

5

KLK 00049

customer satisfaction depends upon maintaining the security and privacy of a customer's personal information, and not willingly disclosing it to any third-party, including a state government agency. This is a major reason why almost all direct marketers adopt clear privacy policies and disclose those policies to the public.

11.   The privacy and security of personal information in the hands of both businesses and government agencies remains a significant concern to many consumers, and the extent to which government should be permitted access to customer information maintained by businesses is much debated by policy makers. As the results of the RSG survey indicate, many consumers view information maintained by companies with which they do business, including generalized information such as their identity as a customer of the company and the frequency or volume of their transactions, to be private, confidential information that should not be shared with the government. **[Kevin: Let's discuss.]** Companies that consent to allow governmental access to such personal customer information, rather than resist government demands for it, are viewed negatively by consumers, as the revelation in 2006 that telecommunications providers Verizon, AT&T and Bell South may have disclosed customer phone records to the National Security Agency illustrates.

12.   Breaching trust with the customer and failing to live up to customer expectations regarding protection of sensitive transaction information will have a long-lasting detrimental effect on a retailer. Once the relationship of trust with a customer is destroyed, many such customers will be permanently lost. Retailers that comply with the requirements of the Colorado law by disclosing their customers' information to the

6

KLK 00050

Department can expect to lose customers (and thus future sales) in Colorado and elsewhere, as a result.

13.   My conclusions in this regard are supported by the results of the RSG survey. The survey shows that an overwhelming majority — nearly 70% (including 44% who "strongly agree") — of Colorado online and catalog shoppers believe that the requirement of the new law that out-of-state retailers must report their customers' purchase information to the Department constitutes an invasion of privacy, while only 14% of such consumers report that they do not mind the disclosure.  Such strong consumer sentiment indicates that retailers who make such disclosures will damage their relationships with many Colorado customers with lasting negative effects on the retailers' sales and business.

I declare under penalty of perjury that the foregoing is a true and correct.
Executed on this __ day of August, 2010

_____
Kevin Lane Keller

7

KLK 00051

DEPOSITION
EXHIBIT  CF
16
10/21/10

PENGAD 800-631-6989

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

      Plaintiff,

      v.

Roxy Huber, in her capacity as Executive
    Director, Colorado Department of Revenue,

      Defendant.

---

### <u>DECLARATION OF PROFESSOR KEVIN LANE KELLER</u>

---

    I, Kevin Lane Keller, pursuant to 28 U.S.C. § 1746, do depose and state as follows:

    1. I am the E.B. Osborn Professor of Marketing at the Tuck School of Business at Dartmouth College. I have been retained by the law firm of Brann & Isaacson, as counsel to the Direct Marketing Association ("DMA"), to present my opinions regarding the effect that a new Colorado law (House Bill 10-1193, "An Act Concerning The Collection Of Sales And Use Taxes On Sales Made By Out-Of-State Retailers, And Making An Appropriation Therefor" ("the Act")), will have on the business of affected Internet and catalog retailers, and on their relationships with Colorado customers. My opinions in that regard are based upon my experience and expertise in the field of marketing, as well as on my review of the result of a survey of Colorado consumers

1

KLK 00152

conducted in June 2010 by Resource Systems Group, Inc. ("RSG"), concerning consumers' reactions to the requirements of the Act and of related regulations adopted by the Colorado Department of Revenue ("Department").   I conclude, as described more fully in this declaration, that out-of-state retailers affected by the law will likely suffer lost sales and permanent injury to their relationships with customers as a result of complying with the requirement that they disclose their customers' purchasing information to the Department.

2.   Much of my work, both as an academic and as a consultant to businesses, focuses on the relationship between retailers (or brands) and consumers, including the importance to a retailer (or brand) of establishing and maintaining the trust of its customers.  My work also frequently involves the use and/or analysis of consumer surveys. During my MBA and PhD studies, I took graduate level courses in marketing research that included survey design and interpretation.  Since receiving my PhD, I have run countless academic research studies that involved the design, conduct and analysis of surveys.  Many of my activities with consulting clients have also involved survey work, including projects with Procter & Gamble, Ford, Samsung, and other companies.   A copy of my current *curriculum vitae* is attached hereto as Exhibit A.

