1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF COLORADO

3

4    Civil Action No. 10-CV-01546-REB-CBS

5

6    The Direct Marketing Association,

7                  Plaintiff,

8                     v.

9    Roxy Huber, in her capacity as Executive

10   Director, Colorado Department of Revenue,

11                  Defendant.

12

13        DEPOSITION OF **KEVIN LANE KELLER** taken at Norwich,

14   Vermont, on October 21, 2010.

15

16   APPEARANCES:

17        Matthew P. Schaefer, Esquire
         Brann & Isaacson
18        184 Main Street, Fourth Floor
         P.O. Box 3070
19        Lewiston, Maine, 04243-3070, on behalf of the
         Plaintiff, The Direct Marketing Association.
20
         Jack Wesoky, Esquire
21        Senior Assistant Attorney General
         1525 Sherman Street, 7th Floor
22        Denver, Colorado, 80203, on behalf of the Roxy
         Huber in her capacity as Executive Director,
23        Colorado Department of Revenue.

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire   03784
(603)298-2987 tel   (603)218-6633 fax   (603)443-1157 cell
cjfoster71@aol.com

```
1          there's some handwritten notations on it.
2     Q    And there's a page at the end which says
3          George/Matt with some notes on it?
4               MR. SCHAEFER:  Is that also part of Exhibit
5          17?
6               MR. WESOKY:  Yes.
7               MR. SCHAEFER:  Okay.
8     Q    Are those the only notes you took in connection
9          with your expert opinion in this case?
10    A    I believe so.
11    Q    In your practice as an expert, is it your normal
12         standard practice to make notes on a piece of
13         paper or yellow stickies or anything else other
14         than you did in this case?
15    A    Don't typically use a lot of yellow stickers in
16         what I do.  That doesn't mean that I don't ever
17         use yellow stickers, but as a general rule, I
18         typically don't use a lot of yellow stickers.
19    Q    I'm talking about your general practice.  Do you
20         make notes on a pad, on separate pieces of paper,
21         how do you do it?
22    A    It varies some.  I often mark up documents.  I
23         often may have separate, a separate page that I
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1       do, depending on who, if I have to, if I'm working
2       with someone, then I might use a yellow sticker,
3       something like that, but as a general rule from my
4       general approach to doing work is to work off of
5       documents either editing them, writing on them in
6       some form or having some other separate notes to
7       go with that.
8    Q  So we've established that this Exhibit 17 are the
9       only notes that you had or took with respect to
10      your expert opinion in this case, is that correct?
11   A  I believe so.
12   Q  Okay.  And if you look at the top of Exhibit 17,
13      it says Version 9a for Final Review.  DMA/Colorado
14      Questionnaire.  I assume then that you didn't see
15      any other versions of the DMA/Colorado
16      Questionnaire other than Exhibit 17?
17   A  This is the version that I took notes on.  There
18      were discussions prior to, prior discussions that
19      might have been relevant to that that I wouldn't
20      have had notes on, but I believe this is the
21      document that I had notes on.
22   Q  I understand that.  But my question is did you see
23      other versions of DMA/Colorado Questionnaire?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        MR. SCHAEFER:  Do you mean other than the

2        final version?

3  Q  Other than 9a, yes.

4  A  I can't be sure if I saw earlier versions.  If

5        there were none in my files and there were none

6        that were marked, this was the one that was in my

7        files that was marked.

8  Q  You can set that aside.  We will return to it.

9        I don't want to enter it into evidence.  It's

10      not important at this point, but your CV dated

11      7/21/10 is your recent CV, the one you submitted

12      for this case?

13  A  Yes.  Correct.

14  Q  I assume from your resume vitae and your history

15      that there's nothing adverse in your history, any

16      complaints or anything of that nature relating to

17      your practice or your expert practice?

18      MR. SCHAEFER:  Objection.  Go ahead.

19  A  That's correct.

20  Q  Okay.  Of your education and training which you

21      referenced in your Declaration, what is the most

22      important thing or most relevant thing, I should

23      say, to which I could look to support your claim

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          of being an expert in this case?

2              MR. SCHAEFER:  Objection to form.  Go ahead.

3     A    I would say that probably the most pertinent is

4          just the Ph.D. in marketing with emphasize on

5          consumer marketing that I received in the mid

6          '80s.  And then the second thing I would say would

7          be all of the work that I've done since then that

8          have been involved consumer marketing and research

9          and writing in the last 25 years, I guess.

10    Q    I take it from your Declaration that you're an

11         expert in consumer behavior, is that correct?

12    A    That's one of my areas of focus.

13    Q    And that's what, one of your areas of expertise in

14         this case, is that correct?

15    A    That's correct.

16    Q    And what other area of expertise are you bringing

17         in this case?

18    A    Branding.

19    Q    Okay.  How about survey methodology and

20         technology?

21    A    Survey methodologies is another area that I've

22         emphasized since 1979, I guess, or 1980.

23    Q    But you didn't design the survey in this case; is

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1       that correct?

2   A   I did not design the survey.

3   Q   Are you familiar with the methodology used?

4   A   I am.

5   Q   So you're familiar with what Knowledge Networks

6       did in this case for this survey?

7   A   Yes.

8   Q   And what is that?  Could you tell me?

9   A   Survey involved an online panel that was assembled

10      and involved an online questionnaire that asked a

11      sample of respondents some questions that were

12      relevant to the matters in this case.

13  Q   Do you know about their weighting and calibration?

14  A   I believe that is part of the sample composition

15      that involved some weighting in terms of

16      representativeness of the sample population.

17  Q   Do you know how that was done or are you just

18      relying on Knowledge Networks?

19  A   I'm relying on Knowledge Networks and RSG,

20      supplier to the RSG firm.

21          EXHIBIT 18 MARKED FOR IDENTIFICATION

22  Q   MR. SCHAEFER, I've handed you Exhibit 18 which is

23      Knowledge Networks Field Report Colorado Tax

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Policy Survey.  Simple question.  Did you ever see
2    that before today?
3  A  I don't believe so.
4  Q  Okay.  You can set that aside.
5         EXHIBIT 19 MARKED FOR IDENTIFICATION
6  Q  I hand you what's been marked as Exhibit 19, and
7    it's called Knowledge Networks Project Statement
8    CO Tax Policy Project number blank.  Have you ever
9    seen that document before?
10  A  I don't believe so.
11        MR. SCHAEFER:  Jack, just to make sure, I
12    think this one has sequential but appended I think
13    is this and I don't know whether it's part of the
14    same document literally or not.  I don't recall
15    specifically, but there's a Knowledge Panel
16    Calibration document that begins at page RSG
17    00316.
18        MR. WESOKY:  I don't know if it was appended
19    either because it came, you know, one page at a
20    time, but let's attach them for purposes of this
21    question.
22        MR. SCHAEFER:  I don't have any problem with
23    it.  I just thought I would mention it.

***NORTH COUNTRY COURT REPORTERS***
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          MR. WESOKY:  Thanks.  I appreciate that.

2    Q    So MR. SCHAEFER, I assume that you've not seen

3         that appendix, if we can, called Knowledge Panel

4         Calibration?

5    A    I have not.

6    Q    So then it's, you didn't read that or consider

7         that when you reviewed the survey results and gave

8         your opinion, correct?

9    A    Correct.

10   Q    Let me ask you, do you think it would be important

11        to review these documents and learn about

12        Knowledge Networks and their calibration function,

13        if that's the correct word, with respect to the

14        results of the survey?

15   A    I've known Knowledge Networks --

16   Q    Simple yes or no question.

17             MR. SCHAEFER:  No.  He can answer the

18        question.

19             MR. WESOKY:  No.  I can ask the question.  He

20        can answer it.  If you want him to elaborate on

21        it, then you can examine him.

22             MR. SCHAEFER:  No --

23   Q    The question is, do you think, I'm sorry.  Would

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1           you read the question back, Cindy?

2               (Requested portion read back by reporter)

3     Q     Yes or no?

4     A     Well, not given the context of the company

5           involved.

6     Q     What company is that?

7     A     Knowledge Networks.

8     Q     Knowledge Networks or RSG?

9     A     Knowledge Networks.

10    Q     And you're familiar with Knowledge Networks?

11    A     Very.

12    Q     And you've used them in the past, I take it?

13    A     I actually worked with them at one point in time.

14    Q     Okay.  I noticed that a person employed by

15          Knowledge Networks shares your last name.  Are

16          they related or just a coincidence?

17    A     No.  That's a coincidence.

18    Q     I thought it probably was but why not ask.

19    A     Let me restate that.  I think that's a

20          coincidence.

21    Q     Keller is not like WESOKY where we're all related.

22    A     No.  There's actually a lot of Kellers out there.

23    Q     Okay.  I take it this was not your first expert

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1   A    The time, yes, mental time where you're actually,

 2        yes.

 3   Q    And again, just to be sure I understand, in longer

 4        cases you might make notes of some time, but in

 5        the shorter cases you don't other than in your

 6        diary for phone calls?

 7   A    If it's a case that spans multiple years, then at

 8        some point I will stop and keep track of what I've

 9        done, if I haven't invoiced especially, before too

10        much time elapses.

11   Q    Have you done that in this case?

12   A    I have not done that in this case as of yet.

13   Q    Just to make sure I understand.  You've not

14        submitted an an invoice yet for your work in this

15        case?

16   A    I have not submitted an invoice yet.

