1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF COLORADO

3

4     Civil Action No. 10-CV-01546-REB-CBS

5

6     The Direct Marketing Association,

7                      Plaintiff,

8                         v.

9     Roxy Huber, in her capacity as Executive

10    Director, Colorado Department of Revenue,

11                     Defendant.

12

13         DEPOSITION OF **KEVIN LANE KELLER** taken at Norwich,

14    Vermont, on October 21, 2010.

15

16    APPEARANCES:

17         Matthew P. Schaefer, Esquire
           Brann & Isaacson
18         184 Main Street, Fourth Floor
           P.O. Box 3070
19         Lewiston, Maine, 04243-3070, on behalf of the
           Plaintiff, The Direct Marketing Association.

20

           Jack Wesoky, Esquire
21         Senior Assistant Attorney General
           1525 Sherman Street, 7th Floor
22         Denver, Colorado, 80203, on behalf of the Roxy
           Huber in her capacity as Executive Director,
23         Colorado Department of Revenue.

***NORTH COUNTRY COURT REPORTERS***
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1              KEVIN LANE KELLER, DULY SWORN

 2                  DIRECT EXAMINATION

 3   BY MR. WESOKY:

 4   Q    MR. SCHAEFER, we've just met.  My name is Jack

 5        Wesoky.  I represent the state of Colorado,

 6        particularly the Director of the Department of

 7        Revenue, Roxie Huber, in this matter in which

 8        you've been endorsed to testify as an expert

 9        witness.  I will be asking you some questions

10        today, asking you to give me answers and I don't

11        know if you've ever had your deposition taken, but

12        I'm just going to go over a few rules of the way

13        depositions are taken.

14             It's an oral exercise so please answer

15        orally.  No nods or shakes of the head or unh-unh

16        or uh-huh because it's very difficult for our

17        court reporter, Cindy, to make those notes, okay?

18   A    Yes.

19   Q    And I will ask a question and I'll ask you to

20        answer it.  I'll try not to jump on your answer.

21        At the same time, please don't try to answer a

22        question before it's over.  Okay?

23   A    Okay.
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    A    The time, yes, mental time where you're actually, yes.

3    Q    And again, just to be sure I understand, in longer cases you might make notes of some time, but in the shorter cases you don't other than in your diary for phone calls?

7    A    If it's a case that spans multiple years, then at some point I will stop and keep track of what I've done, if I haven't invoiced especially, before too much time elapses.

11   Q    Have you done that in this case?

12   A    I have not done that in this case as of yet.

13   Q    Just to make sure I understand.  You've not submitted an an invoice yet for your work in this case?

16   A    I have not submitted an invoice yet.

17   Q    To the best of your ability, could you tell me before preparing for this deposition and obviously our time in this deposition, how much time have you spent in this matter?

21   A    Before the preparation of the deposition and the deposition, it would be approximately one day.

23   Q    Eight hours?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

| | | |
|---|---|---|
| 1 | A | Eight hours. |
| 2 | Q | In preparation for this deposition, did you make |
| 3 | | any notes of any kind? |
| 4 | A | I don't believe so. |
| 5 | Q | In this case, to the best of your recollection, |
| 6 | | could you tell me what documents you reviewed to |
| 7 | | prepare your expert opinion? |
| 8 | A | Well, they, I think, would be in the Declaration, |
| 9 | | I believe. |
| 10 | Q | Okay. |
| 11 | A | Because I was asked that question and then went |
| 12 | | back to my files and then reported those so the |
| 13 | | ones associated with my Declaration would be the |
| 14 | | ones that I've reviewed. |
| 15 | Q | Okay.  You've not reviewed any, I'll use the term |
| 16 | | literature, treatises, anything of that nature |
| 17 | | before giving your expert opinion? |
| 18 | A | I'm actually finishing a 15-month project revising |
| 19 | | my marketing management textbook so over the last |
| 20 | | 15 months I've reviewed a lot of material on |
| 21 | | consumers and on marketing dealing with lots of |
| 22 | | different topics.  So I actually had a fairly rich |
| 23 | | background in general to sort of use as part of |

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          MR. SCHAEFER:  For the record, we produced

2     the press release.  I know that's --

3          MR. WESOKY:  I think I've seen that.

4          MR. SCHAEFER:  The summary of complaint,

5     unlike material that might have been otherwise

6     work product which we have not withheld, we

7     withheld nothing on work product grounds, that is

8     an attorney/client communication.  So for the time

9     being because frankly I don't think it's a summary

10    of a complaint that he received, so for the moment

11    it's withheld on the grounds that it's an

12    attorney/client communication.

13         MR. WESOKY:  We'll cross that bridge when we

14    get to it.

15   Q    But if you retained it, it would be in your files,

16        I assume?

17   A    That's correct.

18   Q    Did you read it or just read the Complaint?

19   A    I believe I read everything that was probably sent

20        to me.

21   Q    Do you remember what it said?

22   A    I don't remember specifically what it said.

23   Q    This is to test your memory.  How much time if you

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1         can recall did you spend reading the Complaint

 2         that was sent to you?

 3   A     How many times did I --

 4   Q     How much time did you spend reading it?

 5   A     I think the copy of the complaint, I have to think

 6         about it, but my guess is that's on the order of

 7         30, 40 minutes maybe.

 8   Q     Did you read it once, twice, three times?

 9               (Off-the-record discussion)

10   A     I believe it would be, it certainly would have

11         been multiple times since that first time.

12         Correct.

13   Q     So the 30 to 40 minutes would be the first time or

14         all the times that you read the Complaint?

15   A     The 30 or 40 minutes would probably be the initial

16         time.  I think subsequent times would not take

17         nearly as long to go through.

18   Q     And from your earlier testimony, I take it you

19         made no notes on your copy of the Complaint or no

20         separate notes about the Complaint?

