IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01546-REB-CBS

The Direct Marketing Association,

    Plaintiff,

v.

Roxy Huber, in her capacity as Executive Director, Colorado Department of Revenue,

    Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES F. CURTIS BARRY, KEVIN LANE KELLER, AND THOMAS ADLER**

Defendant, Roxy Huber in her capacity as Executive Director, Colorado Department of Revenue (the "Department"), submits the following reply in support of her motion to exclude all testimony whether by declaration, deposition excerpt, or live testimony of Plaintiff's expert witnesses F. Curtis Barry, Kevin Lane Keller, and Thomas Adler pursuant to Federal Rule of Evidence 702 ("702 Motion"), filed December 20, 2010, (Dkt #71).

**I.  THE EXPERT OPINIONS OF F. CURTIS BARRY DO NOT MEET BASIC RELIABILITY STANDARDS UNDER RULE 702.**

As outlined in Defendant's 702 Motion, the opinions of Mr. Barry are not reliable because they are not based on sufficient facts or data. Plaintiff does not contest that Mr. Barry did not consult any published materials or perform detailed calculations in determining the amount of costs that DMA members will allegedly incur in complying

1

with the Act. Rather, Plaintiff's Response admits, for example, that Mr. Barry offered opinions as to the rate of costs "without needing to look them up." Pl. Resp, p.7.

The only authority on which Plaintiff relies is *Kumho Tire*, which considered the admissibility of technical expert testimony, including testimony based on an expert's experience. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The Court held that although experience-based testimony may be admissible, trial courts must determine "whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 149 (internal citations omitted). The Court ultimately upheld the determination of the district court that the testimony was not reliable because the party offering the expert failed to demonstrate that other experts in the industry followed the same methodology and the record did not include any published articles or papers validating the experts' approach. *Id.* at 157. As the Court pointed out, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* (internal citations omitted).

Plaintiff's Response asserts that Defendant's expert on the issue of compliance costs, Mr. Dieter Gable, followed a comparable methodology. This is not accurate. Mr. Gable's cost calculations were based on a number of verifiable sources, including U.S. Department of Labor, Bureau of Labor Statistics, published industry salary guides, published research regarding the top 500 internet retailers, and other published research. Exh. K, Dieter Gable Report and exhibits to same, pp.3-5. Mr. Gable also performed detailed cost calculations. *Id.* at pp.17-20.

2

In its Response, Plaintiff further continues to misconstrue the opinions of Mr. Gable, contending that Mr. Gable concluded that retailers will each face several thousand dollars in compliance costs. Pl. Resp., p.3. This is a gross mischaracterization of Mr. Gable's opinions. Mr. Gable's primary opinion is that of the relatively small number to retailers subject to the Act, the majority would not incur any significant costs to comply with the Act. Exh. K, Gable Report, pp. 5-10. Large retailers will not incur any measurable costs given their economies of scale, and smaller retailers will be able to rely on their outside vendors to provide compliance with the Act. *Id.* at pp.8-10. Mr. Gable's estimated costs apply only to "the worst-case scenario" – the smallest affected retailers. *Id.* at pp.11, 17-20.

Plaintiff's emphasis on Mr. Gable's opinions is a diversion, however, from the primary issue at hand – the lack of reliable methodology employed by Mr. Barry. Plaintiff's Response is notable in that it does not address the numerous specific instances pointed out in Defendant's 702 Motion where Mr. Barry ballparked figures "in his head," rather than relying on specific data. Courts have routinely held that expert opinions must be based on more than general experience. *See, e.g., Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 2004 WL 1534786, at *4 (D.Del. 2004) (excluding expert testimony when the expert's estimate of unjust enrichment was "based solely on his personal knowledge and experience rather than any methodology, analysis, or factual support.").

Given Mr. Barry's failure to rigorously assess the alleged costs at issue with reference to any specific data, this Court should refuse to admit his opinions.

## II.   DR. ADLER'S SURVEY METHODOLOGY WAS FLAWED, YIELDING UNRELIABLE DATA UPON WHICH NO RELIABLE OPINION, INCLUDING THAT OF PROFESSOR KELLER, COULD BE BASED.

Plaintiff argues that the survey met the seven requirements for admissibility articulated in *Hodgdon Power v. Alliant Techsystems, Inc.*, 512 F. Supp. 2d 1178, 1181 (D. Kan. 2007).[1] The survey, however, did not comply with three of those requirements.

### A. The Survey Questions Were Not Framed in a Clear, Precise and Non-leading Manner.

First, Plaintiff's survey, and thus the opinions of Dr. Adler and Professor Keller, fails to satisfy the third *Hodgdon Power* factor – that the questions were framed in a clear, precise, and non-leading manner.  Question 18 contained false information, which likely led to survey respondents' misunderstanding and led them to the answer Plaintiff sought.  It contained the suggestion that the Department would have information about the products a consumer purchased.  It asked if the respondent minded the State knowing the kinds of products the respondent purchases.  Because retailers are prohibited from supplying specific product information to the Department, that question was clearly misleading and designed to lead a respondent to the obvious answer, as few people want a government to know the details of their spending habits.  As explained in Dr. Lichtenstein's report, the fact that the survey otherwise accurately described the Law does not cure the defect in this question.  Exh. G, Lichtenstein Decl. and Report, pp.17-18.

---

[1] *See also Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir 1978) (discussing circumstantial guarantees of trustworthiness of surveys if they are conducted in accordance with generally  accepted survey principles and listing the factors that must be examined when determining if a survey meets those generally accepted principles, citing The Judicial Conference Study Group, Handbook of Recommended Procedures for the Trial of  Protracted Litigation, 25 F.R.D. 351, 429 (1960),containing factors similar to those articulated in *Hodgdon Power*).

