**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-01546-REB-CBS

The Direct Marketing Association,

        Plaintiff,

        v.

Roxy Huber, in her capacity as Executive
    Director, Colorado Department of Revenue,

        Defendant.

---

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS COUNTS I AND II
ALLEGING VIOLATIONS OF THE COMMERCE CLAUSE**

---

The Plaintiff, the Direct Marketing Association ("DMA"), submits this reply to the

**Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment**

**as to Counts I and II Alleging Violations of the Commerce Clause [# 101]**, filed on

May 27, 2011 ("Def. SJ Opp.").

The core of the Defendant's argument, expressed repeatedly in different guises

throughout her briefs, is that Colorado can force out-of-state retailers to assume a

burdensome set of notice and reporting obligations – not required of in-state merchants

– as an alternative to the tax collection obligations that the State is constitutionally

barred from imposing on such remote sellers.  This theory of "compensating duties"

finds no support in any reported case law and would undermine the foundational

Commerce Clause principle of non-discrimination.  A state legislature is not free to construct a "different in kind but equal in burden" regulatory or tax system when it comes to the treatment of interstate commerce.

Indeed, the Defendant's opposition reinforces the DMA's case by:

- admitting facts that show that Colo. Rev. Stat. Ann. § 39-21-112(3.5) (c)&(d) ("HB 10-1193" or "the Act") and 1 Colo. Code Regs. § 201-1: 39-21-112.3.5 (2010) ("the Regulations") discriminate against out-of-state retailers who do not collect Colorado sales and use tax;

- failing to identify a single case in which a state law, like the Act, that imposes demonstrably differential obligations on out-of-state companies that are not imposed on in-state companies, was held to be non-discriminatory;

- failing to show that the State has no reasonable, non-discriminatory alternatives to the notice and reporting requirements imposed on affected out-of-state retailers;

- misinterpreting the significance of *Quill Corp v. North Dakota* by failing to recognize that  the burdens imposed by the Act are "inextricably related in kind and purpose to the burdens condemned in *Quill*;"[1]  and

- offering no justification for the State's attempt to compel out-of-state retailers that do not collect Colorado use tax to surrender their constitutional rights by imposing upon them onerous notice and reporting obligations as a substitute for the use tax collection obligation they cannot be subjected to under *Quill.*

## UNDISPUTED FACTS

### Facts Admitted by the Defendant

In her opposition, the Defendant does not contest the majority of the undisputed facts set forth in the DMA's motion for summary judgment [at 4-11] ("Pl. SOF").[2]   As a result, the Defendant has admitted facts which establish that the Act and Regulations discriminate against interstate commerce both on their face and in their effect.

---

[1]  **Order Granting Preliminary Injunction [# 79]** ("January 26 Order"), at 10.
[2]  The Defendant does not dispute Pl. SOF ¶¶ 1-16, 18-21, 23-25, 28, 30, 34-35.

*First*, the Defendant does not dispute that the legislative history of the Act, and the Department's statement of purpose for the Regulations, show that the law is expressly intended to impose new notice and reporting obligations on out-of-state retailers that do not collect Colorado sales and use tax. [Pl. SOF ¶¶ 18-21.]

*Second,* the Defendant concedes that the Act would affect approximately 10,000 out-of-state retailers that do not collect Colorado use tax [*Id.* ¶ 25], while there are but few Colorado retailers who fail to comply with their statutory obligation to collect sales tax. [*Id.* ¶ 35.] Thus, the undisputed facts also show that, in practical effect, the Act discriminates against out-of-state retailers that do not collect Colorado use tax.

*Third*, the Defendant does not dispute that there are numerous non-discriminatory alternatives (*e.g.*, use tax reporting through the personal income tax return, increased audits of businesses, consumer awareness campaigns) that the State could adopt to increase self-reporting of use tax by Colorado purchasers. [*See* Pl. SOF ¶¶ 16, 29 (discussed below) and 34.]

<u>Facts As To Which There Is No Genuine Dispute</u>

Even with regard to the handful of facts to which the Defendant responds, she presents no genuine dispute as to the following:

<u>*Pl. SOF ¶¶ 22, 26*</u>: The Defendant admits, as estimated by her expert, Dieter Gable, that affected retailers will incur, on average, $2,500 to $6,000 in first-year costs, and $600 to $1,000 each year thereafter, per company, to comply with the Act and Regulations. [*See* Def. SJ Opp. at 4.] Based on Gable's undisputed estimate that 10,000 (or more) out-of-state retailers would be subject to the law, the aggregate

financial burden imposed on out-of-state retailers by the Act and Regulations would be $25–60 million in the first year alone, and up to $10 million annually thereafter.

