**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01546-REB-CBS

The Direct Marketing Association,

    Plaintiff,

v.

Roxy Huber, in her capacity as Executive Director,
Colorado Department of Revenue,

    Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT— COUNTS I AND II (COMMERCE CLAUSE)**

Defendant, Roxy Huber, Executive Director of the Colorado Department of Revenue, submits this Reply to Plaintiff, the Direct Marketing Association ("DMA")'s Response in Opposition to Defendant's Motion for Partial Summary Judgment— Counts I and II (Commerce Clause), filed May 27, 2011 [Dkt. #100] ("Resp.").

**REPLY IN SUPPORT OF DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

1., 2., 3., & 10-12.  These facts are all material to the balancing analysis under *Pike v. Bruce*, 397 U.S. 137, 142 (1970).

    1.  Each of the statements in Paragraph 1 is taken directly from the report of Dr. William Fox, an expert in economics and taxation.  Dr. Fox's conclusions are supported by the data cited in his report, and DMA has not challenged either his qualifications or methodology.  Statements in expert reports may be "considered at summary judgment because they can be 'presented in a form that would be admissible in evidence,' namely through the experts' testimony."  *Hubbell v. Carney Bros. Const.*, 2010 WL 5109984, at

*4 n.5 (D. Colo. Dec. 8, 2010) (unpub'd) (citing Fed.R.Civ.P. 56(c)(2)). In contrast, the study referenced by DMA is inadmissible hearsay, as well as an attempt to offer expert opinions by a witness not properly disclosed under Rule 26. As a result, the facts in Paragraph 1 remain undisputed.

 3. Defendant's citations to the Tax Gap Study are accurate and support each of the facts asserted. Defendant refers the Court to the highlighted portions of Exhibit 2.

 9. Defendant's affidavit (Exh. 4) demonstrates that a witness with personal knowledge searched 500 major internet retailers and found that 39 of them voluntarily collect and remit sales tax. Because the affidavit is based on personal knowledge by a competent affiant, and contains facts that would be admissible in evidence, it is not hearsay, and may be relied upon here. Fed.R.Civ.P. 56(c)(4). This fact is material to the Court's analysis on Count I.

 11. & 12. As outlined *supra*, expert opinions are competent, admissible evidence. DMA has not challenged Mr. Gable's qualifications or methodology.

## ARGUMENT

### I. THE LAW DOES NOT DISCRIMINATE AGAINST INTERSTATE COMMERCE.

DMA ignores the fundamental import of the dormant Commerce Clause, which is "driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Kleinsmith v. Shurtleff*, 751 F.3d 1033, 1039 (10th Cir. 2009).[1] Because DMA applies

---

[1] Contrary to DMA's contention, Defendant does not argue that a law cannot be discriminatory without a protectionist motive. Resp., p.13. The lack of such a motive merely provides additional support that the Law does not run afoul of the dormant Commerce Clause.

2

the wrong standard for discrimination and cannot prove the Law favors in-state retailers or puts out-of-state retailers at a competitive disadvantage, summary judgment on Count I in favor of Defendant is appropriate.

### A. DMA Relies on the Wrong Standard for Discrimination.

Focusing solely on the <u>differential</u> burden upon out-of-state retailers, DMA fails to meet its burden to establish that such retailers are put at a competitive <u>disadvantage</u> as a result of the Law. A discrimination claim requires a comparative showing that the challenged law favors in-state interests and competitively disadvantages out-of-state interests. *Or. Waste Sys., Inc. v. Dep't of Env. Quality of State of Or.*, 511 U.S. 93, 99 (1994) (discrimination means "differential treatment of in-state and out-of-state economic interests <u>that benefits the former and burdens the latter</u>."); *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 329 (1977) (Commerce Clause precludes discrimination creating a "<u>direct commercial advantage</u> to local business") (emphasis added)). The fact that state regulation falls primarily on interstate interests does not alone establish discrimination. *See Exxon Corp. v. Md.*, 437 U.S. 117, 125 (1978).

DMA's suggestion that Defendant is improperly "searching out competing burdens" in the sales and use tax code is wrong. Resp., p.18. The Supreme Court has consistently reviewed the impact of relevant laws upon competing in-state and out-of-state interests, rather than looking at the challenged law in isolation.[2] For example, in

---

[2] DMA's emphasis on the ultimate finding that the laws were discriminatory in *South Central Bell Telephone Company v. Alabama*, 526 U.S. 160 (1999) and *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 160 (1999) misses the point. Resp., pp.18-19. The analysis in both cases demonstrates the crucial comparative analysis a court must undertake to determine if a challenged law has a prohibited effect.