3.  It is my understanding that the new Colorado law requires out-of-state retailers who do not collect Colorado sales tax to: (a) give Colorado purchasers notice with each transaction that the retailer does not collect Colorado sales tax, but that the purchaser has an obligation to self-report use tax to the Department, even on catalog and Internet sales; (b) send each Colorado purchaser (at least those who purchase $500 in taxable

2

KLK 00153

goods or services from the retailer) an annual notice informing them, among other things, of their total purchase amount for the past year and that the retailer is required to report their name and total amount of purchases to the Department; and (c) file an annual report with the Department listing for each Colorado purchaser (regardless of purchase amount) the purchaser's name, billing address, shipping address and total amount of purchases.

4.   I am aware that RSG conducted a survey of Colorado consumers in June 2010 to determine their reactions to the requirements of the new Colorado law.  Indeed, I reviewed a draft of the survey questionnaire when it was being prepared, and I have reviewed a document prepared by RSG entitled "Colorado Consumer Survey, *Final Results*," dated August 9, 2010 ("*Final Results*"), setting forth the results of the full survey.   A copy of the *Final Results* is attached to the Declaration of Thomas J. Adler, PhD, as Exhibit B.   I have also reviewed the declaration of Dr. Adler concerning the survey.

5.   The objectives of the RSG survey were: (1) to determine whether Colorado consumers consider the requirement that out-of-state retailers must report their purchasing information to the Department to be an invasion of their privacy or, instead, if Colorado consumers do not mind the disclosure of such information to the Department; and (2) to determine whether the reporting requirement will affect, in any way, Colorado consumers' future purchases from out-of-state retailers who are required to provide such information to the Department.  Based on my understanding of the requirements of the new law and the objectives of the survey, I believe that the survey

3

KLK 00154

was well-designed and executed.  I am confident in relying upon the results of the survey in support of my opinions expressed in this declaration.

### Retailers Who Must Disclose Customer Purchasing Information to the Department Will Lose Sales as a Result

6.  Based upon my experience in the field of consumer marketing, and the results of the RSG Survey, it is my opinion that many consumers will view negatively the obligation of affected out-of-state retailers to disclose the customers' names, addresses and amount of purchases to a government agency.  Indeed, many consumers who become aware of the requirement, including past or current customers of the retailer, will be less likely to make a purchase from such a retailer than they would be if the retailer was not required to report their information to the government.  This will be just as true for consumers residing in Colorado as in any other state.

7.  As a result, retailers required to make such disclosures to the Department will lose a substantial portion of their Colorado sales.  The amount of such lost sales for any particular retailer will depend upon a number of factors, but for a law that applies broadly to all Internet and catalog retailers with Colorado gross sales in excess of $100,000 that do not collect Colorado sales tax, the aggregate volume of such lost sales, industry wide, will be very large.

8.  My conclusion that Internet and catalog retailers who are required to disclosure their customers' information to the Department will lose sales as a result is supported by the results of the RSG survey.   The results of the survey show that two-thirds of Colorado Internet and catalog shoppers (67%) who aware of the disclosure requirement will decrease their purchases from such retailers in the coming year.  Even more

4

KLK 00155

tellingly, when asked to reflect upon a recent purchase from an out-of-state retailer that does not collect Colorado sales tax, sixty-three percent (63%) of Colorado consumers would most likely not make a similar purchase again from the affected the out-of-state retailer because of the disclosure requirement.  In stark contrast, Colorado retailers will be directly benefitted by the law: forty-three percent (43%) of Colorado catalog/online purchasers responded to the RSG survey that they will make future purchases instead from a Colorado retailer that is not required to disclose their purchase information to the Department.   Of course, out-of-state Internet and catalog sellers can never recoup the sales they will lose from customers who decided not to buy from them, or who choose to buy from another, Colorado retailer.

### The Harm to Retailers' Customer Relationships and Businesses Will Be Permanent

9.    There are other, potentially more serious, even permanent, consequences for affected out-of-state retailers that elect to comply with the new law and turn-over such customer information to the Department.  By disclosing customer purchasing information to the Department, even if required to do so by law, out-of-state retailers will definitely alienate customers in Colorado and elsewhere, including many of their best customers (whom the retailer will be required to inform directly of the requirement that the retailer must report such information to the Department).