17   Q    To the best of your ability, could you tell me

18        before preparing for this deposition and obviously

19        our time in this deposition, how much time have

20        you spent in this matter?

21   A    Before the preparation of the deposition and the

22        deposition, it would be approximately one day.

23   Q    Eight hours?
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    A    Eight hours.

2    Q    In preparation for this deposition, did you make

3         any notes of any kind?

4    A    I don't believe so.

5    Q    In this case, to the best of your recollection,

6         could you tell me what documents you reviewed to

7         prepare your expert opinion?

8    A    Well, they, I think, would be in the Declaration,

9         I believe.

10   Q    Okay.

11   A    Because I was asked that question and then went

12        back to my files and then reported those so the

13        ones associated with my Declaration would be the

14        ones that I've reviewed.

15   Q    Okay.  You've not reviewed any, I'll use the term

16        literature, treatises, anything of that nature

17        before giving your expert opinion?

18   A    I'm actually finishing a 15-month project revising

19        my marketing management textbook so over the last

20        15 months I've reviewed a lot of material on

21        consumers and on marketing dealing with lots of

22        different topics.  So I actually had a fairly rich

23        background in general to sort of use as part of

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      what I did.

2    Q   Again, just so I understand what you're saying,

3      because of this ongoing project revising your

4      textbook, you didn't find it necessary to refer to

5      any specific treatises or literature but just your

6      general knowledge from revising that textbook you

7      used in connection with formulating your expert

8      opinions, is that correct?

9    A   What I did was in the process of revising this

10     textbook there were lots of different topics that

11     would be relevant to the case that I certainly had

12     a chance to read about and think about and write

13     about as part of the revision of the textbook.

14   Q   But as I understand it, you didn't go to the

15     revisions of that textbook, specifically, in

16     connection with your expert opinion, but it was

17     just the knowledge that you accumulated in doing

18     that that you transferred to this expert opinion,

19     is that right?

20   A   There was enough before the revision of the

21     textbook general knowledge that I already had, and

22     then the updating that occurred with the actual

23     revision of the textbook, that gave me a good

**_NORTH COUNTRY COURT REPORTERS_**
40 South Main Street
West Lebanon, New Hampshire   03784
(603)298-2987 tel   (603)218-6633 fax   (603)443-1157 cell
cjfoster71@aol.com

1          foundation going into the preparation of the case.

2     Q   But again, just so I can understand.  You didn't

3          in preparation for your expert opinion say oh, I

4          need to refer to my notes on the textbook or the

5          material on the textbook.  It was just your

6          knowledge gained from doing that that helped you

7          with your expert opinion?

8     A   It was the knowledge gained but there was, when

9          you talk about general knowledge, general

10         knowledge is the accumulation of a lot of specific

11         articles and readings that you do so even though

12         it's general knowledge it's based on a lot of

13         specific articles and material that you read and

14         review which then, which in some cases would be

15         relevant to this particular case.

16    Q   As you sit here today, could you give me just a

17         few of those articles that you think would, that

18         you've accumulated over the last years that would

19         be relevant to this expert opinion?

20    A   They would be ones that would be referenced in the

21         textbook or included in my files associated with

22         the different chapters in the textbook.

23    Q   Would you tell me today what some of those are?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire   03784
(603)298-2987 tel   (603)218-6633 fax   (603)443-1157 cell
cjfoster71@aol.com

1   A   Couldn't give you the specific names and authors,
2       if you will, of those articles because I've got,
3       there are literally thousands that I review and
4       maybe even reference.  I don't know.  Certainly
5       the hundreds that I reference.
6   Q   In your textbook, you mean?
7   A   In my textbook and then or included in my files,
8       too.  So it's all part of that set of material, if
9       you will.
10  Q   And again, just so I understand, you didn't go to
11      those files for particular reference for this
12      expert opinion?
13  A   Well, and again, it's one of those where I've gone
14      through those files as part of the textbook so
15      it's not as if I didn't have access to that
16      because I'd already reviewed and worked through a
17      lot of that as part of the textbook.
18  Q   But again, you didn't say oh, I could look at
19      Jones & Brown, to name a fake article, that will
20      help support my opinion.  I think that's relevant.
21      There was no thinking along that line?
22  A   The thinking would be more along the lines that
23      there's a set of material that I've used that

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    inform my decision or my judgments as I kind of go
2    through this, and the time that this was done,
3    whether I could remember the specific titles, I'm
4    not sure.   I certainly could remember what those
5    were about because that's what I would have
6    reviewed and be included into the textbook.
7  Q  What were some of those, to use your words, about?
8  A  They talked a lot about consumers and consumer
9    behavior, talked about issues on privacy and
10   consumers' opinions about privacy.   Relationships
11   with retailers, relationships with brands,
12   purchase decision factors.   So it's kind of a
13   range of topics.
14 Q  But you can't think of any specifically today,
15   correct?
16 A  Specific articles?
17 Q  Yes.
18 A  I can think of the body of work that I used that
19   related to that.   I can't remember the specific
20   authors and titles of those papers.   I can
21   remember having consulted those and included and
22   incorporated some of that material into the
23   textbook.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    Let's take a look at your Declaration for a moment
2         if we could.   Exhibit 16.
3              Correct me if I'm wrong, okay?   It seems to
4         me that from reading your Declaration you had the,
5         I don't know if the word is opinion or feeling or
6         idea that the survey confirmed.   Is that correct?
7              MR. SCHAEFER:   Objection to the form but go
8         ahead.
9    A    I would say that I, based on my analysis of the
10        case and the facts as I understood them and the
11        conclusions that I would draw from that that the
12        survey results were consistent with that.   Largely
13        consistent with that.
14   Q    So again, before you had the survey, you harbored
15        the belief, if that's the correct word, that a
16        large majority of people would think the Colorado
17        law was an invasion of their privacy?
18   A    I wouldn't use the word harbored the belief.   What
19        I would sort of characterize --
20   Q    Tell me what you would --
21   A    The way I would characterize it is based on the
22        analysis of the facts of the case that I felt that
23        privacy would be a big issue and potentially a

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      major problem, the extent of which I wasn't sure.

2   Q   By the same token, you again, using my words,

3      harbored the belief that the law would change

4      consumer behavior such that consumers would not

5      purchase from the retailer who had to turn over

6      the information pursuant to the law?

7   A   My belief was that changing the law in the way

8      that it would have changed would have resulted in

9      consumers changing their behavior such that they

10      would not buy as much from those retailers.

11   Q   What about buying, consumers buying at all from

12      those retailers?

13   A   In some cases, it would be not at all.

14   Q   What was your thought before the survey on that

15      issue?

16   A   Well, the thought before the survey was it was,

17      that this would be a major problem and concern for

18      some consumers and potentially an inhibitor in

19      terms of their purchase behavior.  In some cases,

20      that might involve them not buying at all or even

21      maybe buying, certainly shopping around more and

22      not buying at all, I guess is the way I'd put it.

23   Q   Would you look at paragraph number, let's start

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
1              EXHIBIT 20 MARKED FOR IDENTIFICATION
2    Q    Let me hand you what's marked Exhibit 20.  It's
3         called Expert Report of Kevin Lane Keller, and in
4         that document, first, let me ask you to identify
5         that and make sure that is indeed your --
6    A    It seems to be the document.
7    Q    If you look at paragraph II it says data and
8         information considered in forming opinions and it
9         says copy of the Act and a copy of the Regulation
10        and then the survey.  So I take it from this
11        document that the only documents that you looked
12        at in reaching your conclusion as stated in the
13        first sentence of paragraph 8 was a copy of the
14        Act and a copy of the Regulation.  Is that
15        correct?
16   A    Well, as the facts of the case that's certainly
17        where I started for sure.
18   Q    What other documents did you look at?
19   A    Like I said, I believe I had some of the
20        complaints and replies I believe also that I had.
21   Q    Did you use any data information in those in
22        forming your opinions?
23   A    I think general background, I think the Act and
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1          the Regulation was, the facts of the case were
 2          what I focused on.
 3    Q     When you say facts of the case, you mean the facts
 4          as alleged in the Complaint?
 5    A     Facts in terms of what exactly was the Act and
 6          what was going to be, what was going to be
 7          involved and what, and how consumers, what would
 8          happen with consumers as a result of the Act and
 9          the change, changes in the law.
10    Q     Okay.  Just so I'm sure, when you had the Act and
11          the Regulation, you also had a copy of the
12          complaint that Messrs. Isaacson and Schaefer filed
13          on behalf of the DMA?