21   A     I'm almost certain that's the case but I'm not,

22         you know, I'm almost certain that's the case.

23               EXHIBIT 24 MARKED FOR IDENTIFICATION
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    Well --

2    A    That I couldn't remember.  This is the only one I

3         could remember having seen.

4    Q    Let's take a look at Exhibit 17, okay?  If you

5         turn to the second page of that exhibit, it has

6         226 at the bottom.  You have a couple markings on

7         that page?

8    A    Right.

9    Q    Could you tell me what those mean?

10   A    They don't mean a lot, to be honest.  It's just a

11        habit I have of when I read documents I mark them

12        up in part just to, it's just a way I do just to

13        process things so it's just to delineate or just

14        something like that.  I'll circle, I'll underline

15        and put things on the side and in this case I did

16        all three.

17   Q    Did you have any issues or problems with those

18        questions 2 and 3 that you kind of drew around?

19   A    Not at all.  This was just, literally, just the

20        way I read things.

21   Q    So I take it you had no problems with question 1,

22        question 2, question 3, or question 4?

23   A    That is correct.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    No problem with question 5?

2    A    That's correct.

3    Q    Okay.  Now, question 6 you make some notes.

4         Perhaps you could tell me what they are.

5    A    Question 6, I believe there's only one note there,

6         and I think -- my guess is you can't read this.

7    Q    You guessed correctly.

8    A    And I actually am surprised that I can read this,

9         but I'm pretty sure what it says is I would

10        consider is those three words so I would consider

11        reporting my name, billing address, shipping

12        address and the amount of purchase so those are

13        the three words I wrote there.

14   Q    Do you know if that was adopted into the final

15        version of the survey?

16   A    I'd have to check to see.

17   Q    Why don't we do that if we can.

18   A    It was not.  So it remained as reporting my name.

19   Q    And then you have some notes also with regard to

20        question 7.

21   A    That's correct.

22   Q    Perhaps again you can interpret those for us?

23   A    Oh, boy.  I can get some of this.  I'll tell you

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    what I can get, and I'll tell you what I'm having

2    trouble, what -- I actually have trouble reading

3    my handwriting, but what I can guess it says and

4    it's just wording, it's nothing I would consider

5    as substantive, is if you were to make this type

6    of purchase again under similar circumstances but

7    assuming this new disclosure requirement were in

8    place, what would you most likely try to do?  And

9    then what I can't read is what's on that bubble

10   above the 7 on the right there.  There's something

11   I added there, and I can't tell what it is, and I

12   can't infer it either.  I just don't know.  I

13   can't read that.  It would be easier, it might be

14   easier if I had the original but maybe not.

15   Q   I don't have the original.

16   A   I don't think I could, I really, I'm pretty good

17   about reading what I write and that one's just,

18   but I can't, I'm not perfect, and that's one I'm

19   having a hard time.  I can get the word to.  Looks

20   like ask but I doubt I would write ask there so I

21   think it's got to be maybe assess, but it doesn't

22   make sense so I don't know what that is.

23   Q   What about the bubble at the bottom?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   A   Bubble at the bottom basically just says try to,

2       attempt to, so it was just a restatement of that

3       in that try that I mentioned before in the

4       question.

5   Q   And the next page, part C?

6   A   Yes.  I think, again, I just put physical, I think

7       physical store located in Colorado.  Instead of

8       from a store.  I think in a physical store.  I

9       think that's what that refers to.

10  Q   Do you know if those recommendations were or

11      changes were adopted?

12  A   I mean, I think there was some editing that went

13      on.  I don't know whether the, some of the

14      specific wording was adopted.  I think the, there

15      was some editing that happened there.

16  Q   But if you compare that to the final survey, can

17      you tell if your edits were adopted?

18  A   Not those specific edits, I don't believe so.

19  Q   Okay.  Let's look at moving down to question 8.

20      The circle is just for your, to catch your own

21      eye?

22  A   Just, and the check mark is also just the way I

23      read things.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    And then on the bottom of the page it says a

2         result of this law.  What are those notes?

3    A    Says here, so the question is that statement there

4         is as a result of this law, how would your

5         internet and catalog purchases from out of state

6         retailers who must report your name, address and

7         amount to the Department of Revenue likely be

8         affected over the coming year.  There's several

9         things.  One is theese and that's just wording.  I

10       put question mark there because as these other

11       comments were all line editing kind of comments,

12       they're just wording suggestions.  And then the

13       question I had here was on the right, the bottom,

14       sorry, the bottom left of the page says makes it

15       seems as if there are some that do not have to

16       report versus given that all of retailers under

17       the law -- and I can't read the rest.  I think it

18       just stops there kind of.  So it's more of a kind

19       of query or note, if you will, about the use of

20       the word who.

21    Q    Was that change adopted?

22    A    Yes.  Yes.  The those retailers.  Out of state

23       retailers.  Yes.  That change was adopted.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
1    Q    The reason you wanted that change was because it

2         would be inclusive for all out of state retailers

3         because that's who the law affected?  All out of

4         state retailers?

5              MR. SCHAEFER:  I'm confused by the question.

6         The word they suggested was these and the word I

7         think that he was saying was inserted was those.

8         Not all.

9    A    Actually, I think I suggested those.

10             MR. SCHAEFER:  Okay.

11   A    I don't think that's a these, but I'm not

12        positive.

13   Q    And you do note that --

14   A    I might have said these.

15   Q    -- that the question made it seem like some don't

16        have to report or the law requires that all have

17        to report.  Is that an interpretation, a fair

18        interpretation of your note at the bottom of the

19        page?

20   A    I believe so, but, again, it's hard to remember

21        the context, but it was to add the word those I

22        thought was, at the time I thought would be more

23        accurate or clearer, I guess is maybe the way to
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        received the August 9th version of the survey?