### B. Sound Survey Procedures Were Not Used.

Plaintiff's expert testimony is also flawed because their survey did not meet the fourth *Hodgdon Power* factor – that sound interview/survey procedures were followed. The answers available to Respondents did not include a "don't know" or "no opinion" option, which is a classic alternative in consumer surveys Id, pp.24-27).   Additionally, as pointed out in Defendant's Motion, the survey did not provide sufficient contextual information with its questions.  *Id.* at pp.23-24. [2]

The survey questions themselves also suggested a response by emphasizing and repeating the mantra of privacy and privacy concerns creating a "reactivity bias," thus putting something -- here a concern about privacy -- in the respondents' minds and predisposing them to consider and react to it.  *Id.* at pp.21-22.

Moreover, the survey was not designed to address causality because of the confound of tax avoidance and the corollary increase in price caused thereby, which Dr. Adler recognized.  Exh. F, Adler Dep. 137:15-23; Exh. E, Adler Dep. Exh. 92, p.4.  This confound was not covaried out of the results, contrary to sound survey procedures.[3] Plaintiff's Response does not address these serious shortcomings.

### C. Objectivity of the Process Was Not Ensured.

Finally, the work of Plaintiff's experts does not satisfy the seventh *Hodgdon* factor - ensuring the objectivity of the process.  A most important element in the process' objectivity is the independence of the survey and its designer from the attorneys

---

[2] This fault can also be considered as a failure to frame the questions in a clear and precise manner.
[3] This problem can also be expressed as a failure to analyze the gathered data in accordance with accepted statistical principles, another of the *Hodgdon* factors

5

involved in the litigation. *Pittsburgh Press*, 579 F. 2d at 758. For example, courts have recognized that sample designers should be unaware of the purposes of the survey. *Id.*

Here, Plaintiff's attorneys were intimately involved in the survey process as detailed in Defendant's 702 Motion. *See* 702 Motion, pp.10-11 and n.9. Numerous emails and phone conversations were exchanged between Dr. Adler and counsel discussing the substance of the survey questions, an exchange which should have been avoided. *United States v. S. Indiana Gas & Electric Co.*, 258 F. Supp. 884, 894 (S.D. Ind. 2003) (finding such multiple exchanges improper). Counsel was involved in designing the questions asked, which also is improper. *Boehringer Ingelheim G.m.b.H. v. Pharmadyne Laboratories*, 532 F. Supp. 1040, 1058 (D.N.J. 1980) (survey excluded in part because of counsel's involvement in designing questions).

Also, Dr. Adler was well informed of the litigation as demonstrated by his notes of conversations with counsel. Exh. E, Adler Dep. Exh. 92, p.3. And Professor Keller, who opined based on the survey, was made aware of the litigation and Plaintiff's position and goals for the survey in conversation with counsel, (Exh. J, Keller Dep. Exh. 17, p. 7; Exh. L, Keller Dep. 67:4 - 8, 73:2 - 80:8) and by reading the complaint. Ex. M, Keller Dep. 81:9 - 83:17. This "makes the consultants an extension of the legal team rather than outside objective experts, . . . ." *S. Indiana Gas & Electric*, 258 F. Supp at 894, thus running afoul of sound survey procedures and not ensuring the objectivity of the process.

Plaintiff only addresses the problems caused by counsel's involvement with the survey in a footnote in its Response, calling Defendant's concern "nonsense." As

6

demonstrated above, however, courts look unfavorably when an attorney is closely and consistently involved in designing a survey and advising the consultants concerning the litigation. While a business or government agency may certainly be closely involved in a survey, as Dr. Adler claims is routine (Pltf. Response, n.5), as shown above, the rule is different when a survey is used for evidence in a litigation context.

Plaintiff's argument is simply that because Dr. Adler testified that the questions were proper and clearly and precisely framed in a non-leading manner, that sound survey procedures were followed, and that the data were analyzed in accordance with accepted statistical principles, then such is so. However, the analysis of Dr. Lichtenstein as articulated in the Defendant's 702 Motion shows persuasively otherwise.

WHEREFORE, for the foregoing reasons the Court should exclude the testimony of Plaintiff's expert witnesses F. Curtis Barry, Thomas Adler and Kevin Lane Keller.

Respectfully submitted this 24th day of January, 2011.

JOHN W. SUTHERS
Attorney General

*s/ Stephanie Lindquist Scoville*
STEPHANIE LINDQUIST SCOVILLE*
Senior Assistant Attorney General
Civil Litigation and Employment Law Section
Attorneys for State Defendants
1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  303.866.5241
FAX:  303.866.5443
E-Mail:  stephanie.scoville@state.co.us

MELANIE J. SNYDER, 35835*
Assistant Attorney General
JACK M. WESOKY, 6001*
Senior Assistant Attorney General
Business & Licensing Section
1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5273 (Snyder)
Telephone:  (303) 866-5512 (Wesoky)
FAX:  (303) 866-5395
E-Mail:  melanie.snyder@state.co.us
E-Mail:  jack.wesoky@state.co.us

*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2011, I electronically filed the foregoing **DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES F. CURTIS BARRY, KEVIN LANE KELLER, AND THOMAS ADLER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-addresses:

gissacson@brannlaw.com
mschafer@brannlaw.com

*Attorney for Plaintiff*

        *s/ Melanie J. Snyder*