*Pl. SOF ¶ 29*:  The Defendant admits that Colorado does not include a line for reporting state use tax on the Colorado individual income tax return, and presents no evidence to refute the availability of the other alternative, non-discriminatory measures identified by the DMA.  The fact that, more than 35 years ago, the Department mailed use tax returns to residents, is neither responsive to the facts asserted by the DMA, nor material to whether HB 10-1193 violates the Commerce Clause.

*Pl. SOF ¶ 31*:  The Defendant offers no survey evidence of her own, or any other facts, to refute the DMA's survey results, which are plainly admissible under applicable Tenth Circuit law.  [*See* Plaintiff's SJ Opp. at 22 n. 8 (citing cases).]

*Pl. SOF ¶ 32, 33*:  A review of the Oklahoma and South Dakota transactional notice laws shows that each imposes requirements on retailers that sell via catalog and the Internet that differ from Colorado's Transactional Notice provisions.[3]  If every state and locality with the authority to impose a sales or use tax could similarly adopt its own set of inconsistent notice and reporting obligations, the burden on interstate commerce would be enormous.  [*See National Bellas Hess v. Department of Revenue*, 386 U.S. 753, 759-60 (1967) (noting danger of inconsistent regulation).]

---

[3] For example, the South Dakota law has five required elements for the content of the notice and the Oklahoma law has six; Colorado requires only three. Oklahoma and South Dakota each require a reference to the state, by name, which is not required under the Colorado Regulations, and the Oklahoma notice must include reference to specific Oklahoma tax forms. Both the South Dakota law and Oklahoma laws require a retailer that sells via catalog to include the notice both on its catalog order form and on an invoice to the customer; the Colorado regulations do not require such specific placement. Compare 1 COLO. CODE REGS. § 201-1: 39-21-112.3.5(2)(a)-(c) with OKLA. ADMIN. CODE § 710:65-21-8(b)(1)-(3) and S.D. SB 146 §§ 2-3.

<u>Plaintiff's Response to Defendant's Additional Facts[4]</u>

2.      The DMA admits that on August 18, 2010, Legislative Council Staff issued a new fiscal note concerning the Act.  The DMA denies that revenue associated with the Act will increase over time because that contention has no support in the record.

13.     The assertion set forth in paragraph 13 regarding the content of the record is argument, not a statement of fact.   It is undisputed, however, that complying with the law would cost each affected retailer, on average, thousands of dollars.

14.     The assertion set forth in paragraph 14 regarding the content of the record is argument, not a statement of fact.  Moreover, the Court entered an injunction against enforcement of the Act before out-of-state retailers were required to turn-over sensitive customer information to the Department and thereby alienate Colorado consumers.

## **ARGUMENT**

**I.      THE DEFENDANT'S CONTENTION THAT THE ACT AND REGUALTIONS DO NOT DISCRIMINATE AGAINST OUT-OF-STATE RETAILERS IS WITHOUT MERIT AND CONTRADICTED BY THE UNDISPUTED FACTS.**

The Defendant argues that the Act is not discriminatory for purposes of the Commerce Clause because it lacks a "protectionist" motive.  [Def. SJ Opp. at 3, 12.]  As the DMA demonstrated in its opposition to the Defendant's cross-motion for summary judgment, however, the argument that a state law violates the Commerce Clause only if it has a "protectionist" motive has been repeatedly rejected by the Courts. [*See* Pl. SJ Opp. at 13-14 (collecting cases).]

_____

[4] The Defendant's "additional facts" [Def. SJ Opp. at 6-8], are largely a repetition of statements made in support of her own motion for summary judgment.  The DMA responds to the Defendant's additional facts ¶¶  2, 13 and 14, herein, and respectfully refers the Court to the DMA's summary judgment opposition [at 3-9] for a response to ¶¶ 1 and 3–12.

It is moreover clear, both from the legislative history of the Act and the plain terms of the law, that the Act and Regulations are expressly targeted at out-of-state retailers.  The Act and Regulations impose notice and reporting obligations solely upon retailers that do not collect Colorado sales and use tax.  Because every in-state Colorado retailer is required, by law, to collect Colorado sales tax, the Act, by definition, applies solely to out-of-state retailers, and not to in-state retailers.  This is the very essence of discrimination against interstate commerce under the Commerce Clause. [*E.g., Oregon Waste Sys., Inc. v. Dept. of Envtl. Quality*, 511 U.S. 93, 99 (1994).]