3

*State of Alaska v. Arctic Maid*, out-of-state freezer ships who caught fish in Alaska's waters challenged a freezer ship license tax on dormant Commerce Clause grounds. 366 U.S. 199, 204 (1961). Because the freezer ships took their catches south for canning, the Court determined Alaskan canners were their competitors. *Id*. Since the six percent tax on Alaskan canneries did not exceed the four percent tax on freezer ships, the Court found no discrimination in favor of the former and against the latter. *Id*.

DMA cites no authority to support its incomplete application of the discrimination standard; but rather, relies on two cases wherein the courts specifically compared the effects upon in-state and out-of-state interests and found a preference in favor of the former that competitively disadvantaged the latter. In *American Trucking Association v. Whitman*, the court found:

> By granting trucks doing business in New Jersey unlimited access to the New Jersey Network while prohibiting trucks serving solely out-of-state interests from accessing the New Jersey Network, the Regulations impose costs on the citizens and business of other states while exempting New Jersey's own citizens and businesses from those same costs.

437 F.3d 313, 321 (3rd Cir. 2006). Consistent with its refusal to apply the complete discrimination standard, DMA quotes only the last clause of the sentence and ignores the critical comparative analysis. Resp., p.14.

Similarly, DMA cites *Used Tire International, Inc. v. Diaz-Saldana*, involving a bond that fell solely upon sellers of imported used tires while sellers of locally-generated tires were not subject to any bond. 155 F.3d 1, 3 (1st Cir. 1998). The result was a tariff on goods, the "paradigmatic example" of a discriminatory law. *Id*. at 4. Again, DMA relies solely on language in the opinion referring to the limited impact of the law on out-

4

of-state interests and disregards the court's critical analysis of the law's protectionist effects. Resp., p.14. This incomplete approach is wrong as a matter of law.[3]

### B. DMA Cannot Prove the Law Favors In-State Retailers or Alters the Competitive Balance between In-State and Out-of-State Retailers.

As the party claiming discrimination, DMA "must show both how local economic actors are favored by the legislation, and how out-of-state actors are burdened." *Kleinsmith*, 571 F.3d at 1041. "Not every benefit or burden will suffice— only one that alters the competitive balance between in-state and out-of-state firms." *Id.*

DMA's repeated assertions that the Law is more onerous than the burdens associated with collecting the sales and use tax are without record support. DMA has the burden "to put on evidence of a discriminatory effect on commerce that is significantly probative, not merely colorable." *Kleinsmith*, 571 F.3d at 1040 (internal quotations omitted). Referencing recent legislation allowing some compensation to collecting retailers toward compliance costs is insufficient to establish disputed facts to demonstrate discrimination. Further, DMA mischaracterizes references to the compensatory tax doctrine. Resp., pp.19-24. Defendant's discussion of the compensatory tax doctrine highlights the sales and use context within which the Law operates. This context provides the basis for proper discrimination analysis— namely, a comparison of the burdens on in-state and out-of-state interests to see if the former obtain an advantage over the latter. Responding to a defense not raised, DMA

---

[3] Indeed, DMA emphasizes that it is through this incomplete approach that its discrimination claim succeeds. Resp., p.18 ("the Act and Regulations are not, <u>considered independently of other provisions of Colorado law</u>, constitutionally valid" (emphasis added)).

improperly attempts to shift its heavy burden to overcome the presumption of constitutionality afforded state laws. *Hopkins v. Okla. Pub. Employees Retirement Sys.*, 150 F.3d 1155, 1160 (10th Cir. 1998). There is simply no record support and no disputed issues of fact precluding summary judgment on Count I in Defendant's favor.

## II.  THE LAW DOES NOT UNDULY BURDEN INTERSTATE COMMERCE.

DMA cannot meet its heavy burden to establish the Law unduly burdens interstate commerce. The physical presence standard for sales and use tax collection established by *Quill Corporation v. North Dakota*, 504 U.S. 298 (1992) and *National Bellas Hess, Inc. v. Department of Revenue of Illinois.*, 386 U.S. 753 (1967) does not create a regulatory-free zone shielding DMA members from modest notice and reporting requirements. The Law's incidental effects do not exceed the State's strong interests. *Pike*, 397 U.S. at 142. Summary judgment for Defendant on Count II is appropriate.