10. Establishing a relationship of reliability and trust with customers is the key to the long-term success of most retailers or brands.  High levels of customer satisfaction with a retailer derive not just from the retailer's products, but from the entire customer experience.  For many of the most successful Internet and catalog retailers and brands,

5

KLK 00156

customer satisfaction depends upon maintaining the security and privacy of a customer's personal information, and not willingly disclosing it to any third-party, including a state government agency.  This is a major reason why almost all direct marketers adopt clear privacy policies and disclose those policies to the public.

11.   The privacy and security of personal information in the hands of both businesses and government agencies remains a significant concern to many consumers, and the extent to which government should be permitted access to customer information maintained by businesses is much debated by policy makers.  As the results of the RSG survey indicate, many consumers view information maintained by companies with which they do business, including generalized information such as their identity as a customer of the company and the frequency or volume of their transactions, to be private, confidential information that they would prefer not be shared with the government.  Companies that consent to allow governmental access to such personal customer information, rather than resist government demands for it, are viewed negatively by consumers, as the revelation in 2006 that telecommunications providers Verizon, AT&T and Bell South may have disclosed customer phone records to the National Security Agency illustrates.

12.   Breaching trust with the customer and failing to live up to customer expectations regarding protection of sensitive transaction information will have a long-lasting detrimental effect on a retailer.  Once the relationship of trust with a customer is destroyed, many such customers will be permanently lost.  Retailers that comply with the requirements of the Colorado law by disclosing their customers' information to the

6

KLK 00157

Department can expect to lose customers (and thus future sales) in Colorado and elsewhere, as a result.

13.  My conclusions in this regard are supported by the results of the RSG survey. The survey shows that an overwhelming majority — nearly 70% (including 44% who "strongly agree") — of Colorado online and catalog shoppers believe that the requirement of the new law that out-of-state retailers must report their customers' purchase information to the Department constitutes an invasion of privacy, while only 14% of such consumers report that they do not mind the disclosure.  Such strong consumer sentiment indicates that retailers who make such disclosures will damage their relationships with many Colorado customers with lasting negative effects on the retailers' sales and business.

I declare under penalty of perjury that the foregoing is a true and correct. Executed on this 10th day of August, 2010

/s/ Kevin Lane Keller
Kevin Lane Keller

7

KLK 00158

DEPOSITION
EXHIBIT
30
10/21/10

| | |
|---|---|
| **From:** | Kevin L. Keller |
| **To:** | Matthew P. Schaefer |
| **Cc:** | George S. Isaacson |
| **Subject:** | RE: Declaration in Support of Motion for Preliminary Injunction |
| **Date:** | Monday, August 09, 2010 6:36:13 AM |

--- "Matthew P. Schaefer" wrote:
Kevin:

Thank you for getting back to us.  I attach a revised version of your declaration based upon George's further review.  With regard to your questions, I think the declaration is short enough that a conclusion is not needed. I am proposing to emphasize Tom's role as draftsman, especially since there were a few final round changes after your review, so we are comfortable in this case describing your role as a reviewer. I would propose that we schedule a short call to review and finalize the document.  Please let us know what time early next week would be good for you.

Thanks,

Matt
--- end of quote ---

Hey Matt ... any time after 10:30 tomorrow morning should work.  I could squeeze a call in today in a pinch ... but I am definitely busier.  Hope your weekends went well!
Best.  KLK

Kevin Lane Keller
E.B. Osborn Professor of Marketing
Tuck School of Business
100 Tuck Hall
Dartmouth College
Hanover, NH 03755-9011
(603) 646-0393 (o)
(603) 646-1308 (f)

KLK 00273

DEPOSITION
EXHIBIT
*31*
10/21/10

| | |
|---|---|
| **From:** | Matthew P. Schaefer |
| **To:** | Kevin L. Keller |
| **Cc:** | George S. Isaacson |
| **Bcc:** | Jolene LaJoie |
| **Subject:** | Final Declaration |
| **Date:** | Tuesday, August 10, 2010 12:43:00 PM |
| **Attachments:** | 20100810 Declaration of Kevin Keller.docx |
| | RSG_DMA_Colorado_final_results_08-09-10pptx.pptx |
| | 20100810 Declaration of Thomas Adler.docx |

Kevin:

I attach the final version of your declaration, making the minor edits we discussed.  I also attach final versions of the RSG Final Results document and Tom Adler's declaration, referenced in your report.