14    A     I believe I had the legal documents from both
15          sides, I think, as I recall at some point in time
16          in the earlier part of the case.
17    Q     Now, you recall being asked to produce all the
18          documents that you had in this case, don't you?
19    A     I do.
20    Q     I'll represent to you that I did not get a copy of
21          the Complaint or any of the pleadings filed by the
22          State in this case.  Did you destroy those or
23          what?
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          MR. SCHAEFER:   I am certain that a copy of

2     the complaint was produced.   And to the extent,

3     you know, I don't believe that any of the motion

4     papers filed by the State were provided to MR.

5     SCHAEFER Keller.

6          MR. WESOKY:   I'll take that as your

7     representation.   Thank you.

8  Q   Okay.   So based on what Mr. Schaefer just told us,

9     you did not have copies of anything filed by the

10    State in this case?

11 A   It's hard for me to remember exactly what I had,

12    but I know I had some of the legal documents.

13 Q   According to Mr. Schaefer, you certainly had the

14    Complaint that DMA filed?

15 A   Yes.

16 Q   And you reviewed that before you reached your

17    opinion?

18                    RECESS TAKEN

19     (Requested portion read back by reporter)

20 A   It's hard to remember exactly.   I know where I

21    started and that was what I'm considering the

22    facts of the case or the Act and those documents

23    associated with that.   I don't remember exactly

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire   03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
1    A    I have to see that article.

2    Q    I'm sorry.  I didn't bring it with me.  But let's

3         see if you agree with me.  Is one of the concerns

4         about consumers and they give their information

5         that they'll be cheated?

6              MR. SCHAEFER:  Objection to the question.

7    Q    Okay.

8    A    I think consumers are worried about a range of

9         different kinds of outcomes that might occur and

10        cheating potentially could be one of those.

11   Q    And how about identity theft; is that another one?

12   A    I think privacy again has a lot of ramifications,

13        and I think one of them can be seen as identify

14        theft by consumer.

15   Q    Another one is their fear of being overwhelmed

16        with solicitations, offers and things of that

17        nature, correct?

18   A    I think again, there's a concern about disclosing

19        information that would result in unwanted

20        marketing material.

21   Q    And is there a fear that their children will be

22        targeted for something or other if they gave their

23        personal information out?
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          MR. SCHAEFER:   Objection to the form.

2    A    There's a whole host of concerns that consumers

3          have with privacy and certainly one would be how,

4          what, how information could be used, whether it's

5          family members or other personal relationships

6          that might result in unwanted outcomes.

7    Q    Now, did you see a copy of any Colorado statute

8          that deals with the confidentiality and privacy of

9          information given to the Colorado Department of

10         Revenue?

11   A    Could you be more specific?

12   Q    Sure.   Did you see any Colorado statute other than

13         the law in question in this case concerning the

14         reporting by retailers to the Department of

15         Revenue and to their customers?

16   A    I'm not sure.

17   Q    Do you remember seeing any Colorado law which

18         dealt with the obligation of the Department of

19         Revenue to keep material and information that they

20         received confidential and not to disperse it to

21         anybody?

22   A    I'm not, again, I'm not sure.

23   Q    I'm correct, am I not, in stating that consumer

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    behavior is driven by many factors?

2  A   Correct.

3  Q   Price is one certainly?

4  A   Correct.

5  Q   Product is another?

6  A   Correct.

7  Q   A brand is certainly another?

8  A   Correct.

9  Q   Quality of the product is certainly another?

10 A   Correct.

11 Q   Convenience is certainly another?

12 A   Correct.

13 Q   Past experience with a merchant, be it a web site

14    or a catalog, is another?

15 A   Correct.

16 Q   And certainly Internet shopping is influenced by

17    its ability to save time for a consumer?

18 A   Certainly one of the benefits of internet shopping

19    is saving time.

20 Q   And you certainly you have an ability to research

21    and compare products and prices?

22 A   Internet, that's one of the advantages of the

23    internet is you can compare prices more easily.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    Do you think in your opinion that with all those

2         advantages that the behavior change attributed to

3         the loss of privacy by the survey is overstated

4         based on these other advantages to consumers that

5         the internet has?

6              MR. SCHAEFER:   Objection to the form.   Go

7         ahead.

8    A    No.   I don't.   I don't think it's overstated.

9    Q    So you think the concern of loss of privacy will

10        drive a large number of consumers away from using

11        the internet to make purchases?

12             MR. SCHAEFER:   Objection to the form.

13   A    Well, there are many ways to purchase over the

14        internet and so I think that the loss of privacy

15        will affect those retailers who are associated

16        with that.

17   Q    Associated with the Colorado --

18   A    The loss of privacy.

19   Q    With the Colorado law, you mean?

20   A    Colorado law.

21   Q    Let's take a look at the survey for a minute.

22        Okay?

23             EXHIBIT 21 MARKED FOR IDENTIFICATION

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire   03784
(603)298-2987 tel   (603)218-6633 fax   (603)443-1157 cell
cjfoster71@aol.com

1    Q    I'm going to ask you to please take a look at

2         page, I think it's page 19.  Let me make the

3         record.  I just handed you Exhibit 21.  That's the

4         Colorado Consumer Survey from RSG, Final Results;

5         is that correct?

6    A    That's correct.

7    Q    And this is the survey that you reference in your

8         Declaration?

9    A    That's correct.

10   Q    Okay.  I'm going to ask you to look at page 19.

11        There's a question that says if you were to make a

12        similar purchase in the future but with this new

13        disclosure requirement in place, what would you

14        most likely do.  Now, given that the question

15        followed that on 18, is it possible that the

16        consumers could be thinking that the disclosure

17        requirement was really a tax, that they were

18        talking about a tax, that if you were to make a

19        similar purchase in the future but with this new

20        tax in place, what would you most likely do?

21             MR. SCHAEFER:  Objection to the form.

22   A    You know, it's pretty clear.  It says disclosure

23        requirement in the context of the survey.  I would

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1          think that respondents would interpret it as such.
 2     Q    Even though the preceding question talked about
 3          disclosures to the Colorado Department of Revenue?
 4     A    It's the disclosure requirement.  It would seem
 5          that it follows fairly directly from the previous
 6          page.
 7     Q    So there's no confusing possibility with the
 8          consumer that they would be thinking of a tax
 9          because of the reference to the disclosure to the
10          Department of Revenue?
11              MR. SCHAEFER:  Talking about a reference on
12          page 18?
13     Q    Yes.  I assume that's the preceding page of the
14          survey.
15              MR. SCHAEFER:  Yes.
16     A    Yes.  I think it says disclosure requirement on
17          19, and this is page 18, right?
18              MR. SCHAEFER:  Right.
19     A    That it's referring, that that's going to be
20          followed from what they've got, what they've read
21          on page 18 that talked about the disclosure.
22     Q    If you look at the second question on page 18?
23     A    Yes.
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1    Q    It says I do not mind the state of Colorado
 2         knowing the kinds of products I buy, from whom I
 3         buy them and so forth?
 4    A    Um-hum.
 5    Q    Now, it's true, is it not, that the reporting
 6         requirement does not require a disclosure of the
 7         products that a consumer buys, correct?
 8              MR. SCHAEFER:   You mean specific products?
 9    A    So in terms of the Act, I don't think requires
10         identification of specific products and prices, I
11         believe.
12    Q    And with using Mr. Schaefer's word of specific, do
13         you think this question is misleading at all that
14         it states I don't mind the state knowing the kinds
15         of products I buy?
16    A    In the sense that you -- the kinds of products are
17         going to be a function of retailers and where you
18         buy from.  The extent to which retail information
19         is disclosed, kinds of products information is
20         disclosed.  In that sense, I don't see it as
21         misleading.
22    Q    So if I buy something from Victoria's Secret,
23         let's say, how do you know if it's body lotion or
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1          revealing lingerie?
 2    A     You don't know specific products, but you know the
 3          general range of products.  Or consumers in their
 4          minds may feel that certain retailers are
 5          associated with certain kinds of products.
 6    Q     So if I buy from L.L. Bean, you don't know if I'm
 7          buying socks or a backpack, do you?  Yes or no?
 8          Do you?
 9    A     You don't know specific products, but you would
10          know the kinds of products that L.L. Bean sells.
11    Q     Yes, a backpack or socks, which are very similar?
12    A     Could be seen as outdoor products.
13    Q     You didn't draft question 18, did you?  I'm sorry,
14          the questions appearing on page 18?
15    A     I did not.
16    Q     Knowing that the Colorado law doesn't require
17          disclosure of the products that an individual
18          buys, do you think the question should have
19          included the word kinds of products I buy?  Would
20          it have been better to eliminate that?
21    A     I think given the nature of the disclosure of the
22          retailer that the kinds of products I buy is
23          consistent with that.  So in that sense, I think
```