2    A   It would seem if this e-mail was August 10th that

3        he, I would think that's when I would have

4        received that.

5    Q   And do you also receive Mr. Adler's Declaration at

6        that time?

7    A   I believe that the e-mail seems to indicate that.

8    Q   From my recollection, you had not received a copy

9        of his Declaration before this time?

10           MR. SCHAEFER:   Objection.

11   A   Again, the time line is hard to remember as to

12       when I got something.  It refers to the final

13       versions and so I can't be specific about that in

14       particular.

15           EXHIBIT 32 MARKED FOR IDENTIFICATION

16   Q   I hand you what's been marked as Exhibit 32.  It's

17       an e-mail from Mr. Schaefer to you dated September

18       10th.

19   A   Correct.

20   Q   And it discusses certain requirements for this

21       lawsuit.

22   A   That seems to be correct.

23   Q   Is that the first time that you became aware of

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      put it.

2  Q   And then let's go to the last page on that exhibit

3      which is your page of notes.  Would you tell me

4      what they say?

5  A   They're going to be hard.  Okay.  The top part has

6      DMA and NYC for New York City and it looks like it

7      has the name of a Senior Vice President perhaps.

8  Q   Did you speak with that individual?

9  A   No.  And then it says Colorado legislation, state

10     revenue department, and looks like remote sales

11     and March 1.

12  Q   Do you know why you wrote those down?

13  A   I think there was some description of the case,

14     and I was just writing down words, I think, from

15     that description.

16  Q   Would that have been on your initial contact with

17     Mr. Isaacson and Mr. Schaefer?  Because these

18     notes are undated.  That's why I'm asking.

19  A   They are undated, and that would be my guess, but

20     I can't say for sure when and I also unfortunately

21     can't say that this was all from one phone

22     conversation.  This could have been from multiple

23     phone conversations because it was in the file.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   Taking notes, Colorado legislation, state revenue

2       department, so forth.  Then you have the word

3       nexus and something below that and I can't make

4       that out.  Could you tell me what that is?

5   A   I got nexus, too.  But below it it's really hard

6       to tell.  So I'm sorry about that.  It looks like

7       it could be high, but, you know, the first word,

8       but I'm not sure.  It could be ruling or

9       something.  You know, R, even though it doesn't

10      look like it, that second word underneath there,

11      it could be R U Y because a lot of times when

12      you're on a phone conversation you just don't have

13      time to get full words.  You're just trying to get

14      as many of the letters as you can.

15   Q   Then I see over to the right there it's a little

16      arrow, physical presence, employees/facility?

17   A   Facilities, I think probably.

18   Q   And below that agents and then an arrow pointing

19      down, economic pressure?

20   A   Presence.

21   Q   Okay.  Economic presence.  State?

22   A   Tried.

23   Q   State tried.  What does that mean?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

| | | |
|---|---|---|
| 1 | A | I think these are just notes about the background |
| 2 | | to the case and just talking about different, the |
| 3 | | development of the case through, that they were |
| 4 | | giving me as general background and I just was |
| 5 | | taking notes that related to that. |
| 6 | Q | They meaning, I'll use your words, George and |
| 7 | | Matt? |
| 8 | A | George and Matt.  Correct. |
| 9 | Q | Giving you background about the case and what it |
| 10 | | was about? |
| 11 | A | Descriptive background, correct. |
| 12 | Q | Could it be that they were describing their theory |
| 13 | | of the case to you? |
| 14 | | MR. SCHAEFER:  Objection to the form.  Go |
| 15 | | ahead. |
| 16 | A | No.  I think this was very much sort of an |
| 17 | | historical account of what had happened in the |
| 18 | | development in the case.  As I recall it was very |
| 19 | | historical and like a reporter kind of descriptive |
| 20 | | account. |
| 21 | Q | Over on the right it says Tom Adler, RSG, |
| 22 | | something below that? |
| 23 | A | Unbiased sample from and what I can't read is, it |

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1            may, from Colorado.  Probably should be of

 2            Colorado.  That's CO, I think, in the bottom

 3            right.  So unbiased sample from Colorado.  That

 4            was going to be a survey that was going to be

 5            conducted, I guess.

 6       Q    So you were told by George and Matt that Tom Adler

 7            from RSG was going to conduct an unbiased survey

 8            from Colorado?

 9       A    All I know is, I don't know when I was told this

10            because I don't know when I wrote this, but it is

11            just the fact that Tom Adler RSG and I've got

12            something about an unbiased sample from Colorado.

13       Q    And you knew Mr. Adler before this?

14       A    I don't think we actually ever met in person, but

15            I know of him.

16       Q    Then you have a line, it appears, and below that

17            are more notes?

18       A    Right.  Right.

19       Q    Can you tell me what those notes are?

20       A    Looks like it says talks about noncollecting

21            retailer.

22       Q    And the one next to that looks like, is it

23            collecting retailer?
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    A    Yes.  That's correct.  In parentheses, yes.

2    Q    And over on the right the preliminary

3         injunction/damages, what does that mean?

4    A    Again, that's part of the chronicle I believe I

5         got about the, whether initially or subsequent

6         time about the nature of the case.

7    Q    And the terms noncollecting retailer and

8         collecting retailer were given to you by George

9         and Matt?

10   A    Yes.

11   Q    There's, it looks like a little chain on the

12        right-hand side.  I'm sorry.  On the left-hand

13        side.

14   A    A list or --

15   Q    Looks like there's, on the far left, a chain?

16             MR. SCHAEFER:  Do you want to indicate it to

17        him?

18   Q    With an arrow?

19   A    Oh, yes.  There's a name, there are two names

20        circled that go down, and one, there's an arrow

21        that goes down that says the word survey.