The Defendant's attempt, for purposes of litigation, to re-characterize the Act as a law which permissibly regulates on the basis of a retailer's status as a "collecting" or "non-collecting" retailer, rather than its location, fails.  [*See* Def. SJ Opp. at 12, 13.] Indeed, the Defendant admits that whether a retailer is a "non-collecting retailer" for purposes of the Act is expressly "a function of" the Supreme Court's decisions in *Quill* and *Bellas Hess.*  [*Id.* at 13.]  Under *Quill* and *Bellas Hess*, only a retailer with a physical presence in Colorado may be required to collect sales tax, and only a retailer without a physical presence in Colorado is not subject to the obligation to collect use tax. Therefore, a retailer's status as a "non-collecting" retailer for purposes of the Act is synonymous with its status as an out-of-state retailer.

The Defendant's further argument that the Act does not have a discriminatory *effect* on out-of-state retailers is equally unavailing.  The Defendant incorrectly asserts that the DMA applies "only the first half of the test," for discrimination under the Commerce Clause, *i.e.,* differential treatment, without showing that the Act and

Regulations actually impose such differential burdens on out-of-state retailers.  [Def. SJ Opp. at 14.]  As the DMA has repeatedly demonstrated, however, [*e.g.*, Pl. SJ Motion at 16-19], and as the Court found in entering a preliminary injunction against the Act [*see* January 26 Order at 7], by operation of Colorado law, the notice and reporting requirements of the Act and Regulations apply solely to out-of-state retailers, and not to in-state retailers. The law thus discriminates not only on its face, but also in its effect.

In fact, the Defendant cites *no case* in which such patently differential burdens imposed solely on out-of-state companies have been found to be non-discriminatory. The Defendant relies heavily upon the Supreme Court's decision in *Exxon Corp. v. Maryland*, 437 U.S. 117 (1978), as well as the Fifth Circuit's decision in *Ford Motor Co. v. Texas Dept. of Transportation*, 264 F.3d 493 (5th Cir. 2001), and the Tenth Circuit's decision in *Kleinsmith v. Shurtleff*, 571 F.2d 1033 (10th Cir. 2009), but none of these cases even apply.  In all three cases, the Court found that the statute in question – unlike the Colorado Act and Regulations – regulated even-handedly on its face.  [*See Exxon*, 437 U.S. at 125; *Ford Motor*, 264 F.3d at 502; *Kleinsmith*, 571 F.3d at 1040.][5]

---

[5] Moreover, none of these cases supports the Defendant's claim that the Act does not discriminate in its effect.  In *Exxon*, while upholding the Maryland law in question, the Supreme Court noted that the Commerce Clause prohibits laws which place added costs upon out-of-state interests or distinguish between in-state and out-of-state companies in the retail market. [437 U.S. at 126 (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 350, 354 (1977)).]  The Colorado Act does precisely that, by imposing added burdens and costs solely upon out-of-state retailers.

In *Ford Motor Co.,* the Fifth Circuit held that, absent facial discrimination, it is necessary for the plaintiff to show that a state law treats similarly situated business differently based upon the level of their contact with the state.  [264 F.3d at 501-02.]  Under the Colorado Act, whether a retailer has a physical presence in Colorado, or instead is located exclusively outside the state, expressly determines whether the retailer is subject to the burdensome notice and reporting obligations of the law.

Finally, in *Kleinsmith*, the Court found that the plaintiff had offered no proof of a differential burden imposed by the Utah law in question on out-of-state attorneys. [571 F.3d at

Finally, the Commerce Clause does not, as the Defendant contends, require a comparative balancing of the "relative burdens" on in-state and out-of-state retailers in order to determine whether the law is discriminatory.  [*See* Def. SJ Opp. at 15.]  Indeed, such a "balancing" approach would require the Court to engage in precisely the kind of complex economic analysis that the Supreme Court has cautioned against.  [*E.g.*, *General Motors Corp. v. Tracy*, 519 U.S. 278, 3008-09 (1997) (courts should refrain from engaging in elaborate analysis of real-world economic effects of a law).]  In this case, such an analysis would require consideration of the fact that in-state retailers are handsomely compensated by the State for the administrative burdens of collecting state sales tax, through the vendor allowance provided under HB 11-223.  [Pl. SOF ¶ 37.][6] No similar compensation, however, is provided to out-of-state retailers to compensate them for the burdens imposed by HB 10-1193. [*Id.* ¶ 38.]

## II.   THE COMMERCE CLAUSE PROHIBITS IMPOSING THE ACT'S NOTICE AND REPORTING REQUIREMENTS ON RETAILERS WITH NO PHYSICAL PRESENCE  IN THE STATE.

The Defendant's hyperbolic claim that the DMA seeks a "regulatory-free zone" for retailers with no physical presence in Colorado [Def. SJ Opp. at 17] is simply wrong, and derives from her continued misinterpretation of the significance of *Quill* in this case.