### A.  *Quill's* Nexus Standard Does Not Extend beyond Sales and Use Tax Collection to the Law's Notice and Reporting Requirements.

Contrary to DMA's contention, Defendant does not criticize or dispute the holding in *Quill*.[4] Because DMA seeks an extension of *Quill's* discrete safe harbor, an examination of its precise holding and policy considerations is necessary. The nexus standard applicable to sales and use tax collection obligations[5] does not preclude Colorado's modest notice and reporting requirements, which the parties agree do not include tax collection obligations. Resp., p.29. *Quill's* limited holding flowed from a

---

[4] Further, it is not Defendant's argument but rather the majority opinion, which suggested that had the issue arisen as a matter of first impression "contemporary Commerce Clause jurisprudence might not dictate the same result." *Quill,* 504 U.S. at 311. *See* Resp., p.29.

[5] *See, e.g., id.* at 315 ("[vendors lacking physical presence] are free from state-imposed duties to collect sales and use taxes.").

concern with the retroactive tax liability that might result if *Bellas Hess* was overruled. *Quill*, 504 U.S. at 318 n.10.  The Law implicates no such concerns. [6]

DMA's references to the alleged danger of inconsistent state laws and the "[p]otentially daunting complexities" that might arise are speculative and exaggerated. Resp., pp.25-6, 28.  There is no evidence that state reporting requirements will conflict or be adopted by "thousands" of local taxing jurisdictions.  Rather, the undisputed facts suggest requirements will be set at the state level and will be nearly identical.  Further, the burdens DMA cites relate to <u>tax collection</u> and are irrelevant to its challenge to the Law.  Resp., p.27 (describing the complexities of determining varying tax rates, tax exemptions, and tax treatment of shipping and handling charges).  Finally, challenges based on "national uniformity" are not independent claims but are considered under the *Pike* analysis.[7]  *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1307 (10th Cir. 2008)

### B.    The Modest Burdens of the Law Do Not Exceed Colorado's Interests.

DMA has not met its burden to demonstrate that the incidental burdens associated with the Law clearly exceed the State's strong interests.  *Pike*, 397 U.S. at

---

[6] Colorado's reporting requirements are similar to the record-keeping and reporting requirements long-imposed on non-nexus out-of-state members of consolidated or combined entities for income tax.  Many states, including Colorado, require that <u>all</u> members of a combined group be included in the income tax return for the group.  *See, e.g.,* Colo. Rev. Stat. § 39-22-303 (2010); 1 Colo. Code Regs. § 201-1: 39-22-303.11(a) and (c).  Although no tax is imposed on these non-nexus corporate members, they must maintain appropriate records and be included in the filing of the group return.  *See, e.g., Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159 (1983) (discussing constitutionality of state tax apportionment formulas).  While these burdens carry some cost, it is a well-accepted practice that states may impose those burdens despite the lack of nexus.

[7] Further, DMA's reference to Colorado as the sole state not participating in the Streamlined Sales and Use Tax Project ("SSUTP") and in the minority of states not adopting the Streamlined Sales and Use Tax Agreement ("SSUTA") is misleading.  Resp., p. 26 n.11 (citing the state map located at: http://www.streamlinedsalestax.org/index.php?page=About-Us).  While the five most highly populated states (California, Texas, New York, Florida, and Illinois) are participating as <u>advisory</u> states in the SSUTP, like Colorado, they have not adopted the SSUTA measures.  *Id.*

7

142.  The Law promotes Colorado's strong interests in recovering tax revenue due; fairly distributing the cost of government through such taxes; and promoting respect for and compliance with the tax laws.  DMA's experts' opinions on the alleged costs of compliance and lost business as a result of the Law carry no probative weight in summary judgment proceedings when all three experts utilized flawed methodology. *See Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)*; see also* Def.'s Am. Mot. To Exclude Test. of Pl.'s Expert Witnesses F. Curtis Barry, Thomas Adler, and Kevin Lane Keller [Dkt. #71].  Although the smallest affected retailers may incur some one-time costs of up to $6,000.00, such nominal costs do not constitute an undue burden.  *See Aldens, Inc. v. Ryan,* 571 F.2d 1159, 1161 (10th Cir. 1978) (annual compliance costs exceeding $160,000 and burden of sorting credit transactions "in the era of computers" not unreasonable compared to local interest in consumer protection).