Please **confirm** via e-mail that you approve this final version of your declaration.  Please **attach** to that e-mail your current C.V., which is Exhibit A to the Declaration.

You may then sign a printed copy of the declaration above your electronic and mail it to us at your convenience – it does not need to be notarized.  (We will file the electronic copy, but need a signed copy on file.)

Please let me know if you have any questions.

Thanks,

Matt

KLK 00187

DEPOSITION
EXHIBIT
32
10/21/10
PENGAD 800-631-6989

| | |
|---|---|
| From: | Matthew P. Schaefer |
| To: | Kevin L. Keller |
| Cc: | George S. Isaacson |
| Bcc: | Jolene LaJoie |
| Subject: | DMA/ Colorado litigation |
| Date: | Friday, September 10, 2010 4:01:00 PM |
| Attachments: | image001.png |

Kevin:

In connection with your role as an expert on behalf of the Direct Marketing Association ("DMA") in the Colorado litigation, we are required under the Federal Rules of Civil Procedure to make certain disclosures to the opposing party.  In addition, we have reached an agreement with opposing counsel from the Colorado Attorney General's Office on a proposed expedited discovery schedule that would result in a final ruling on the DMA's claims that the new Colorado notice and reporting law violates the Commerce Clause of the United States Constitution.  (The DMA's other constitutional claims, for violation of the right of privacy, First Amendment, Due Process, and Taking Clauses, are deferred under the proposed schedule, and will be addressed only if the state prevails on the Commerce Clause claims.)  Under the proposed, expedited schedule, the DMA's expert disclosures, including copies of discoverable, non-privileged documents retained by the DMA's experts, are due **September 20, 2010**.  The Court has not yet approved this proposed expedited schedule, but in order that we may be prepared to meet the September 20 deadline, I am writing to set forth what we would need from you to meet the deadline.

The good news is that we have much of what we need already, and that the requirements are largely the same as those you will recall                     Redaction - Unrelated                     .
Moreover, you will, of course, be compensated for the additional time required to satisfy the requirements.  In that regard, please be sure to separately account for the time needed to comply with the basic, Rule 26 expert disclosures (described below) , as compared to time required to assemble and forward any documents or files retained on the matter, since time spent gathering documents will ultimately be paid for by the opposing party.

Rule 26(a)(2)(B)

Under Rule 26, our expert disclosures must include a written report that contains:
 (1)  A complete statement of all opinions and the basis and reasons for them;
 (2)  The data or other information considered by the witness in forming the opinions;
 (3)  Any exhibits that will be sued to summarize them;
 (4)  The witnesses qualifications, including a list of publications authored in the previous 10 years;
 (5)  A list of all other cases in which, during the previous 4 years, the witness testified  as an expert at trial or deposition; and
 (6)  A statement of the compensation to be paid for the study and testimony in the case.

What we have already submitted to the court in connection with your declaration in support of the DMA's motion for preliminary injunction satisfies nearly all of these requirements.  With regard to Item (2), please let me know if you considered anything in particular beyond the statute, regulations, and survey data/results.  With regard to item (5), I have information through early 2010   Redaction - Unrelated    – please let me know if you have testified as an expert at deposition or

trial in any other matter since January 2010.

Other documents/files/materials

Separate from the basic disclosure requirements, we have agreed with opposing counsel to provide other discoverable, non-privileged documents retained by the DMAs experts (and the state has agreed to provide the same materials for their expert(s), should they hire any).  We by no means expect to provide everything you have retained, but I believe that the most straightforward way to address the disclosure of additional materials is for you to forward to me, in whatever manner is convenient (e-mail is fine, or by creating a disc containing the materials, or by mailing hard copies) all of the documents you have concerning your work on the case. This would include the survey, drafts of the questionnaire, e-mail communications with our office, notes of phone calls, time sheets/records, etc.  If you have any questions about compiling the materials, please let me know. If you are able to provide such materials so that I have them in hand by close of business on September 17, 2010, I can review them over the week-end prior to September 20.