**_NORTH COUNTRY COURT REPORTERS_**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          the language is appropriate.

2     Q    If you look at the preceding question, reporting

3          my name, billing address, shipping address and the

4          amount of my purchase to the State is an invasion

5          of my privacy.  Isn't and doesn't that question

6          set forth all that has to be reported by a

7          retailer; the purchaser's name, address, shipping

8          address and amount of purchase?

9     A    I mean that sets forth what they will, what the

10         retailer will report about that particular person,

11         I believe that's correct.

12    Q    So why then have in the second question on that

13         page the addition, the kinds of products I buy,

14         when all the information that is required is set

15         forth in the first part of that question?

16              MR. SCHAEFER:   Objection to the form.

17    A    Well, my sense is that the second one is dealing

18         with what the State would learn based on the

19         reporting of that information from the first part

20         from a specific retailer.

21    Q    Okay.  Now, if you had designed this survey, would

22         you have included that second question after the

23         first in the form it appears?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1              MR. SCHAEFER:   Objection to form.

 2    A    The intent of the survey --

 3    Q    That's not my question.   Would you, MR. SCHAEFER

 4         Keller, have drafted the question, the second

 5         question on page 18 the way it is drafted after

 6         the first question appears on page 18 or would you

 7         have done it differently?

 8              MR. SCHAEFER:   Same objection.

 9    A    Let me answer my question.   Let me answer the

10         question.   So what I would say is that I would

11         certainly try to get both sides.   It's common

12         practice to try to have it kind of, a balanced

13         approach if you will, in terms of agreement, and

14         whether I would have these specific words, the

15         intent would be what I would characterize as

16         largely the same.   It's really hard to sort of

17         look back and say if I started from scratch would

18         I have gotten exactly to this point.

19    Q    Well, certainly the second question could have

20         said I do not mind the state of Colorado knowing

21         my name, billing address, shipping address, and

22         the amount of my purchases.

23    A    It could have said that.
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

| | | |
|---|---|---|
| 1 | Q | Fact is, it's true, is it not, that it would have |
| 2 | | been better to have said that because this second |
| 3 | | question is misleading, giving the consumer the |
| 4 | | belief that there is more that will be reported |
| 5 | | than what actually has to be reported, isn't that |
| 6 | | correct? |
| 7 | A | No.  What I would say is that often what you try |
| 8 | | to do is try to find alternative wording that gets |
| 9 | | across the same intent, same objective.  So that |
| 10 | | otherwise, consumers, if they have to think again |
| 11 | | the question, and if it's too much a mirror of the |
| 12 | | first, then you're just going to get the same |
| 13 | | response.  So the hope is to try to get people to |
| 14 | | think again and give you another chance to get a |
| 15 | | good valid answer. |
| 16 | Q | Do you know what the term reactivity bias means? |
| 17 | A | I believe so. |
| 18 | Q | What? |
| 19 | A | I believe so. |
| 20 | Q | Could you tell me what it means to you? |
| 21 | A | Yes.  I'm trying to recall how I would define it. |
| 22 | | It's a sort of a questionnaire sensitivity issue, |
| 23 | | and I'm not sure exactly how I would phrase it. |

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1    A    You could look at it that way.  You could look at

 2         what would be the way, I guess I would

 3         characterize the survey is it's trying to

 4         understand the consumer impact of this law and

 5         this change, and it's looking at it in terms of a

 6         couple different factors.

 7    Q    Is it a correlational survey trying to measure

 8         degree of association between two variables,

 9         intention and behavior?

10    A    It is certainly, it's not an experimental survey

11         in that different consumers are given different

12         scenarios so in that record it's more of a

13         correlational survey.

14    Q    Okay.  Is there a factor that when you premeasure

15         someone's intentions that that increases the

16         subsequent behavior to match the intention?

17    A    So by premeasure or measure?  You mean measure

18         before the event?  Is that what you mean by

19         premeasure?

20    Q    Yes.  Perhaps I'm redundant in my question.

21    A    That's okay.  I think you're bettering your

22         concept, and that's okay.

23              MR. SCHAEFER:  Measure twice, cut once.
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1    Q    Well --

 2    A    That I couldn't remember.  This is the only one I

 3         could remember having seen.

 4    Q    Let's take a look at Exhibit 17, okay?  If you

 5         turn to the second page of that exhibit, it has

 6         226 at the bottom.  You have a couple markings on

 7         that page?

 8    A    Right.

 9    Q    Could you tell me what those mean?

10    A    They don't mean a lot, to be honest.  It's just a

11         habit I have of when I read documents I mark them

12         up in part just to, it's just a way I do just to

13         process things so it's just to delineate or just

14         something like that.  I'll circle, I'll underline

15         and put things on the side and in this case I did

16         all three.

17    Q    Did you have any issues or problems with those

18         questions 2 and 3 that you kind of drew around?

19    A    Not at all.  This was just, literally, just the

20         way I read things.

21    Q    So I take it you had no problems with question 1,

22         question 2, question 3, or question 4?

23    A    That is correct.
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   No problem with question 5?

2   A   That's correct.

3   Q   Okay.  Now, question 6 you make some notes.

4       Perhaps you could tell me what they are.

5   A   Question 6, I believe there's only one note there,

6       and I think -- my guess is you can't read this.

7   Q   You guessed correctly.

8   A   And I actually am surprised that I can read this,

9       but I'm pretty sure what it says is I would

10      consider is those three words so I would consider

11      reporting my name, billing address, shipping

12      address and the amount of purchase so those are

13      the three words I wrote there.

14  Q   Do you know if that was adopted into the final

15      version of the survey?

16  A   I'd have to check to see.

17  Q   Why don't we do that if we can.

18  A   It was not.  So it remained as reporting my name.

19  Q   And then you have some notes also with regard to

20      question 7.

21  A   That's correct.

22  Q   Perhaps again you can interpret those for us?

23  A   Oh, boy.  I can get some of this.  I'll tell you

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        what I can get, and I'll tell you what I'm having

2        trouble, what -- I actually have trouble reading

3        my handwriting, but what I can guess it says and

4        it's just wording, it's nothing I would consider

5        as substantive, is if you were to make this type

6        of purchase again under similar circumstances but

7        assuming this new disclosure requirement were in

8        place, what would you most likely try to do?  And

9        then what I can't read is what's on that bubble

10       above the 7 on the right there.  There's something

11       I added there, and I can't tell what it is, and I

12       can't infer it either.  I just don't know.  I

13       can't read that.  It would be easier, it might be

14       easier if I had the original but maybe not.

15    Q  I don't have the original.

16    A  I don't think I could, I really, I'm pretty good

17       about reading what I write and that one's just,

18       but I can't, I'm not perfect, and that's one I'm

19       having a hard time.  I can get the word to.  Looks

20       like ask but I doubt I would write ask there so I

21       think it's got to be maybe assess, but it doesn't

22       make sense so I don't know what that is.

23    Q  What about the bubble at the bottom?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   A   Bubble at the bottom basically just says try to,

2       attempt to, so it was just a restatement of that

3       in that try that I mentioned before in the

4       question.

5   Q   And the next page, part C?

6   A   Yes.  I think, again, I just put physical, I think

7       physical store located in Colorado.  Instead of

8       from a store.  I think in a physical store.  I

9       think that's what that refers to.

10  Q   Do you know if those recommendations were or

11      changes were adopted?

12  A   I mean, I think there was some editing that went

13      on.  I don't know whether the, some of the

14      specific wording was adopted.  I think the, there

15      was some editing that happened there.

16  Q   But if you compare that to the final survey, can

17      you tell if your edits were adopted?

18  A   Not those specific edits, I don't believe so.

19  Q   Okay.  Let's look at moving down to question 8.

20      The circle is just for your, to catch your own

21      eye?