22   Q    What are those names?

23   A    Those were names of two other academics who also

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      serve as experts so I suspect I wrote those down

2      in the context of thinking about other experts

3      that they may want to use.

4   Q  Who are they?  Can you give me their names?

5   A  Eric Joachimsthaler.  It's a German name so it's a

6      little hard.  Actually was with him yesterday.  J

7      O A C H I M S T H A L E R.

8   Q  And the other one below that?

9   A  That's actually hard, too.  Dhruv, D H R U V, and

10     I believe the last name is Grewal.  It's an Indian

11     name.  G R E W A L.

12  Q  And you suggested them as experts to George and

13     Matt or you just wrote them down as possible

14     people to talk to?

15  A  I think, I'm not sure exactly the context.  They

16     are ones who have, I know are experts on consumers

17     and retailing and certainly the facts of the case.

18  Q  You didn't consult with them regarding your expert

19     opinion, did you?

20  A  I did not.

21  Q  And you didn't refer them any work on this case, I

22     take it?

23  A  I don't believe so.

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   Next is much of consumer privacy or something like

2       that?

3   A   It looks like invasion of consumer privacy.

4   Q   And whose words are those?  Yours or George and

5       Matt's?

6   A   Could be mine.

7   Q   Could be.  Could be George and Matt's then?

8   A   Well, I don't know at that point in time where we

9       are in terms of these notes.  That's part of the

10      problem.  As we go farther down, they may be, it's

11      harder to say exactly where they come from.

12   Q   Okay.  And then there's a list of three things.

13   A   Correct.

14   Q   And are those notes you got from the statute or

15      are those notes that you got from your

16      conversation with George and Matt?

17   A   My guess is the conversation with George and Matt.

18      But whether I had the statute or read the statute

19      and I don't know where that fits into the picture.

20   Q   Over on the right, under preliminary

21      injunction/damages, threatened irreparable harm?

22   A   Threat of or threat of irreparable harm or

23      something like that.  Yes.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    And the reason that's down there, is it because

2         that's what Matt and George wanted you to focus

3         on, that there would be irreparable harm to

4         retailers?

5    A    I don't know the exact context of that.  My belief

6         it would be there's discussions about different

7         legal aspects and the implications and, again,

8         background context to the case.

9    Q    With regard to that exhibit, the survey

10        questionnaire, did you provide a copy of that to

11        anybody with your notes on it?

12   A    Not, I don't believe so.

13   Q    Did you discuss your editorial comments with

14        anybody?

15   A    I did.

16   Q    And who would that be?

17   A    I believe it would be someone from RSG and could

18        have also included, but I don't remember if it

19        did, I'm not sure it did, anyone from, Matt or

20        George from Brann & Isaacson.

21   Q    Was that a telephone conference?

22   A    Yes.

23   Q    Do you remember the person at RSG?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    I hand you, MR. SCHAEFER, what's been marked

2         Exhibit 24, and it's an e-mail from Mr. Isaacson

3         to you, and it states that we, meaning his firm,

4         anticipates having a draft for your review of the

5         Affidavit in support of preliminary injunction.

6         Do you remember receiving this e-mail, Exhibit 24?

7    A    I mean, generally so, yes.

8    Q    So I take it from the content of this e-mail that

9         you didn't draft the Affidavit.  It was drafted

10        for you by Brann & Isaacson?

11    A   The first draft was drafted based on our

12        conversations and my input that I then got a

13        chance to review.

14    Q   And you say your input.  I assume that was in

15        phone conversations?

16    A   Correct.

17    Q   How long would you guess or guess is a bad word.

18        Would you estimate that you spent on phone

19        conversations with either Mr. Isaacson or

20        Mr. Schaefer or both in discussing the contents of

21        your Affidavit or Declaration?

22        MR. SCHAEFER:  Objection to the form but go

23        ahead.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   A   It's hard to say.  My guess is we easily would

2       have spent an hour or two, I think, having gone

3       through this material.

4   Q   And again, from your earlier testimony, you made

5       no notes as to what you wanted in your Declaration

6       or Affidavit and you made no notes as to what

7       either Mr. Isaacson or Mr. Schaefer said regarding

8       what would be in that Declaration or Affidavit,

9       correct?

10   A   That's correct.

11           EXHIBIT 25 MARKED FOR IDENTIFICATION

12   Q   Let me hand you what's marked as Exhibit 25, and

13       that is an e-mail to you from Mr. Schaefer dated

14       July 30 in which he references attaching a draft

15       of a Declaration for use in this case, and it also

16       attaches a draft of Mr. Adler's Declaration and

17       the RSG's report of the survey.  I take it this

18       was the first time then, first, let me ask you.

19       Did I state that correctly what Exhibit 25 states?

20   A   I believe so in terms of that e-mail.  Yes.

21   Q   Then I take it this was the first time you saw a

22       draft of your Declaration to be used in this case?

23   A   I believe that's true.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax   (603)443-1157 cell
cjfoster71@aol.com

1   Q   Okay.  From your memory, can you tell me how that

2       differed from your final Declaration, if at all?

3   A   I know there were comments that were made and

4       discussion that occurred, but I can't specifically

5       state exactly how the two versions differed.

6           EXHIBIT 26 MARKED FOR IDENTIFICATION

7   Q   I hand you what's been marked Exhibit 26.  And I

8       will represent to you that it is a document I

9       received from Mr. Schaefer from your file, I can

10      tell because it's marked KLK at the bottom and

11      this is a draft of the Declaration because on page

12      6 there's in bold, Kevin, let's discuss.

13  A   Yes.

14  Q   So this Exhibit 26 is a draft of your Declaration.

15  A   Correct.

16  Q   Do you know if this was the draft that came with

17      Exhibit 25 or if that was a different draft?

18  A   I can't say for sure.  I mean I can't, it's hard

19      to know what an attachment was, whether or not it

20      was or not.  I'm sorry.