1042.]  The DMA, by contrast, has demonstrated how the Colorado Act's requirements apply solely to out-of-state companies.  Moreover, no detailed analysis of the market effects of a law is required where a challenged law imposes demonstrably different obligations on out-of-state companies than it imposes on in-state companies.  [*See e.g., Hunt*, 432 U.S. at 350-51 (law which increases cost of doing business for out-of-state companies, while leaving in-state companies unaffected, is the "most obvious" form of discrimination).]

[6]  Twenty-five states pay such vendor allowances to retailers for collecting state sales tax.  Colorado's vendor allowance of 2.22% is the most generous in the nation, because of the high rate and absence of a cap.  [*Cf.* 35 ILCS § 120/3 (Illinois) (1.75% of tax due); N.Y. Tax Law § 1137(f)(2) (5% of tax due, but capped at $200 quarterly); Ohio Rev. Code § 5739.12(B) (0.75% of tax due); 72 P.S. § 7227 (Pennsylvania) (1% of tax due); Texas Tax Code § 151.423 (base rate of 0.5% of tax due).]

Neither the Supreme Court's reference to *stare decisis* in *Quill*, nor the concern about retroactive application of state use tax laws to retailers, was the driving rationale for the Court's decision.  Rather, the Court in *Quill* explained, at length, how the bright line rule of *Bellas Hess* is consistent with, and grounded in, the principles that underlie the "substantial nexus" requirement of the Commerce Clause.  [504 U.S. at  311-14 ("bright line" rule of physical presence "furthers the ends of the dormant Commerce Clause.")]

The express parallel between the use tax obligations challenged in *Quill* and the notice and reporting obligations imposed on the same group of remote sellers by the Act demonstrates why HB10-1193 violates the Commerce Clause.   The Defendant in her opposition fails to shows that there is any meaningful distinction between the nature of the burdens condemned in *Quill* and those imposed on out-of-state retailers under the Act and Regulations.  Instead, she relies on cases rejecting the application of *Quill's* bright line rule to utterly dissimilar obligations, such as corporate income tax liability and basic licensure requirements promoting consumer protection. [Def. SJ Opp. at 18-19.][7]

Further supporting the decision in *Quill* was the Supreme Court's recognition that the Commerce Clause assigns to Congress the task of balancing the interests of interstate commerce against that of state regulation over such commerce.  Unilateral

---

[7] The fact that out-of-state retailers can avoid the notice and reporting obligations of the Act only by surrendering the rights guaranteed them under *Quill* further dooms the Act.  The Defendant's unsuccessful attempt to justify this impermissible coercion as a "choice" offered to out-of-state retailers is unavailing, and her effort to distinguish the Supreme Court's condemnation of similar impermissible trade-offs unconvincing.  In this case, just as in *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888 (1988), the alternative regulatory burdens (*i.e.,* the use tax obligation prohibited under *Quill*, and the discriminatory notice and reporting obligations of the Act), between which affected retailers may "choose," each independently violates the Commerce Clause.

action by state legislatures involves no such balancing of interests and, inevitably, favors in-state political and commercial interests through differential burdens and inconsistent regulation.  In light of the more the 7,500 taxing jurisdictions in the United States [*see* Plaintiff's SJ Opp. at 25 n. 10], "the better part of both wisdom and valor is to respect the judgment of [Congress]" with regard to "whether, when, and to what extent" a state (or locality) may impose on remote sellers regulatory obligations that are intended to promote increased reporting and collection of use taxes from consumers and businesses in the state.  [*See Quill*, 504 U.S. at 318-19.]

## CONCLUSION

The DMA respectfully requests that the Court grant the DMA's motion for summary judgment on Counts I and II of its Complaint, declare the Act and Regulations unconstitutional, and enter a permanent injunction against their enforcement.

Dated:  June 10, 2011

s/ George S. Isaacson
George S. Isaacson
Matthew P. Schaefer
BRANN & ISAACSON
184 Main Street, P. O. Box 3070
Lewiston, ME 04243−3070
Tel.: (207) 786−3566
Fax:  (207) 783-9325
E-mail: gisaacson@brannlaw.com
              mschaefer@brannlaw.com
*Attorneys for The Direct Marketing Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2011, I electronically filed the foregoing, Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment as to Counts I and II Alleging Violations of the Commerce Clause, using the CM/ECF system, which will send notification of such filing to counsel of record:

> Jack Wesoky
>   Senior Assistant Attorney General
>   Jack.Wesoky@state.co.us
> Stephanie Lindquist Scoville
>   Senior Assistant Attorney General
>   stephanie.scoville@state.co.us
> Melanie J. Snyder
>   Assistant Attorney General
>   melanie.snyder@state.co.us
>
> State of Colorado
> 1525 Sherman Street, 7th Floor
> Denver, CO 80203
>
> Attorneys for Defendant

> s/ George S. Isaacson
> George S. Isaacson