        **C.**       **The Law Does Not Coerce DMA Members to Collect Use Tax.**

Because the Law does not discriminate or create an undue burden, there is no improper coercion as alleged by DMA. Resp., pp.15-16.  Rather, non-collecting retailers are free to individually assess whether to comply only with the notice and reporting requirements or to collect and remit sales and use tax.  DMA's suggestion that the Law is "meant to substitute for" the collection duties precluded by *Quill* does not mean it is unconstitutional.  Resp., p.3.  Out-of-state retailers are not forced to choose between two unlawful burdens as a result of the Law, and thus, DMA's citation to *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888 (1988) is unavailing.  Likewise, *McNeilus Truck and Manufacturing, Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 443 (6th Cir.

2000) does not support DMA's position. There, an out-of-state business was not given two choices, but only one: to purchase truck parts from in-state sources. *Id.* at 442. Laws promoting preferences for in-state interests at the expense of out-of-state interests are precisely the type of "economic Balkanization" the dormant Commerce Clause precludes. *Fulton Corp. v. Faulkner*, 516 U.S. 325, 333 n.3 (1996).[8] There is no evidence in the record, beyond inadmissible hearsay of an alleged statement by a Department employee, to support DMA's contention that the Law seeks to compel out-of-state retailers to collect sales and use tax by imposing more onerous burdens.

### III. THE LAW IS WELL WITHIN THE STATE'S AUTHORITY.

The parties agree Congress has the expertise and authority to adopt a national scheme. Resp., pp. 24-25. Since *Quill*, legislation has been proposed, but never acted upon. *See, e.g., Streamlined Sales and Use Tax Act*, S. 1736, H.R. 3184, 108th Cong. (2003); *Sales Tax Fairness and Simplification Act*, S. 2152, 109th Cong. (2005); *Streamlined Sales Tax Simplification Act*, S.2153, 109th Cong. (2005); *Streamlined Sales Tax Simplification Act*, S. 2153, 109th Cong. (2005); *Sales Tax Fairness and Simplification Act*, S. 34, H.R. 3396, 110th Cong. (2007). In the absence of action by Congress, the states remain free to develop solutions in the area of tax administration. "Under our federal system, <u>the determination is to be made by state legislatures in the</u>

---

[8] DMA cites *Fulton* and *Granholm v. Heald*, U.S. 460, 475 (2005), to argue that a state may not demand a company "accept regulatory burdens as if it were a resident of the state as a condition for receiving equal treatment." Resp., p.15. Neither citations support this argument. *Fulton* rejected the notion that a proper effect of the challenged tax was to encourage out-of-state firms to do business in-state to be eligible for the deduction. 516 U.S. at 333 n.3. *Granholm* rejected an in-state presence requirement for wineries. 544 U.S. at 474-5. Rather, the Tenth Circuit has held that "when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction by the foreign jurisdiction over that entity is proper." *Quik Payday, Inc*, 549 F.3d 1302

<u>first instance</u> and, if necessary, by Congress, when particular state taxes are thought to be contrary to federal interests." *Commonwealth Edison, Co. v. Mont.*, 453 U.S. 609, 628 (emphasis added); *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 350 (1977) ("in the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it.") (internal quotations omitted).  In the absence of federal legislation, the Court should decline DMA's invitation to intervene by extending the *Quill* safe harbor.

## IV. CONCLUSION

WHEREFORE, Defendant respectfully requests the Court enter an order granting partial summary judgment in her favor on Plaintiff's Counts I and II.

Respectfully submitted this 10th day of June, 2011.

JOHN W. SUTHERS
Attorney General

*s/ Melanie J. Snyder*
MELANIE J. SNYDER, 35835*
Assistant Attorney General
STEPHANIE LINDQUIST SCOVILLE, 31182*
JACK M. WESOKY, 6001*
Senior Assistant Attorneys General
1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5273 (Snyder)
Telephone:  (303) 866-5241 (Scoville)
Telephone:  (303) 866-5512 (Wesoky)
FAX:  (303) 866-5395
E-Mail:  melanie.snyder@state.co.us
E-Mail:  stephanie.scoville@state.co.us
E-Mail:  jack.wesoky@state.co.us

*Counsel of Record
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 10, 2011, I electronically filed the foregoing **Defendant's Reply in Support of Motion for Partial Summary Judgment— Counts I and II (Commerce Clause)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

gisaacson@branlaw.com
mschaefer@branlaw.com

*Attorneys for Plaintiff*

              *s/ Melanie J. Snyder*

*cc: Via interoffice mail*
Ms. Roxy Huber
Executive Director
Colorado Department of Revenue
1375 Sherman Street
Denver, Colorado  80261