I would propose that we schedule a call Monday or Tuesday next week just to review the process and cover any questions or concerns you may have.  I am generally available both days.

Thanks in advance for your assistance.

Matt

**Matthew P. Schaefer | BRANN & ISAACSON**

207.786.3566 | mschaefer@brannlaw.com

KLK 00079

DEPOSITION
EXHIBIT
22
10/21/10
PENGAD 800-631-6989

| | |
|---|---|
| From: | Kevin L. Keller |
| To: | George S. Isaacson |
| Cc: | Matthew P. Schaefer |
| Subject: | Re: Direct Marketing Association - Colorado Litigation |
| Date: | Wednesday, May 26, 2010 9:11:59 AM |

--- "George S. Isaacson" wrote:

Please let me know whether you have any comments or concerns regarding the survey questions. RSG plans to conduct an initial pilot survey involving 250 participants. As you know, it is our intention to file a motion for preliminary injunction in connection with the commencement of the lawsuit. I anticipate filing the survey report and an affidavit from you or your colleague along with the preliminary injunction motion. The affidavit would be based, in part, on the survey results.

George S. Isaacson | BRANN & ISAACSON
--- end of quote ---

Hey George & Matt,

Thanks for passing this along. I was out of the office yesterday and am catching up on things.

I'll look this over today/tomorrow and get back to you by Friday AM at latest. If that is not OK ... just let me know what timing would be better.

Hope all is well and things are not too hot there today ... it's smokin' in Hanover!

Best,

KLK

Kevin Lane Keller
E.B. Osborn Professor of Marketing
Tuck School of Business
100 Tuck Hall
Dartmouth College
Hanover, NH 03755-9011
(603) 646-0393 (o)
(603) 646-1308 (f)

KLK 00281

DEPOSITION
EXHIBIT  CF
34
10/21/10

| | |
|---|---|
| **From:** | Matthew P. Schaefer |
| **To:** | Kevin L. Keller |
| **Cc:** | George S. Isaacson |
| **Bcc:** | Jolene LaJoie |
| **Subject:** | For our call |
| **Date:** | Wednesday, September 15, 2010 11:58:00 AM |

Kevin:

The local practice in the District of Colorado includes the following gloss on the content of an expert report, which we can discuss on the call.  I do not expert it would necessitate much more, if anything, from you, but we should evaluate it:

*In addition to the requirements set forth in Rule 26(a)(2)(B)(i)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.*

Thanks,

Matt

KLK 00224

DEPOSITION
EXHIBIT
36
10/21/10

PENGAD 800-631-6989

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

      Plaintiff,

      v.

Roxy Huber, in her capacity as Executive
    Director, Colorado Department of Revenue,

      Defendant.

---

## EXPERT REPORT OF PROFESSOR KEVIN LANE KELLER

    I am **Kevin Lane Keller**, the E.B. Osborn Professor of Marketing at the Tuck School of Business at Dartmouth College. I have been retained by the law firm of Brann & Isaacson, counsel to the Direct Marketing Association ("DMA"), to present my opinions regarding the effect that a new Colorado law (House Bill 10-1193, "An Act Concerning The Collection Of Sales And Use Taxes On Sales Made By Out-Of-State Retailers, And Making An Appropriation Therefor" ("the Act")), will have on the business of affected Internet and catalog retailers, and on their relationships with Colorado customers. My opinions in that regard are based upon my experience and expertise in the field of marketing, as well as on my review of the results of a survey of Colorado consumers conducted in June 2010 by Resource Systems Group, Inc. ("RSG"),

concerning consumers' reactions to the requirements of the Act and of related regulations adopted by the Colorado Department of Revenue ("Department").

## I.      STATEMENT OF OPINIONS.

Based upon my review and consideration of information described in Section II, and applying to such information certain concepts, guidelines, and principles derived from academic marketing research with respect to consumer behavior, I have formed the conclusions and opinions set forth in paragraphs 1 and 5–13 of my sworn declaration dated August 10, 2010, which is attached to and expressly incorporated in this report.