22  A   Just, and the check mark is also just the way I

23      read things.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   And then on the bottom of the page it says a

2       result of this law.  What are those notes?

3   A   Says here, so the question is that statement there

4       is as a result of this law, how would your

5       internet and catalog purchases from out of state

6       retailers who must report your name, address and

7       amount to the Department of Revenue likely be

8       affected over the coming year.  There's several

9       things.  One is theese and that's just wording.  I

10      put question mark there because as these other

11      comments were all line editing kind of comments,

12      they're just wording suggestions.  And then the

13      question I had here was on the right, the bottom,

14      sorry, the bottom left of the page says makes it

15      seems as if there are some that do not have to

16      report versus given that all of retailers under

17      the law -- and I can't read the rest.  I think it

18      just stops there kind of.  So it's more of a kind

19      of query or note, if you will, about the use of

20      the word who.

21  Q   Was that change adopted?

22  A   Yes.  Yes.  The those retailers.  Out of state

23      retailers.  Yes.  That change was adopted.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1  Q    The reason you wanted that change was because it

2       would be inclusive for all out of state retailers

3       because that's who the law affected?  All out of

4       state retailers?

5            MR. SCHAEFER:   I'm confused by the question.

6       The word they suggested was these and the word I

7       think that he was saying was inserted was those.

8       Not all.

9  A    Actually, I think I suggested those.

10           MR. SCHAEFER:   Okay.

11 A    I don't think that's a these, but I'm not

12      positive.

13 Q    And you do note that --

14 A    I might have said these.

15 Q    -- that the question made it seem like some don't

16      have to report or the law requires that all have

17      to report.  Is that an interpretation, a fair

18      interpretation of your note at the bottom of the

19      page?

20 A    I believe so, but, again, it's hard to remember

21      the context, but it was to add the word those I

22      thought was, at the time I thought would be more

23      accurate or clearer, I guess is maybe the way to

**_NORTH COUNTRY COURT REPORTERS_**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1        put it.
 2    Q   And then let's go to the last page on that exhibit
 3        which is your page of notes.  Would you tell me
 4        what they say?
 5    A   They're going to be hard.  Okay.  The top part has
 6        DMA and NYC for New York City and it looks like it
 7        has the name of a Senior Vice President perhaps.
 8    Q   Did you speak with that individual?
 9    A   No.  And then it says Colorado legislation, state
10        revenue department, and looks like remote sales
11        and March 1.
12    Q   Do you know why you wrote those down?
13    A   I think there was some description of the case,
14        and I was just writing down words, I think, from
15        that description.
16    Q   Would that have been on your initial contact with
17        Mr. Isaacson and Mr. Schaefer?  Because these
18        notes are undated.  That's why I'm asking.
19    A   They are undated, and that would be my guess, but
20        I can't say for sure when and I also unfortunately
21        can't say that this was all from one phone
22        conversation.  This could have been from multiple
23        phone conversations because it was in the file.
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   Taking notes, Colorado legislation, state revenue

2       department, so forth.  Then you have the word

3       nexus and something below that and I can't make

4       that out.  Could you tell me what that is?

5   A   I got nexus, too.  But below it it's really hard

6       to tell.  So I'm sorry about that.  It looks like

7       it could be high, but, you know, the first word,

8       but I'm not sure.  It could be ruling or

9       something.  You know, R, even though it doesn't

10      look like it, that second word underneath there,

11      it could be R U Y because a lot of times when

12      you're on a phone conversation you just don't have

13      time to get full words.  You're just trying to get

14      as many of the letters as you can.

15  Q   Then I see over to the right there it's a little

16      arrow, physical presence, employees/facility?

17  A   Facilities, I think probably.

18  Q   And below that agents and then an arrow pointing

19      down, economic pressure?

20  A   Presence.

21  Q   Okay.  Economic presence.  State?

22  A   Tried.

23  Q   State tried.  What does that mean?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    A    I think these are just notes about the background

2         to the case and just talking about different, the

3         development of the case through, that they were

4         giving me as general background and I just was

5         taking notes that related to that.

6    Q    They meaning, I'll use your words, George and

7         Matt?

8    A    George and Matt.   Correct.

9    Q    Giving you background about the case and what it

10        was about?

11   A    Descriptive background, correct.

12   Q    Could it be that they were describing their theory

13        of the case to you?

14        MR. SCHAEFER:   Objection to the form.   Go

15        ahead.

16   A    No.   I think this was very much sort of an

17        historical account of what had happened in the

18        development in the case.   As I recall it was very

19        historical and like a reporter kind of descriptive

20        account.

21   Q    Over on the right it says Tom Adler, RSG,

22        something below that?

23   A    Unbiased sample from and what I can't read is, it

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        may, from Colorado.  Probably should be of

2        Colorado.  That's CO, I think, in the bottom

3        right.  So unbiased sample from Colorado.  That

4        was going to be a survey that was going to be

5        conducted, I guess.

6   Q    So you were told by George and Matt that Tom Adler

7        from RSG was going to conduct an unbiased survey

8        from Colorado?

9   A    All I know is, I don't know when I was told this

10       because I don't know when I wrote this, but it is

11       just the fact that Tom Adler RSG and I've got

12       something about an unbiased sample from Colorado.

13  Q    And you knew Mr. Adler before this?

14  A    I don't think we actually ever met in person, but

15       I know of him.

16  Q    Then you have a line, it appears, and below that

17       are more notes?

18  A    Right.  Right.

19  Q    Can you tell me what those notes are?

20  A    Looks like it says talks about noncollecting

21       retailer.

22  Q    And the one next to that looks like, is it

23       collecting retailer?

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1    A    Yes.  That's correct.  In parentheses, yes.

 2    Q    And over on the right the preliminary

 3         injunction/damages, what does that mean?

 4    A    Again, that's part of the chronicle I believe I

 5         got about the, whether initially or subsequent

 6         time about the nature of the case.

 7    Q    And the terms noncollecting retailer and

 8         collecting retailer were given to you by George

 9         and Matt?

10    A    Yes.

11    Q    There's, it looks like a little chain on the

12         right-hand side.  I'm sorry.  On the left-hand

13         side.

14    A    A list or --

15    Q    Looks like there's, on the far left, a chain?

16              MR. SCHAEFER:  Do you want to indicate it to

17         him?

18    Q    With an arrow?

19    A    Oh, yes.  There's a name, there are two names

20         circled that go down, and one, there's an arrow

21         that goes down that says the word survey.

22    Q    What are those names?

23    A    Those were names of two other academics who also
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      serve as experts so I suspect I wrote those down

2      in the context of thinking about other experts

3      that they may want to use.

4    Q   Who are they?  Can you give me their names?

5    A   Eric Joachimsthaler.  It's a German name so it's a

6      little hard.  Actually was with him yesterday.  J

7      O A C H I M S T H A L E R.

8    Q   And the other one below that?

9    A   That's actually hard, too.  Dhruv, D H R U V, and

10      I believe the last name is Grewal.  It's an Indian

11      name.  G R E W A L.

12    Q   And you suggested them as experts to George and

13      Matt or you just wrote them down as possible

14      people to talk to?

15    A   I think, I'm not sure exactly the context.  They

16      are ones who have, I know are experts on consumers

17      and retailing and certainly the facts of the case.

18    Q   You didn't consult with them regarding your expert

19      opinion, did you?

20    A   I did not.

21    Q   And you didn't refer them any work on this case, I

22      take it?

23    A   I don't believe so.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1  Q    Next is much of consumer privacy or something like

2       that?

3  A    It looks like invasion of consumer privacy.

4  Q    And whose words are those?  Yours or George and

5       Matt's?

6  A    Could be mine.

7  Q    Could be.  Could be George and Matt's then?

8  A    Well, I don't know at that point in time where we

9       are in terms of these notes.  That's part of the

10     problem.  As we go farther down, they may be, it's

11     harder to say exactly where they come from.

12  Q    Okay.  And then there's a list of three things.

13  A    Correct.

14  Q    And are those notes you got from the statute or

15     are those notes that you got from your

16     conversation with George and Matt?

17  A    My guess is the conversation with George and Matt.

18     But whether I had the statute or read the statute

19     and I don't know where that fits into the picture.

20  Q    Over on the right, under preliminary

21     injunction/damages, threatened irreparable harm?

22  A    Threat of or threat of irreparable harm or

23     something like that.  Yes.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   And the reason that's down there, is it because

2       that's what Matt and George wanted you to focus

3       on, that there would be irreparable harm to

4       retailers?

5   A   I don't know the exact context of that.  My belief

6       it would be there's discussions about different

7       legal aspects and the implications and, again,

8       background context to the case.