21  Q   Let me call your attention to page 3.  There is a

22      blank in paragraph 4?

23  A   Yes.  I see that.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1          correct?

 2    A     Yes.

 3    Q     For August 6th it's the final in the chain?

 4    A     Yes.  That's what I was trying to -- okay.

 5    Q     And you responded to the August 3rd e-mail which

 6          we looked at a moment ago, exhibit, I believe 28?

 7              MR. SCHAEFER:  28 I think, is it dated August

 8          3rd?  It's not 28.  Because 28 was the one about

 9          the survey link.

10    Q     Okay.  I'm sorry.  27?

11              MR. SCHAEFER:  Might be as far back as 25

12          because 27 was also about the link.

13    Q     In any event, let's move on.  Thank you.  The

14          first in that chain was an e-mail of August 3rd to

15          you attaching the draft of the Declaration.  And

16          you responded with some suggested revisions.

17    A     Um-hum.

18    Q     Is that correct?

19    A     That's correct.

20              MR. SCHAEFER:  Jack, for purposes of clarity

21          this thing is set up a little funny.  The August

22          3rd e-mail you see was from Kevin so he's

23          capturing some language from another e-mail.  He's
```

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1            writing from August 3rd.  Do you see that in the

 2            middle of the page?

 3    Q    Right.  And he is responding to the e-mail.

 4    A    We don't know the original date of the, although

 5            maybe we do actually.

 6    Q    Thank you very much.  It's July 30th.

 7    A    Exactly.  And then I'm August 3rd.  And then

 8            Matt's August 6th.

 9    Q    And August 6 is the response.

10    A    It's the weird -- Dartmouth e-mail system is

11            really goofy that way because it goes to the

12            bottom and it just throws people off.

13    Q    Thank you.

14    A    Yes.

15    Q    But you're responding to the e-mail where the

16            draft of your Declaration was attached.  You

17            responded with some suggestions.  Is that correct?

18    A    That's correct.

19    Q    And then you got a reply which talked about your

20            suggestions to the draft; is that correct?

21    A    That's correct.

22    Q    And you state in your response to the July 30

23            e-mail, be sure Adler report aligns.  What do you
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax   (603)443-1157 cell
cjfoster71@aol.com

1          mean by that?

2     A    Well, there was a passage that talked about the

3          survey questionnaire and its development, and

4          Adler talked about the input that he got and it

5          was my recollection that that was something that

6          I'd also provided input on and I just wanted to be

7          clear that that was the case.  That that had

8          happened, one, and that the two reports were

9          consistent about that if that was in fact what had

10         happened.

11    Q    And then the reply to that was to reject that

12         because you were reviewer of the survey whereas

13         Tom Adler was the draftsman?

14             MR. SCHAEFER:  Objection.

15    A    I think the way I'd characterize it was they

16         wanted, the response basically just pointed out

17         how they wanted to handle that issue in terms of

18         draftsmen and reviewers.  So it was more of the

19         language and how to best kind of present that.

20             EXHIBIT 30 MARKED FOR IDENTIFICATION

21    Q    Let me hand you what's been marked an Exhibit 30

22         and at the top it's dated August 9th.

23    A    Hope your weekend went well.  Okay.  Sorry.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1   Q   In appears to be your response to the e-mail we

2       just talked about where they sent you a revised

3       Declaration?

4   A   Yes.

5   Q   And you talk about followup conversation?  Did

6       that occur?

7   A   I believe so.

8   Q   Do you remember when that occurred?

9   A   I don't know specifically.

10  Q   Do you remember what was discussed?

11  A   I suspect, think this was all as part of the

12      review and just making sure that in terms of the

13      report that it had been, was finalized.

14          EXHIBIT 31 MARKED FOR IDENTIFICATION

15  Q   Exhibit 31 is an e-mail to you dated August 10

16      from Mr. Schaefer attaching the final version of

17      your Declaration with the minor edits we

18      discussed.  Do you remember what those minor edits

19      were?

20  A   I don't right now.  I'm sorry.

21  Q   And I attach the final version of the RSG final

22      documents and Tom Adler's Declaration referenced

23      in your report.  So I take it that's when you

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1        what the requirements were with respect to your

 2        expert opinion in this case?

 3   A    I can't say exactly what I learned when.  I'm sure

 4        there were conversations early on about my role in

 5        the case as an expert witness and what would be

 6        expected and required from me.

 7   Q    Let me amend that by saying the requirements which

 8        are mandated by the rules as opposed to what they

 9        expected in your opinion.  They meaning Brann

10        Isaacson.

11           MR. SCHAEFER:  And the question with regard

12        to those?

13           MR. WESOKY:  Pardon me?

14           MR. SCHAEFER:  I don't think that was

15        actually a question so I just wanted to make sure.

16           MR. WESOCKY:  Well, I was modifying the last

17        one.  I will start again.

18           MR. SCHAEFER:  Okay.

19   Q    Is the e-mail of September 10th, Exhibit 32, the

20        first time that you received information from

21        Brann & Isaacson regarding what the legal

22        requirements were for your expert opinion?  When I

23        say legal requirements, those required by the
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1     rules?

2    A   It may be the first time I got e-mail and that I

3     can't be sure of, but there may have been phone

4     discussions that would have reviewed this early on

5     or any point in that process.  I can't say for

6     sure right now.

7    Q   Do you remember what you did when you read this?

8     When I say did, I mean with respect to this case?

9     I don't mean you went and had lunch.  I mean what

10     you did with respect to your opinion in this case?

11   A   I don't know.  I would have thought I would have

12     replied back to this e-mail one way or another at

13     some point in time.  This is a Friday afternoon

14     e-mail, 4 p.m., Matt Schaefer working late into

15     the week, so actually I don't know.  It was going

16     into the weekend.  To be honest, I'm not sure

17     exactly when I read and replied back to this.

18         EXHIBIT 33 MARKED FOR IDENTIFICATION

19   Q   I hand you what's been marked as Exhibit 33.  It's

20     identified at KLK 294 and ask if that is an e-mail

21     chain reflecting a setting up of a telephone call

22     to discuss Exhibit 32.

23   A   I believe so.  I mean the timing is, it's the

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

| | | |
|---|---|---|
| 1 | | Tuesday after that weekend.  So my guess is that's |
| 2 | | what that was referring to. |
| 3 | Q | Okay.  Did you have that phone conversation? |
| 4 | A | I believe so.  It's only like a month ago.  Seems |
| 5 | | like a long time ago. |
| 6 | Q | Do you remember anything about it? |
| 7 | A | I remember, I just remember again going, reviewing |
| 8 | | the process and what was involved in the |
| 9 | | Declaration, I believe, and it was going through |
| 10 | | it.  So I think pretty much went through the |
| 11 | | e-mail as I recall, but I don't remember all the |
| 12 | | specifics. |
| 13 | Q | Okay. |
| 14 | | EXHIBIT 34 MARKED FOR IDENTIFICATION |
| 15 | Q | Let me hand you what's been marked as Exhibit 34. |
| 16 | | This is an e-mail from Mr. Schaefer to you dated |
| 17 | | the 15th of September of this year.  Do you recall |
| 18 | | receiving this? |
| 19 | A | I think.  Yes, I believe so. |
| 20 | Q | And you remember discussing it with Mr. Schaefer |