## II.     DATA AND INFORMATION CONSIDERED IN FORMING OPINIONS.

The data or other information I considered in forming my opinions includes:

A.      A copy of the Act;

B.      A copy of Regulation 39-21-112.3.5, which I understand was adopted by the Colorado Department of Revenue; and

C.      The results of the survey of Colorado consumers conducted by RSG in June 2010, as set forth in *Final Results* dated August 9, 2010, a copy of which is attached to this report.

## III.    EXHIBITS.

The Exhibits that may be used to summarize or support my opinions include the documents described in Section II.

– 2 –

KLK 00082

## IV.    QUALIFICATIONS AND PUBLICATIONS.

Attached to my August 10, 2010 declaration is a copy of my current *curriculum vitae*, including a list of publications I have authored in the previous ten years.

## V.    RECENT TESTIMONY.

I have testified as an expert during the past four years in the following litigation:

| Deposition August 2010 | *Agrigenetics, Inc., d/b/a Mycogen Seeds v. Pioneer Hi-Bred International, Inc.,* United States District Court for the Southern District of Indiana (Indianapolis Division) |
|---|---|

## VI.    STATEMENT OF COMPENSATION.

My compensation on this matter is at my standard billing rate for such work of $1,000 per hour.  To date my fees on this matter are _____.

Dated:  September 20, 2010            s/ Kevin Lane Keller
                                                     Kevin Lane Keller

KLK 00083



DEPOSITION
EXHIBIT
37
10/21/10

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 10–CV–01546–REB–CBS

The Direct Marketing Association,

      Plaintiff,

      v.

Roxy Huber, in her capacity as Executive
    Director, Colorado Department of Revenue,

      Defendant.

---

### EXPERT REPORT OF PROFESSOR KEVIN LANE KELLER

---

I am **Kevin Lane Keller**, the E.B. Osborn Professor of Marketing at the Tuck School of Business at Dartmouth College.  I have been retained by the law firm of Brann & Isaacson, counsel to the Direct Marketing Association ("DMA"), to present my opinions regarding the effect that a new Colorado law (House Bill 10-1193, "An Act Concerning The Collection Of Sales And Use Taxes On Sales Made By Out-Of-State Retailers, And Making An Appropriation Therefor" ("the Act")), will have on the business of affected Internet and catalog retailers, and on their relationships with Colorado customers.  My opinions in that regard are based upon my experience and expertise in the field of marketing, as well as on my review of the results of a survey of Colorado consumers conducted in June 2010 by Resource Systems Group, Inc. ("RSG"),

concerning consumers' reactions to the requirements of the Act and of related regulations adopted by the Colorado Department of Revenue ("Department").

## I.  STATEMENT OF OPINIONS.

Based upon my review and consideration of information described in Section II, and applying to such information certain concepts, guidelines, and principles derived from academic marketing research with respect to consumer behavior, I have formed the conclusions and opinions set forth in paragraphs 1 and 5–13 of my sworn declaration dated August 10, 2010, which is attached to and expressly incorporated in this report.

## II.  DATA AND INFORMATION CONSIDERED IN FORMING OPINIONS.

The data or other information I considered in forming my opinions includes:

A.  A copy of the Act;

B.  A copy of Regulation 39-21-112.3.5, which I understand was adopted by the Colorado Department of Revenue; and

C.  The results of the survey of Colorado consumers conducted by RSG in June 2010, as set forth in *Final Results* dated August 9, 2010, a copy of which is attached to this report.

## III.  EXHIBITS.

The Exhibits that may be used to summarize or support my opinions include the documents described in Section II.

KLK 00129

IV.    **QUALIFICATIONS AND PUBLICATIONS.**

Attached to my August 10, 2010 declaration is a copy of my current *curriculum vitae*, including a list of publications I have authored in the previous ten years.

V.    **RECENT TESTIMONY.**

I have testified as an expert during the past four years in the following litigation:

| | |
|---|---|
| Deposition<br>August 2010 | *Agrigenetics, Inc., d/b/a Mycogen Seeds v. Pioneer Hi-Bred International, Inc.,* United States District Court for the Southern District of Indiana (Indianapolis Division) |

VI.    **STATEMENT OF COMPENSATION.**

My compensation on this matter is at my standard billing rate for such work of $1,000 per hour.

Dated:  September 20, 2010          s/ Kevin Lane Keller
                                    Kevin Lane Keller

– 3 –

KLK 00130