9   Q   With regard to that exhibit, the survey

10      questionnaire, did you provide a copy of that to

11      anybody with your notes on it?

12  A   Not, I don't believe so.

13  Q   Did you discuss your editorial comments with

14      anybody?

15  A   I did.

16  Q   And who would that be?

17  A   I believe it would be someone from RSG and could

18      have also included, but I don't remember if it

19      did, I'm not sure it did, anyone from, Matt or

20      George from Brann & Isaacson.

21  Q   Was that a telephone conference?

22  A   Yes.

23  Q   Do you remember the person at RSG?

NORTH COUNTRY COURT REPORTERS
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   A   I believe it might have been someone from Chicago,

2       from their Chicago office.

3   Q   Does the name Nelson Whipple ring a bell?

4   A   It's an unusual name.  So I mean I would, I'm not

5       sure, I'm not sure if that's the person.  I'm not

6       sure.  Sorry.

7               (Off-the-record discussion)

8           EXHIBIT 23 MARKED FOR IDENTIFICATION

9   Q   I give you what's been marked as Exhibit 23 and it

10      looks like it's a copy of an e-mail chain dated

11      the 30th of June of this year, and it's attaching

12      a copy of the Complaint that was filed by Messrs.

13      Isaacson and Schaefer in Federal Court in Denver.

14      So would that be the date, the 30th of June, that

15      you received a copy of the Complaint that you've

16      already testified about that you received?

17  A   That would be consistent with that, yes.

18  Q   Okay.  It says there's a three-page summary of the

19      Complaint that was distributed to the DMA Steering

20      Committee and the DMA Press Release.  Did you keep

21      those?

22  A   I believe so.  I believe they would be in my file.

23  Q   Those were not --

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          MR. SCHAEFER:  For the record, we produced

2     the press release.  I know that's --

3          MR. WESOKY:  I think I've seen that.

4          MR. SCHAEFER:  The summary of complaint,

5     unlike material that might have been otherwise

6     work product which we have not withheld, we

7     withheld nothing on work product grounds, that is

8     an attorney/client communication.  So for the time

9     being because frankly I don't think it's a summary

10    of a complaint that he received, so for the moment

11    it's withheld on the grounds that it's an

12    attorney/client communication.

13         MR. WESOKY:  We'll cross that bridge when we

14    get to it.

15    Q    But if you retained it, it would be in your files,

16         I assume?

17    A    That's correct.

18    Q    Did you read it or just read the Complaint?

19    A    I believe I read everything that was probably sent

20         to me.

21    Q    Do you remember what it said?

22    A    I don't remember specifically what it said.

23    Q    This is to test your memory.  How much time if you

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1        can recall did you spend reading the Complaint
 2        that was sent to you?
 3    A   How many times did I --
 4    Q   How much time did you spend reading it?
 5    A   I think the copy of the complaint, I have to think
 6        about it, but my guess is that's on the order of
 7        30, 40 minutes maybe.
 8    Q   Did you read it once, twice, three times?
 9              (Off-the-record discussion)
10    A   I believe it would be, it certainly would have
11        been multiple times since that first time.
12        Correct.
13    Q   So the 30 to 40 minutes would be the first time or
14        all the times that you read the Complaint?
15    A   The 30 or 40 minutes would probably be the initial
16        time.  I think subsequent times would not take
17        nearly as long to go through.
18    Q   And from your earlier testimony, I take it you
19        made no notes on your copy of the Complaint or no
20        separate notes about the Complaint?
21    A   I'm almost certain that's the case but I'm not,
22        you know, I'm almost certain that's the case.
23              EXHIBIT 24 MARKED FOR IDENTIFICATION
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    I hand you, MR. SCHAEFER, what's been marked

2         Exhibit 24, and it's an e-mail from Mr. Isaacson

3         to you, and it states that we, meaning his firm,

4         anticipates having a draft for your review of the

5         Affidavit in support of preliminary injunction.

6         Do you remember receiving this e-mail, Exhibit 24?

7    A    I mean, generally so, yes.

8    Q    So I take it from the content of this e-mail that

9         you didn't draft the Affidavit.  It was drafted

10        for you by Brann & Isaacson?

11   A    The first draft was drafted based on our

12        conversations and my input that I then got a

13        chance to review.

14   Q    And you say your input.  I assume that was in

15        phone conversations?

16   A    Correct.

17   Q    How long would you guess or guess is a bad word.

18        Would you estimate that you spent on phone

19        conversations with either Mr. Isaacson or

20        Mr. Schaefer or both in discussing the contents of

21        your Affidavit or Declaration?

22            MR. SCHAEFER:  Objection to the form but go

23        ahead.

NORTH COUNTRY COURT REPORTERS
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   A   It's hard to say.  My guess is we easily would

2       have spent an hour or two, I think, having gone

3       through this material.

4   Q   And again, from your earlier testimony, you made

5       no notes as to what you wanted in your Declaration

6       or Affidavit and you made no notes as to what

7       either Mr. Isaacson or Mr. Schaefer said regarding

8       what would be in that Declaration or Affidavit,

9       correct?

10  A   That's correct.

11          EXHIBIT 25 MARKED FOR IDENTIFICATION

12  Q   Let me hand you what's marked as Exhibit 25, and

13      that is an e-mail to you from Mr. Schaefer dated

14      July 30 in which he references attaching a draft

15      of a Declaration for use in this case, and it also

16      attaches a draft of Mr. Adler's Declaration and

17      the RSG's report of the survey.  I take it this

18      was the first time then, first, let me ask you.

19      Did I state that correctly what Exhibit 25 states?

20  A   I believe so in terms of that e-mail.  Yes.

21  Q   Then I take it this was the first time you saw a

22      draft of your Declaration to be used in this case?

23  A   I believe that's true.

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   Okay.   From your memory, can you tell me how that

2       differed from your final Declaration, if at all?

3   A   I know there were comments that were made and

4       discussion that occurred, but I can't specifically

5       state exactly how the two versions differed.

6               EXHIBIT 26 MARKED FOR IDENTIFICATION

7   Q   I hand you what's been marked Exhibit 26.   And I

8       will represent to you that it is a document I

9       received from Mr. Schaefer from your file, I can

10      tell because it's marked KLK at the bottom and

11      this is a draft of the Declaration because on page

12      6 there's in bold, Kevin, let's discuss.

13  A   Yes.

14  Q   So this Exhibit 26 is a draft of your Declaration.

15  A   Correct.

16  Q   Do you know if this was the draft that came with

17      Exhibit 25 or if that was a different draft?

18  A   I can't say for sure.   I mean I can't, it's hard

19      to know what an attachment was, whether or not it

20      was or not.   I'm sorry.

21  Q   Let me call your attention to page 3.   There is a

22      blank in paragraph 4?

23  A   Yes.   I see that.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1        Brann & Isaacson.

 2    Q   But purchasing information is not exactly correct.

 3        It's name, address, and amount of purchases,

 4        correct?

 5    A   Well, that's another way to state that.

 6    Q   In paragraph 7, you state in the second sentence

 7        about the amount of lost sales.  Depends on a

 8        number of factors.

 9    A   Right.

10    Q   What are those number of factors?

11    A   Well, I think it would depend on the consumer,

12        it's going to depend on the company, it's going to

13        depend on the marketing and, or the retailer I

14        should say, to be more specific.  It's going to

15        depend on the marketing environment.  It's going

16        to depend on the, you know, the loyalty, the

17        consumer, it's just going to depend on a number of

18        different factors.

19    Q   It will depend on the consumers' need for a

20        product, won't it?

21    A   It will depend on consumer choices and, needs and

22        choices.

23    Q   It will also depend on the, I suppose, on the
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1           navigability of the web site, if the consumer
 2           likes the web site and finds it consumer friendly?
 3     A     It will depend on a lot of the relationship
 4           between the consumer and the retailer as a
 5           function of all those kinds of those factors.
 6     Q     But today you can't tell me which, I mean let me
 7           back up a step.  It's my understanding that you
 8           didn't draft up things you wanted included in the
 9           Declaration and send it to Messrs. Schaefer and
10           Isaacson?
11     A     No.  The first draft was based on my input based
12           on our discussions on my analysis of the case.
13     Q     Including your analysis of the survey results?
14     A     Including my analysis of the survey results.
15                EXHIBIT 29 MARKED FOR IDENTIFICATION
16     Q     Let me move on.  Let me show you what's been
17           marked an Exhibit 29, and it's KLK page 274 and I
18           left off the back page where it was copied.  I
19           apologize, Matt.  The last pages did not get
20           copied.
21                This is an e-mail chain between yourself and
22           the Brann & Isaacson firm regarding your
23           Declaration.  It's dated August 6th.  Is that
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1            correct?