| 21 | | at a subsequent phone conversation? |
| 22 | A | I believe so. |
| 23 | Q | Do you remember what you discussed? |

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel    (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    A    I believe this was just talking about the, in

2         terms of principles and methods it was just sort

3         of the, what was the sort of methodology, if you

4         will, that I would use in analysis kind of

5         approach that were involved in coming, in arriving

6         at my Expert Report, written report, and that was

7         I think we discussed those.

8    Q    What did you tell him about the principles,

9         methods and so forth that you just referenced in

10        that e-mail?

11   A    I can't remember specifically the whole, that

12        whole conversation on that.

13   Q    And do you remember generally?

14   A    I think, generally, I think would have talked

15        about, I think we talked some about sort of

16        experiences and knowledge that I've gained on

17        consumer behavior and consumer privacy and

18        retailing and loyalty relationships in my academic

19        work and consulting work, and we talked about

20        that, but I don't remember all the specifics.

21   Q    And I take it from your past testimony and your

22        habit, you didn't make any notes of this

23        conversation?

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      deposition and every second of your preparation

2      time.  You're not going to give me a gift, are

3      you?

4   A   Well --

5          MR. SCHAEFER:  If you had a phone call, you

6      might get one.  This one is too easy to know.

7      There will be a transcript that tells us when we

8      started and when we finished.

9   A   Very well defined.

10  Q   Okay.  Let me hand you the next exhibit in order.

11         EXHIBIT 35 MARKED FOR IDENTIFICATION

12  Q   MR. SCHAEFER Keller, I handed you what's been

13      marked Exhibit 35.  It's an e-mail, the top date

14      is September the 19th, 2010.  And it appears, it's

15      an e-mail from Mr. Schaefer to you and then a

16      response.  Using the Dartmouth e-mail system, the

17      response is at the bottom?

18  A   That's correct.

19  Q   Now, this e-mail attaches a draft of your Expert

20      Report.  Is that the first time you saw a draft of

21      your Expert Report, differentiating it from your

22      Declaration?

23  A   I believe so.  But again, I can't be certain of

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      all the different correspondence.

2   Q   Okay.

3          EXHIBIT 36 MARKED FOR IDENTIFICATION

4   Q   Let me hand you what's marked as Exhibit 36, and

5      that's a draft of your Expert Report in this

6      matter, is it not?

7   A   Yes, it is.

8   Q   And if you'd look at the last page there's a

9      blank, to date my fees in this matter are blank.

10  A   Correct.

11  Q   And the final version didn't have that in it.  Did

12     it?

13  A   I'd have to check the final version.

14  Q   Assume with me it didn't.  Would that be because

15     you hadn't totaled up fees as of that date?

16  A   Haven't invoiced yet.

17  Q   So you don't know as you sit here today what your

18     fees to date are?

19  A   I know --

20        MR. SCHAEFER:  Well, asked and answered

21     earlier, but go ahead.

22  A   I know roughly what those are.

23  Q   But as of September 19th, 20th, you didn't know

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        what they were?

2   A   I hadn't invoiced it so I hadn't done any

3        calculations.

4   Q   Okay.  That's fair enough.

5           EXHIBIT 37 MARKED FOR IDENTIFICATION

6   Q   I think it's the final version of your Expert

7        Report.  Is that correct?  I want you to read that

8        and be sure that it is.

9   A   I believe so.  Looks like the final report.

10  Q   Now, again, those words were provided to you by

11       Messrs. Schaefer and Isaacson after talking to you

12       on the phone, is that the way that worked?

13  A   That's correct.

14  Q   And again, you didn't draft anything up to send to

15       them?  They provided you with the document after

16       discussion?

17  A   Yes.  Based on my input.  Correct.

18  Q   Let's take a short break.

19               RECESS TAKEN

20  Q   In your Declaration, Exhibit 16, I believe?  Let's

21       take a look at paragraph 2, please.

22  A   Yes.

23  Q   You say in the first sentence that much of your

***NORTH COUNTRY COURT REPORTERS***
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1      what I did.

2  Q   Again, just so I understand what you're saying,

3      because of this ongoing project revising your

4      textbook, you didn't find it necessary to refer to

5      any specific treatises or literature but just your

6      general knowledge from revising that textbook you

7      used in connection with formulating your expert

8      opinions, is that correct?

9  A   What I did was in the process of revising this

10     textbook there were lots of different topics that

11     would be relevant to the case that I certainly had

12     a chance to read about and think about and write

13     about as part of the revision of the textbook.

14  Q   But as I understand it, you didn't go to the

15     revisions of that textbook, specifically, in

16     connection with your expert opinion, but it was

17     just the knowledge that you accumulated in doing

18     that that you transferred to this expert opinion,

19     is that right?

20  A   There was enough before the revision of the

21     textbook general knowledge that I already had, and

22     then the updating that occurred with the actual

23     revision of the textbook, that gave me a good

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          foundation going into the preparation of the case.

2     Q    But again, just so I can understand.  You didn't

3          in preparation for your expert opinion say oh, I

4          need to refer to my notes on the textbook or the

5          material on the textbook.  It was just your

6          knowledge gained from doing that that helped you

7          with your expert opinion?

8     A    It was the knowledge gained but there was, when

9          you talk about general knowledge, general

10         knowledge is the accumulation of a lot of specific

11         articles and readings that you do so even though

12         it's general knowledge it's based on a lot of

13         specific articles and material that you read and

14         review which then, which in some cases would be

15         relevant to this particular case.

16    Q    As you sit here today, could you give me just a

17         few of those articles that you think would, that

18         you've accumulated over the last years that would

19         be relevant to this expert opinion?

20    A    They would be ones that would be referenced in the

21         textbook or included in my files associated with

22         the different chapters in the textbook.

23    Q    Would you tell me today what some of those are?

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1  A   Couldn't give you the specific names and authors,

2      if you will, of those articles because I've got,

3      there are literally thousands that I review and

4      maybe even reference.  I don't know.  Certainly

5      the hundreds that I reference.

6  Q   In your textbook, you mean?

7  A   In my textbook and then or included in my files,

8      too.  So it's all part of that set of material, if

9      you will.

10 Q   And again, just so I understand, you didn't go to

11     those files for particular reference for this

12     expert opinion?

13 A   Well, and again, it's one of those where I've gone

14     through those files as part of the textbook so

15     it's not as if I didn't have access to that

16     because I'd already reviewed and worked through a

17     lot of that as part of the textbook.

18 Q   But again, you didn't say oh, I could look at

19     Jones & Brown, to name a fake article, that will

20     help support my opinion.  I think that's relevant.

21     There was no thinking along that line?

22 A   The thinking would be more along the lines that