2       A    Yes.

3       Q    For August 6th it's the final in the chain?

4       A    Yes.  That's what I was trying to -- okay.

5       Q    And you responded to the August 3rd e-mail which

6            we looked at a moment ago, exhibit, I believe 28?

7                 MR. SCHAEFER:  28 I think, is it dated August

8            3rd?  It's not 28.  Because 28 was the one about

9            the survey link.

10      Q    Okay.  I'm sorry.  27?

11                MR. SCHAEFER:  Might be as far back as 25

12           because 27 was also about the link.

13      Q    In any event, let's move on.  Thank you.  The

14           first in that chain was an e-mail of August 3rd to

15           you attaching the draft of the Declaration.  And

16           you responded with some suggested revisions.

17      A    Um-hum.

18      Q    Is that correct?

19      A    That's correct.

20                MR. SCHAEFER:  Jack, for purposes of clarity

21           this thing is set up a little funny.  The August

22           3rd e-mail you see was from Kevin so he's

23           capturing some language from another e-mail.  He's

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      writing from August 3rd.  Do you see that in the

2      middle of the page?

3   Q  Right.  And he is responding to the e-mail.

4   A  We don't know the original date of the, although

5      maybe we do actually.

6   Q  Thank you very much.  It's July 30th.

7   A  Exactly.  And then I'm August 3rd.  And then

8      Matt's August 6th.

9   Q  And August 6 is the response.

10  A  It's the weird -- Dartmouth e-mail system is

11     really goofy that way because it goes to the

12     bottom and it just throws people off.

13  Q  Thank you.

14  A  Yes.

15  Q  But you're responding to the e-mail where the

16     draft of your Declaration was attached.  You

17     responded with some suggestions.  Is that correct?

18  A  That's correct.

19  Q  And then you got a reply which talked about your

20     suggestions to the draft; is that correct?

21  A  That's correct.

22  Q  And you state in your response to the July 30

23     e-mail, be sure Adler report aligns.  What do you

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1       mean by that?

2   A   Well, there was a passage that talked about the

3       survey questionnaire and its development, and

4       Adler talked about the input that he got and it

5       was my recollection that that was something that

6       I'd also provided input on and I just wanted to be

7       clear that that was the case.  That that had

8       happened, one, and that the two reports were

9       consistent about that if that was in fact what had

10      happened.

11  Q   And then the reply to that was to reject that

12      because you were reviewer of the survey whereas

13      Tom Adler was the draftsman?

14          MR. SCHAEFER:   Objection.

15  A   I think the way I'd characterize it was they

16      wanted, the response basically just pointed out

17      how they wanted to handle that issue in terms of

18      draftsmen and reviewers.  So it was more of the

19      language and how to best kind of present that.

20          EXHIBIT 30 MARKED FOR IDENTIFICATION

21  Q   Let me hand you what's been marked an Exhibit 30

22      and at the top it's dated August 9th.

23  A   Hope your weekend went well.  Okay.  Sorry.

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   In appears to be your response to the e-mail we

2       just talked about where they sent you a revised

3       Declaration?

4   A   Yes.

5   Q   And you talk about followup conversation?  Did

6       that occur?

7   A   I believe so.

8   Q   Do you remember when that occurred?

9   A   I don't know specifically.

10  Q   Do you remember what was discussed?

11  A   I suspect, think this was all as part of the

12      review and just making sure that in terms of the

13      report that it had been, was finalized.

14          EXHIBIT 31 MARKED FOR IDENTIFICATION

15  Q   Exhibit 31 is an e-mail to you dated August 10

16      from Mr. Schaefer attaching the final version of

17      your Declaration with the minor edits we

18      discussed.  Do you remember what those minor edits

19      were?

20  A   I don't right now.  I'm sorry.

21  Q   And I attach the final version of the RSG final

22      documents and Tom Adler's Declaration referenced

23      in your report.  So I take it that's when you

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    received the August 9th version of the survey?

2  A  It would seem if this e-mail was August 10th that

3    he, I would think that's when I would have

4    received that.

5  Q  And do you also receive Mr. Adler's Declaration at

6    that time?

7  A  I believe that the e-mail seems to indicate that.

8  Q  From my recollection, you had not received a copy

9    of his Declaration before this time?

10    MR. SCHAEFER:   Objection.

11  A  Again, the time line is hard to remember as to

12    when I got something.   It refers to the final

13    versions and so I can't be specific about that in

14    particular.

15    EXHIBIT 32 MARKED FOR IDENTIFICATION

16  Q  I hand you what's been marked as Exhibit 32.   It's

17    an e-mail from Mr. Schaefer to you dated September

18    10th.

19  A  Correct.

20  Q  And it discusses certain requirements for this

21    lawsuit.

22  A  That seems to be correct.

23  Q  Is that the first time that you became aware of

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    what the requirements were with respect to your

2    expert opinion in this case?

3    A    I can't say exactly what I learned when.  I'm sure

4    there were conversations early on about my role in

5    the case as an expert witness and what would be

6    expected and required from me.

7    Q    Let me amend that by saying the requirements which

8    are mandated by the rules as opposed to what they

9    expected in your opinion.  They meaning Brann

10   Isaacson.

11        MR. SCHAEFER:  And the question with regard

12   to those?

13        MR. WESOKY:  Pardon me?

14        MR. SCHAEFER:  I don't think that was

15   actually a question so I just wanted to make sure.

16        MR. WESOCKY:  Well, I was modifying the last

17   one.  I will start again.

18        MR. SCHAEFER:  Okay.

19   Q    Is the e-mail of September 10th, Exhibit 32, the

20   first time that you received information from

21   Brann & Isaacson regarding what the legal

22   requirements were for your expert opinion?  When I

23   say legal requirements, those required by the

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        rules?

2   A   It may be the first time I got e-mail and that I

3        can't be sure of, but there may have been phone

4        discussions that would have reviewed this early on

5        or any point in that process.  I can't say for

6        sure right now.

7   Q   Do you remember what you did when you read this?

8        When I say did, I mean with respect to this case?

9        I don't mean you went and had lunch.  I mean what

10       you did with respect to your opinion in this case?

11  A   I don't know.  I would have thought I would have

12       replied back to this e-mail one way or another at

13       some point in time.  This is a Friday afternoon

14       e-mail, 4 p.m., Matt Schaefer working late into

15       the week, so actually I don't know.  It was going

16       into the weekend.  To be honest, I'm not sure

17       exactly when I read and replied back to this.

18            EXHIBIT 33 MARKED FOR IDENTIFICATION

19  Q   I hand you what's been marked as Exhibit 33.  It's

20       identified at KLK 294 and ask if that is an e-mail

21       chain reflecting a setting up of a telephone call

22       to discuss Exhibit 32.

23  A   I believe so.  I mean the timing is, it's the

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      Tuesday after that weekend.  So my guess is that's

2      what that was referring to.

3  Q   Okay.  Did you have that phone conversation?

4  A   I believe so.  It's only like a month ago.  Seems

5      like a long time ago.

6  Q   Do you remember anything about it?

7  A   I remember, I just remember again going, reviewing

8      the process and what was involved in the

9      Declaration, I believe, and it was going through

10     it.  So I think pretty much went through the

11     e-mail as I recall, but I don't remember all the

12     specifics.

13  Q   Okay.

14          EXHIBIT 34 MARKED FOR IDENTIFICATION

15  Q   Let me hand you what's been marked as Exhibit 34.

16     This is an e-mail from Mr. Schaefer to you dated

17     the 15th of September of this year.  Do you recall

18     receiving this?

19  A   I think.  Yes, I believe so.

20  Q   And you remember discussing it with Mr. Schaefer

21     at a subsequent phone conversation?

22  A   I believe so.

23  Q   Do you remember what you discussed?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    A   I believe this was just talking about the, in

2        terms of principles and methods it was just sort

3        of the, what was the sort of methodology, if you

4        will, that I would use in analysis kind of

5        approach that were involved in coming, in arriving

6        at my Expert Report, written report, and that was

7        I think we discussed those.

8    Q   What did you tell him about the principles,

9        methods and so forth that you just referenced in

10       that e-mail?

11   A   I can't remember specifically the whole, that

12       whole conversation on that.

13   Q   And do you remember generally?

14   A   I think, generally, I think would have talked

15       about, I think we talked some about sort of

16       experiences and knowledge that I've gained on

17       consumer behavior and consumer privacy and

18       retailing and loyalty relationships in my academic

19       work and consulting work, and we talked about

20       that, but I don't remember all the specifics.