23     there's a set of material that I've used that

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1       inform my decision or my judgments as I kind of go

2       through this, and the time that this was done,

3       whether I could remember the specific titles, I'm

4       not sure.  I certainly could remember what those

5       were about because that's what I would have

6       reviewed and be included into the textbook.

7   Q   What were some of those, to use your words, about?

8   A   They talked a lot about consumers and consumer

9       behavior, talked about issues on privacy and

10      consumers' opinions about privacy.  Relationships

11      with retailers, relationships with brands,

12      purchase decision factors.  So it's kind of a

13      range of topics.

14  Q   But you can't think of any specifically today,

15      correct?

16  A   Specific articles?

17  Q   Yes.

18  A   I can think of the body of work that I used that

19      related to that.  I can't remember the specific

20      authors and titles of those papers.  I can

21      remember having consulted those and included and

22      incorporated some of that material into the

23      textbook.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    of being an expert in this case?

2         MR. SCHAEFER:   Objection to form.   Go ahead.

3    A   I would say that probably the most pertinent is

4         just the Ph.D. in marketing with emphasize on

5         consumer marketing that I received in the mid

6         '80s.   And then the second thing I would say would

7         be all of the work that I've done since then that

8         have been involved consumer marketing and research

9         and writing in the last 25 years, I guess.

10   Q   I take it from your Declaration that you're an

11        expert in consumer behavior, is that correct?

12   A   That's one of my areas of focus.

13   Q   And that's what, one of your areas of expertise in

14        this case, is that correct?

15   A   That's correct.

16   Q   And what other area of expertise are you bringing

17        in this case?

18   A   Branding.

19   Q   Okay.   How about survey methodology and

20        technology?

21   A   Survey methodologies is another area that I've

22        emphasized since 1979, I guess, or 1980.

23   Q   But you didn't design the survey in this case; is

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1          that correct?

2    A     I did not design the survey.

3    Q     Are you familiar with the methodology used?

4    A     I am.

5    Q     So you're familiar with what Knowledge Networks

6          did in this case for this survey?

7    A     Yes.

8    Q     And what is that?  Could you tell me?

9    A     Survey involved an online panel that was assembled

10         and involved an online questionnaire that asked a

11         sample of respondents some questions that were

12         relevant to the matters in this case.

13   Q     Do you know about their weighting and calibration?

14   A     I believe that is part of the sample composition

15         that involved some weighting in terms of

16         representativeness of the sample population.

17   Q     Do you know how that was done or are you just

18         relying on Knowledge Networks?

19   A     I'm relying on Knowledge Networks and RSG,

20         supplier to the RSG firm.

21             EXHIBIT 18 MARKED FOR IDENTIFICATION

22   Q     MR. SCHAEFER, I've handed you Exhibit 18 which is

23         Knowledge Networks Field Report Colorado Tax

**NORTH COUNTRY COURT REPORTERS**
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

| | | |
|---|---|---|
| 1 | | Policy Survey.  Simple question.  Did you ever see |
| 2 | | that before today? |
| 3 | A | I don't believe so. |
| 4 | Q | Okay.  You can set that aside. |
| 5 | | EXHIBIT 19 MARKED FOR IDENTIFICATION |
| 6 | Q | I hand you what's been marked as Exhibit 19, and |
| 7 | | it's called Knowledge Networks Project Statement |
| 8 | | CO Tax Policy Project number blank.  Have you ever |
| 9 | | seen that document before? |
| 10 | A | I don't believe so. |
| 11 | | MR. SCHAEFER:  Jack, just to make sure, I |
| 12 | | think this one has sequential but appended I think |
| 13 | | is this and I don't know whether it's part of the |
| 14 | | same document literally or not.  I don't recall |
| 15 | | specifically, but there's a Knowledge Panel |
| 16 | | Calibration document that begins at page RSG |
| 17 | | 00316. |
| 18 | | MR. WESOKY:  I don't know if it was appended |
| 19 | | either because it came, you know, one page at a |
| 20 | | time, but let's attach them for purposes of this |
| 21 | | question. |
| 22 | | MR. SCHAEFER:  I don't have any problem with |
| 23 | | it.  I just thought I would mention it. |

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        MR. WESOKY:  Thanks.  I appreciate that.

2    Q    So MR. SCHAEFER, I assume that you've not seen

3         that appendix, if we can, called Knowledge Panel

4         Calibration?

5    A    I have not.

6    Q    So then it's, you didn't read that or consider

7         that when you reviewed the survey results and gave

8         your opinion, correct?

9    A    Correct.

10   Q    Let me ask you, do you think it would be important

11        to review these documents and learn about

12        Knowledge Networks and their calibration function,

13        if that's the correct word, with respect to the

14        results of the survey?

15   A    I've known Knowledge Networks --

16   Q    Simple yes or no question.

17        MR. SCHAEFER:  No.  He can answer the

18        question.

19        MR. WESOKY:  No.  I can ask the question.  He

20        can answer it.  If you want him to elaborate on

21        it, then you can examine him.

22        MR. SCHAEFER:  No --

23   Q    The question is, do you think, I'm sorry.  Would

NORTH COUNTRY COURT REPORTERS
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel  (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    Q    Do you think in your opinion that with all those

2         advantages that the behavior change attributed to

3         the loss of privacy by the survey is overstated

4         based on these other advantages to consumers that

5         the internet has?

6         MR. SCHAEFER:  Objection to the form.  Go

7         ahead.

8    A    No.  I don't.  I don't think it's overstated.

9    Q    So you think the concern of loss of privacy will

10        drive a large number of consumers away from using

11        the internet to make purchases?

12        MR. SCHAEFER:  Objection to the form.

13    A    Well, there are many ways to purchase over the

14        internet and so I think that the loss of privacy

15        will affect those retailers who are associated

16        with that.

17    Q    Associated with the Colorado --

18    A    The loss of privacy.

19    Q    With the Colorado law, you mean?

20    A    Colorado law.

21    Q    Let's take a look at the survey for a minute.

22        Okay?

23        EXHIBIT 21 MARKED FOR IDENTIFICATION

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1    necessarily an open-ended question.  I think it's

2    more understanding respondents and how they may be

3    thinking as they respond to a survey and phrasing

4    questions that give you the clearest understanding

5    of that.

6    Q   From the survey, we can't tell how important the

7        consumers' belief, consumers' negative reaction,

8        let me put it that way, to the reporting of their

9        name, address and purchases to the State is in

10       their hierarchy of concerns about internet

11       purchases, do we?

12           MR. SCHAEFER:  Objection to form.

13   A   Well, we know that, we know two things and we know

14       that they consider the Act to have negative

15       effects on their privacy and we also know that

16       they would subsequently be less likely to purchase

17       from retailers, and from that you can draw the

18       conclusion of the relationship between the privacy

19       and the ultimate, and its importance in their

20       decisions to purchase from a retailer outside the

21       state.

22   Q   But we don't know where that importance is on

23       their scale, if you will, of concerns about the

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