21   Q   And I take it from your past testimony and your

22       habit, you didn't make any notes of this

23       conversation?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1        deposition and every second of your preparation

 2        time.  You're not going to give me a gift, are

 3        you?

 4    A   Well --

 5            MR. SCHAEFER:  If you had a phone call, you

 6        might get one.  This one is too easy to know.

 7        There will be a transcript that tells us when we

 8        started and when we finished.

 9    A   Very well defined.

10    Q   Okay.  Let me hand you the next exhibit in order.

11            EXHIBIT 35 MARKED FOR IDENTIFICATION

12    Q   MR. SCHAEFER Keller, I handed you what's been

13        marked Exhibit 35.  It's an e-mail, the top date

14        is September the 19th, 2010.  And it appears, it's

15        an e-mail from Mr. Schaefer to you and then a

16        response.  Using the Dartmouth e-mail system, the

17        response is at the bottom?

18    A   That's correct.

19    Q   Now, this e-mail attaches a draft of your Expert

20        Report.  Is that the first time you saw a draft of

21        your Expert Report, differentiating it from your

22        Declaration?

23    A   I believe so.  But again, I can't be certain of
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1       all the different correspondence.

2    Q   Okay.

3            EXHIBIT 36 MARKED FOR IDENTIFICATION

4    Q   Let me hand you what's marked as Exhibit 36, and

5       that's a draft of your Expert Report in this

6       matter, is it not?

7    A   Yes, it is.

8    Q   And if you'd look at the last page there's a

9       blank, to date my fees in this matter are blank.

10   A   Correct.

11   Q   And the final version didn't have that in it.  Did

12      it?

13   A   I'd have to check the final version.

14   Q   Assume with me it didn't.  Would that be because

15      you hadn't totaled up fees as of that date?

16   A   Haven't invoiced yet.

17   Q   So you don't know as you sit here today what your

18      fees to date are?

19   A   I know --

20        MR. SCHAEFER:  Well, asked and answered

21      earlier, but go ahead.

22   A   I know roughly what those are.

23   Q   But as of September 19th, 20th, you didn't know

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1          what they were?
 2     A    I hadn't invoiced it so I hadn't done any
 3          calculations.
 4     Q    Okay.  That's fair enough.
 5               EXHIBIT 37 MARKED FOR IDENTIFICATION
 6     Q    I think it's the final version of your Expert
 7          Report.  Is that correct?  I want you to read that
 8          and be sure that it is.
 9     A    I believe so.  Looks like the final report.
10     Q    Now, again, those words were provided to you by
11          Messrs. Schaefer and Isaacson after talking to you
12          on the phone, is that the way that worked?
13     A    That's correct.
14     Q    And again, you didn't draft anything up to send to
15          them?  They provided you with the document after
16          discussion?
17     A    Yes.  Based on my input.  Correct.
18     Q    Let's take a short break.
19                         RECESS TAKEN
20     Q    In your Declaration, Exhibit 16, I believe?  Let's
21          take a look at paragraph 2, please.
22     A    Yes.
23     Q    You say in the first sentence that much of your
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        drafted Dr. Adler's Declaration?

2    A   I don't know anything about the Adler report.

3    Q   You state on paragraph 5, the bottom of page 3,

4        top of page 4, that you believe the survey was

5        well designed and well executed.  Let's talk about

6        the well designed first.  On what do you base that

7        opinion?

8    A   Based it on my experience designing and evaluating

9        and interpreting surveys for 30 years now, I

10       guess, since 1980 and then my analysis of this

11       survey based on that experience.

12   Q   What, in particular, if I could find out, what

13       makes it well designed?

14   A   There's some things that go into a survey in terms

15       of questions and wording and orders and order of

16       questions and so it really is something, like I've

17       said, I've done for 30 years so in looking at the

18       survey, I in my belief in terms of the questions

19       and how they were phrased and how they were

20       ordered and everything I felt was well designed.

21   Q   As I understand it from the survey, there are

22       really four, call them focal questions, is that

23       right?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1    A     I think that's fair to say.

 2    Q     Look at page 18, 19, 20 and, yes.   18, 19 and 20.

 3    A     That's correct.

 4    Q     There are two questions on 18, one each on 19 and

 5          20?

 6    A     That's correct.

 7    Q     And that's really the meat and potatoes of the

 8          survey?  That's where the rubber meets the road,

 9          right?

10    A     Right.   That's right.

11    Q     And those focal questions, why are they well

12          designed?

13    A     I thought they were appropriate in terms of

14          providing clear and balanced set of questions to

15          get at this issue of how consumers would respond

16          to this law so I thought all four of them

17          collectively provided insight into that.

18    Q     But were they fair and balanced?

19                MR. SCHAEFER:   Fox news reference.

20    A     Was that a Fox news reference?

21    Q     I'm adding a little levity to our discussion here.

22    A     I don't watch much Fox news.  I only watch sports

23          on TV.
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1              (Off-the-record discussion)
 2    Q    Describe for me why you say it was well executed.
 3    A    Well, the execution came on my understanding based
 4         on the report as to the procedures and the methods
 5         and the approach that they took, and then also my
 6         knowledge of, as it turns out, of Knowledge
 7         Networks and my experiences with them through the
 8         years.
 9    Q    When did you learn that Knowledge Networks was
10         involved in the execution or taking of the survey?
11    A    I'm not sure when.  RSG chose them and so it would
12         have been after the fact.  It's just it was at
13         some point in that process when we were told, when
14         I was told that here's who's actually conducting
15         the survey.
16    Q    Was that before or after you signed your
17         Declaration?
18              MR. SCHAEFER:  Objection.
19    A    I would have, my understanding would be that or my
20         belief would be that I would have learned that
21         before that along the way as part of the process.
22         The methodological process.
23    Q    Did you learn that in discussion with Dr. Adler?
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1    A    No.  I'm not sure who I would have learned it

 2         from, whether it was from the law firm or whether

 3         it was from RSG.  I don't believe it was Adler

 4         because I think, again, I think I spoke to someone

 5         else from RSG potentially, but I don't know for

 6         sure.

 7    Q    And again, you have no notes that would reflect

 8         that?

 9    A    Not on that.  No.

10    Q    If you were conducting the survey for the purpose

11         of seeing the influence of this Colorado law on

12         consumers, would you have done anything

13         differently?

14    A    I don't think so.

15    Q    So as far as you're concerned, this is a perfect

16         survey?

17    A    It's hard to call it a perfect survey because you

18         always, there's, I think it's hard for any survey

19         to be perfect.  There's always things you can

20         think about having done differently and hard to

21         know whether or not they would have been better or

22         not, but based on what I did know I felt like it

23         was a balanced and fair survey.
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      B, the final results so it's a complete copy of

2      that original Declaration.  If you can have it

3      marked.  Unfortunately, I don't have another copy.

4           EXHIBIT 38 MARKED FOR IDENTIFICATION

5   Q  I'm showing you what has been marked as Exhibit 38

6      which I just described which I'll represent is a

7      copy of your final Declaration dated August 10th,

8      together with the two documents that were attached

9      as Exhibits A and B respectively.  Exhibit A is a

10     copy of your CV dated July 21st, 2010, and Exhibit

11     B is a copy of the Final Results document dated

12     August 9th, 2010.  Can you take a look at that and

13     just confirm that's what Exhibit 38 is?

14  A  That seems to be what it is.

15  Q  And then just for the sake of the record so that

16     we can tie these together.  Exhibit 37, the

17     immediately proceeding exhibit, is a copy of your

18     final Expert Report dated September 20th.  Do you

19     see that?

20  A  I do.

21  Q  And on page 2 of your Expert Report, Exhibit 37,

22     it indicates that your Declaration dated August

23     10, 2010 is attached to and expressly incorporated

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        in the report.  Do you see that?

2    A   I do.

3    Q   So Exhibits 37 and 38 together comprise your

4        Expert Report in this matter?

5    A   I think so.  Yes.

6    Q   Can you with reference to Exhibit A to the

7        Declaration if you like or otherwise, can you give

8        us a brief summary of your professional

9        background?

10   A   Been in marketing for 31 years or so, I guess, 30

11       years, and have an MBA and a Ph.D. in marketing

12       and have worked at Bank of America in marketing

13       research for two years and have been an academic

14       since graduating with my Ph.D. for 25 years.  And

15       have published and written and taught on consumer

16       marketing those last 25 years.

17   Q   I'm sorry.  I didn't hear a word in there.  In

18       part.  Is that what you said?

19   A   I'm not sure.

20          (Requested portion read back by reporter)

21   Q   Where have you been employed since leaving the

22       private sector?

23   A   So my, the institutions where I've been on the

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com