```
 1              MR. SCHAEFER:  Objection to the form.

 2    A    There's a whole host of concerns that consumers

 3         have with privacy and certainly one would be how,

 4         what, how information could be used, whether it's

 5         family members or other personal relationships

 6         that might result in unwanted outcomes.

 7    Q    Now, did you see a copy of any Colorado statute

 8         that deals with the confidentiality and privacy of

 9         information given to the Colorado Department of

10         Revenue?

11    A    Could you be more specific?

12    Q    Sure.  Did you see any Colorado statute other than

13         the law in question in this case concerning the

14         reporting by retailers to the Department of

15         Revenue and to their customers?

16    A    I'm not sure.

17    Q    Do you remember seeing any Colorado law which

18         dealt with the obligation of the Department of

19         Revenue to keep material and information that they

20         received confidential and not to disperse it to

21         anybody?

22    A    I'm not, again, I'm not sure.

23    Q    I'm correct, am I not, in stating that consumer
```

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com

1        behavior is driven by many factors?

2    A   Correct.

3    Q   Price is one certainly?

4    A   Correct.

5    Q   Product is another?

6    A   Correct.

7    Q   A brand is certainly another?

8    A   Correct.

9    Q   Quality of the product is certainly another?

10   A   Correct.

11   Q   Convenience is certainly another?

12   A   Correct.

13   Q   Past experience with a merchant, be it a web site

14       or a catalog, is another?

15   A   Correct.

16   Q   And certainly Internet shopping is influenced by

17       its ability to save time for a consumer?

18   A   Certainly one of the benefits of internet shopping

19       is saving time.

20   Q   And you certainly you have an ability to research

21       and compare products and prices?

22   A   Internet, that's one of the advantages of the

23       internet is you can compare prices more easily.

*NORTH COUNTRY COURT REPORTERS*
40 South Main Street
West Lebanon, New Hampshire  03784
(603)298-2987 tel   (603)218-6633 fax  (603)443-1157 cell
cjfoster71@aol.com