**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-01546-REB-CBS

THE DIRECT MARKETING ASSOCIATION,

      Plaintiff,

v.

ROXY HUBER, in her capacity as Executive Director, Colorado Department of
Revenue,

      Defendant.

---

**ORDER CONCERNING CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

      This matter is before me on the parties' cross motions for summary judgment: (1)
**Plaintiff's Motion for Summary Judgment as to Counts I and II Alleging Violations
of the Commerce Clause** [#98][1]; and (2) **Defendant's Motion for Partial Summary
Judgment - Counts I and II (Commerce Clause)** [#99], both filed May 6, 2011.  The
parties both filed responses [#100 & #101] and replies [#102 & 103].[2]  I grant the
plaintiff's motion, and I deny the defendant's motion.

**I.  JURISDICTION & STANDING**

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

---

[1] "[#98]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

[2] The issues raised by and inherent to the cross-motions for summary judgment are fully briefed,
obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the
briefs. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th
Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of
documents submitted by parties).

Although the defendant challenges the plaintiff's standing to pursue certain of its claims, the defendant does not challenge the plaintiff's standing to present its claims under the Commerce Clause. I conclude that the plaintiff has standing on these claims. The parties seek summary judgment only on the claims under the Commerce Clause. Therefore, I need not and do not address standing further.

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A movant who bears the burden of proof at trial must submit evidence to establish every essential element of its claim. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). Once the motion has been supported properly, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165

F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).

### III.  BACKGROUND

The plaintiff, The Direct Marketing Association (DMA), asks the court to enter a permanent injunction enjoining the defendant from enforcing the notice and reporting obligations imposed on many out-of-state retailers under a Colorado law, now codified at §39-21-112(3.5), C.R.S. (2010) (the Act), and under the concomitant regulations promulgated by the Colorado Department of Revenue (DOR) to implement the Act, 1 Colo. Code Regs. § 201-1:39-21-112.3.5 (2010) (the Regulations).[3]  In general, the Act and Regulations require retailers that sell products to customers in Colorado, but do not collect and remit Colorado sales tax on those transactions, to report certain information about the customers' purchases from the retailer to each customer and to the Colorado Department of Revenue.

The DMA is an association of businesses and organizations that market products directly to consumers via catalogs, magazine and newspaper advertisements, broadcast media, and the internet.  The Act and the Regulations will affect many members of the DMA.  The defendant, Roxy Huber, is the Executive Director of the Colorado Department of Revenue, the state agency charged with enforcing the Act and the Regulations.  The DMA alleges that certain requirements of the Act and the enabling Regulations violate the constitutional rights of many members of the DMA.  The present motions concern the contention of the DMA that the Act and the Regulations violate the rights of many of its members under the Commerce Clause of the United States Constitution.  **U.S. Const.** art. I, § 8.

---

[3]  Copies of the Act and the Regulations are attached to the DMA's motion for preliminary injunction [#15] as Exhibits 1 and 2.

The Act and the Regulations establish three new obligations for retailers who sell products to customers in Colorado, but who do not collect and remit Colorado sales tax on those transactions.  First, such retailers must notify their Colorado customers that the retailer does not collect Colorado sales tax and, as a result, the purchaser is obligated to self-report and pay use tax to the DOR (Transactional Notice).

Second, such retailers must provide each of their Colorado customers an annual report detailing that customer's purchases from the retailer in the previous calendar year, informing the customer that he or she is obligated to report and pay use tax on such purchases, and informing the customer that the retailer is required by law to report the customer's name and the total amount of the customer's purchases from that retailer to the DOR (Annual Purchase Summary).  The Annual Purchase Summary must be provided only to customers who spend more than 500 dollars in the calendar year with the particular reporting retailer.

Third, such retailers must provide the DOR with an annual report concerning each of the retailer's Colorado customers stating the name, billing address, shipping addresses, and the total amount of purchases from the retailer by each of the retailer's Colorado customers (Customer Information Report).  The Law exempts retailers with less than 100,000 dollars in gross annual sales in Colorado.

The Act and the Regulations are tools for DOR to enforce and collect the long-existing Colorado sales and use tax. Colorado enacted a sales tax in 1935 and a complementary use tax in 1937. Use tax is due on the storage, usage, or consumption of tangible property within Colorado when sales tax has not been paid.  §39-26-202, C.R.S.  Of course, the use tax is designed to capture sales tax revenue that is lost when sales are diverted out of state or are accomplished remotely, as through catalog

purchases or via the Internet. The obligation to pay the sales or use tax is on the consumer. *J.A. Tobin Construction Co. v. Weed*, 407 P.2d 350, 353 (Colo. 1965).

Ultimately, the DMA seeks a declaration that the Act and the Regulations are unconstitutional because they violate the Commerce Clause. On the same basis, the DMA seeks a permanent injunction enjoining enforcement of the Act and the Regulations.

## IV. THE DORMANT COMMERCE CLAUSE

The Commerce Clause expressly authorizes Congress to "regulate Commerce with foreign Nations, and among the several States." *U.S. Const.* art. I, § 8. The Commerce Clause long has been read as having a negative or dormant sweep as well. The clause, "'by its own force' prohibits certain state actions that interfere with interstate commerce." *Quill Corp. v. North Dakota By and Through Heitkamp*, 504 U.S. 298, 309 (1992) (quoting *South Carolina State Highway Dept. v. Barnwell Brothers, Inc.*, 303 U.S. 177, 185 (1938)). The negative Commerce Clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Or.*, 511 U.S. 93, 98 (1994).

The DMA asserts two claims under the dormant Commerce Clause. First, the DMA contends that the Act and the Regulations discriminate impermissibly against interstate commerce. I will refer to this claim as the discrimination claim. Second, the DMA contends that the Act and the Regulations impermissibly impose undue burdens on interstate commerce. I will refer to this claim as the undue burden claim.

## V. DISCRIMINATION CLAIM

A state law violates the discrimination aspect of the dormant Commerce Clause if

it discriminates against interstate commerce either facially or in practical effect.

*Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979). The United States Supreme Court

has adopted a two tier approach to analyzing discrimination claims.  *Brown-Forman*

*Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578 - 579 (1986).  At the

first tier, "(w)hen a state statute directly regulates or discriminates against interstate

commerce, or when its effect is to favor in-state economic interests over out-of-state

interests, we have generally struck down the statute without further inquiry."  *Id*. at 579.

When "a statute has only indirect effects on interstate commerce and regulates

evenhandedly, we have examined whether the State's interest is legitimate and whether

the burden on interstate commerce clearly exceeds the local benefits."  *Id*. (*citing Pike*

*v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).  The second tier of the analysis is

the balancing of a state's legitimate interests with the burden on interstate commerce

under the *Pike* analysis.

> We have also recognized that there is no clear line separating the
> category of state regulation that is virtually *per se* invalid under the
> Commerce Clause, and the category subject to the *Pike v. Bruce Church*
> balancing approach. In either situation the critical consideration is the
> overall effect of the statute on both local and interstate activity.

*Id*.; *see also Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1039 - 1044 (10th Cir. 2009)

(describing and applying the two tier analysis).

Under the dormant Commerce Clause, a law discriminates against interstate

commerce if it imposes "differential treatment of in-state and out-of-state economic

interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc.*

*v. Department of Environmental Quality of State of Or.*, 511 U.S. 93, 99 (1994).   In

*Oregon Waste Systems*, for example, the Supreme Court concluded that Oregon's two

dollar and twenty-five cent per ton surcharge on out-of-state solid waste brought into

Oregon for disposal when compared to the eighty-five cents per ton surcharge imposed on in-state solid waste was discriminatory in violation of the dormant Commerce Clause. *Id*. at 100.  The ***Oregon Waste Systems*** Court noted that the degree of a differential burden or charge on interstate commerce "is of no relevance to the determination whether a State has discriminated against interstate commerce." *Id*. at 100 n. 4 (internal quotation and citation omitted).  "If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Id*. at 99 (citations omitted).  In ***Oregon Waste Systems***, the court found the statute in question to be facially discriminatory and "virtually *per se*" invalid.  *Id*. at 100.  Facing that conclusion, the Court determined that the statute must be invalidated unless the state can show that the statute "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id*. at 101 (citation and internal quotation omitted).  Justifications for discriminatory restrictions on commerce must pass the strictest scrutiny.  *Id*.  Strict scrutiny leaves few survivors.  ***City of Los Angeles v. Alameda Books, Inc.***, 535 U.S. 425, 455 (2002).

On their face the Act and the Regulations do not distinguish between in-state retailers (those with a physical presence – a brick and mortar presence –  in the state) and out-of-state retailers (those with no physical presence in the state who make sales to customers in the state). Rather, the Act focuses on the distinction between retailers who collect Colorado sales tax and those who do not collect Colorado sales tax.  See, e.g., §39-21-112, C.R.S.  As the defendant notes, this distinction between collecting and non-collecting retailers is driven by the Commerce Clause law established in ***Quill Corp. v. North Dakota By and Through Heitkamp***, 504 U.S. 298, 309 (1992) and related cases.  *Defendant's motion* [#99], p. 14.

*Quill* concerned an undue burden claim under the dormant Commerce Clause, but its holding drives the analysis of the Act and the Regulations in relation to the plaintiff's discrimination claim.  Under the law established in *Quill* and related cases, Colorado may not impose any duty to collect sales and use taxes on out-of-state retailers whose only connection to Colorado is by common carrier or the U.S. mail. *Quill*, 504 U.S. at 315.  Rather, a duty to collect such taxes may be imposed only on retailers who have a physical presence in the state.  *Id*. at 317 - 318.  Thus, out-of-state retailers that do not have a physical presence in Colorado are not obligated to collect and remit sales tax on their sales to customers in Colorado.  According to the plaintiff, the Act and the Regulations discriminate impermissibly against this group of out-of-state retailers by imposing on those retailers burdens that are not be borne by in-state retailers.

## A.  FIRST TIER ANALYSIS

According to the defendant, the Act and the Regulations do not discriminate against out-of state-retailers and interstate commerce because, reading the plain language of the Act and the Regulations, they both apply to all retailers, in-state and out-of-state, that sell to Colorado purchasers but do not collect Colorado sales tax. Applying the law established by the Supreme Court, I conclude that the veil provided by the words of the Act and the Regulations is too thin to support the conclusion that the Act and the Regulations regulate in-state and out-of-state retailers even-handedly.  This is true because, viewed in the context of *Quill* and provisions of Colorado law that require all in-state retailers to collect sales tax, I am constrained to conclude that the Act and the Regulations directly regulate and discriminate against out-of-state retailers and, therefore, interstate commerce.

Under Colorado law, all retailers doing business in Colorado and selling to Colorado purchasers must obtain a sales tax license and must collect and remit the sales tax applicable to each sale.  §§39-26-103, 104, 106, 204, C.R.S.  Civil and criminal penalties may be imposed on a retailer who fails to comply.  §§39-21-118(2), 39-26-103(1)(a), (4), C.R.S.  Under **Quill** and related law, these duties and penalties cannot be imposed on out-of-state retailers whose only connection to Colorado is by common carrier or the U.S. mail.  504 U.S. at 315.  Thus, under Colorado law, the obligation to collect and remit sales tax is imposed only on in-state retailers, retailers with a physical presence in the state.  Under the Act and the Regulations, retailers who collect and remit Colorado sales tax are not obligated to provide the Transactional Notice, the Annual Purchase Summary, and the Customer Information Report otherwise required by the Act and the Regulations. §39-21-112, C.R.S.  Assuming they comply with the mandates of Colorado law, in-state retailers are not subject to the Act and the Regulations.[4]

Explicitly, the Act defines those who are subject to its reporting requirements as "any retailer that does not collect Colorado sales tax."  §39-21-112, C.R.S.  Given the circumstances described above, only out-of state retailers must provide the Transaction Notice and the Annual Purchase Summary to their customers.  Only out-of state retailers must provide the Customer Information Report to the state.[5]  The Act and the

---

[4]  Evidence submitted by the defendant indicates that the Tax Compliance Section of the Colorado Department of Revenue discovers each year only a very small number of Colorado retailers who are not complying with their legal obligation to collect and remit sales tax.  *Response to motion for preliminary injunction* [#50], Exhibit 16 (Reiser Affidavit).  The existence of this inconsequential number of non-compliant in-state retailers does not change the Commerce Clause analysis.

[5]  As noted in the background section above, these requirements do not apply to retailers whose sales to a particular customer are below a certain level, or whose gross sales in Colorado during a calendar year are below a certain level.  Even with these limitations, the Act and the Regulations will be applicable to many out-of-state retailers.  These limitations of the Act and the Regulations are not relevant

Regulations impose a notice and reporting burden on out-of-state retailers and that burden is not imposed on in-state retailers.  It is undisputed that compliance with the Act and the Regulations would impose some burdens, including costs of compliance and possibly lost sales, on out-of-state retailers.

The defendant argues that demonstrating differential treatment alone is not sufficient to prove that the Act and the Regulations are discriminatory.  *Defendant's response* [#101], pp. 14 - 15.  That is true, but only when analyzing a statute that regulates evenhandedly and has only indirect effects on interstate commerce.  For example, in **Kleinsmith** the court determined that the statute in question did not discriminate on its face and, therefore, proceeded to determine if the evidence established that the statute discriminated in its practical effect.  **Kleinsmith**, 571 F.3d 1033, 1040 - 1041.  In that context, the court concluded that "(n)ot every benefit or burden will suffice [to show discriminatory effect] –  only one that alters the competitive balance between in-state and out-of-state firms." **Id**. at 1041.  However, when considering a regulatory scheme that does not regulate evenhandedly between in-state and out-of-state retailers, like the Act and the Regulations, the degree of a differential burden or charge on interstate commerce "is of no relevance to the determination whether a State has discriminated against interstate commerce." **Oregon Waste Systems**, 511 U.S. at 100 n. 4 (internal quotation and citation omitted).

The defendant argues also that the Act and the Regulations do not discriminate because retailers subject to the Act and the Regulations, by definition out-of-state retailers, may choose between two alternatives: comply with the Act and the

---

to the first tier discrimination analysis.

Regulations or voluntarily collect and remit Colorado sales tax.  *Defendant's motion* [#99], pp. 15 - 16.  Of course, the choice to collect and remit imposes the same burden faced by in-state retailers.  According to the defendant, "there can be no discrimination against non-collecting out-of-state retailers who have a choice to be subject to precisely the same burdens as in-state retailers who do not enjoy the same choice."  *Defendant's response* [#101], p. 17.

The state's creation of this option does not resolve the problem.  Under ***Quill*** Colorado may not condition an out-of-state retailer's reliance on its rights on a requirement that the retailer accept a different burden, particularly when that burden is unique to out-of-state retailers. ***See Bendix Autolite Corp. v. Midwesco Enterprises, Inc.***, 486 U.S. 888, 893 (1988).  Stated differently, without the Act and the Regulations, out-of-state retailers did not have the burden of making this choice.  The Act and the Regulations impose the burden of this choice on out-of-state retailers but not on in-state retailers.  The choice does not eliminate, but instead, highlights the discrimination.

Regardless of the state's salutary local purposes, its enactment of a statutory scheme and concomitant regulations that produce, in effect,  a geographic distinction between in-state and out-of-state retailers discriminates patently against interstate commerce.  Given that patent discrimination, the Act and the Regulations violate the Commerce Clause, unless the defendant can satisfy the requirements of the second tier of the discrimination analysis.

## B.  SECOND TIER ANALYSIS

Under ***Oregon Waste***, the second tier of the analysis requires a determination of whether the Act and the Regulations advance a legitimate local purpose that cannot be served adequately by reasonable nondiscriminatory alternatives.  ***Oregon Waste***, 511

U.S. at 101.  When discrimination against commerce is demonstrated, "the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979).  The *Oregon Waste* Court undertook this analysis, despite its discussion of *per se* invalidity when a law is facially discriminatory.  *Id*.  Justifications for discriminatory restrictions on commerce must pass the strictest scrutiny.  *Id*.

The defendant argues that the State of Colorado has three important interests at stake.  First, the Act and the Regulations enhance the DOR's ability to recover sales and use tax revenue due to the state.[6]  Second, enforcement of sales and use taxes promotes the fair distribution of the cost of government.  Third, promoting the enforcement of tax law promotes respect for and compliance with the tax laws.  Without question, these are legitimate state interests and purposes.

According to the plaintiff, there are at least three reasonable nondiscriminatory alternatives to serve these purposes.  First, some states include a line on their resident income tax returns on which residents report use tax due.  Second, the DOR could increase audits of business consumers.  Third, consumer education and notification programs may increase compliance with use tax obligations.  *Plaintiff's motion* [#98], p. 9.

Relying on its contention that the Act and the Regulations are not discriminatory, the defendant spends little time addressing reasonable nondiscriminatory alternatives.

---

[6]  The defendant argues that the Law and the Regulations also enhances DOR's ability to recover sales taxes.  The notice and reporting obligations at issue all relay information about the use tax liability of a Colorado resident who buys something from an affected out-of-state retailer.  Collection of sales tax is enhanced only to the extent the regulatory scheme encourages out-of-state retailers to collect and remit sales tax rather than comply with the Law and the Regulations.

*Defendant's response* [#101], p. 12 n. 4.  According to the defendant, Colorado has not previously included a line on its income tax returns for reporting use tax.  *Defendant's response* [#101], pp. 4 - 5.  However, between 1966 and 1974, the DOR included a consumer use tax return with income tax return forms.  *Id.*  That practice was discontinued because the amount of tax collected did not justify the printing expense.  *Id.*

The record contains essentially no evidence to show that the legitimate interests advanced by the defendant cannot be served adequately by reasonable nondiscriminatory alternatives.  Therefore, the defendant has not met its very high burden of proof under the strict scrutiny standard applicable in the second tier of the Commerce Clause discrimination analysis.

## C.  CONCLUSION

***Quill*** puts states like Colorado in a difficult position.  The state cannot require out-of-state retailers, retailers with no physical presence in the state, to collect and remit sales tax on sales those retailers make to residents of Colorado.  Residents who make purchases from those retailers are obligated to pay use tax on those purchases, but enforcing the use tax is significantly more difficult than enforcing the sales tax.  Seeking to enhance enforcement of the use tax on those who make purchases from out-of-state retailers, a state understandably looks to the out-of-state retailers for key information that can enhance enforcement.  However, if the state has a mandatory sales tax system, as does Colorado, enforcing a reporting requirement on out-of-state retailers will, by definition, discriminate against the out-of-state retailers by imposing unique burdens on those retailers.  Such a system imposes a differential burden on out-of-state retailers because the different burden is imposed precisely because the retailer is an

out-of-state retailer entitled to the protection of *Quill*.  *Quill* creates the in-state versus out-of-state distinction, and the dormant Commerce Clause prohibits differential treatment based on that distinction.  Only a change in the law by the Supreme Court or action by Congress can change this situation.  *Quill*, 504 U.S. at 318 ("Congress is now free to decide whether, when, and to what extent the States may burden interstate mail-order concerns with a duty to collect use taxes.")

Viewing the undisputed facts in the record in the light most favorable to the defendant, I conclude that the Act, codified at §39-21-112(3.5), C.R.S. (2010), and the concomitant Regulations promulgated by the Colorado Department of Revenue (DOR) to implement the Act, 1 Colo. Code Regs. § 201-1:39-21-112.3.5 (2010), are unconstitutional under the dormant Commerce Clause.  That is true because the Act and the Regulations directly regulate and discriminate against out-of-state retailers and, therefore, interstate commerce.  That discrimination triggers the virtually per se rule of facial invalidity.  The defendant has not surmounted that facial invalidity by showing that the Act and the Regulations serve legitimate state purposes that cannot be served adequately by reasonable nondiscriminatory alternatives.  Thus, the plaintiff is entitled to summary judgment on its first claim for relief for discrimination under the Commerce Clause.  Obversely, the defendant's motion for summary judgment on this claim must be denied.

## VI.  UNDUE BURDEN CLAIM

In its second claim for relief, the DMA alleges that the Act and the Regulations impose improper and burdensome regulations on interstate commerce.  The DMA relies heavily on the law established in *Quill Corp. v. North Dakota By and Through Heitkamp*, 504 U.S. 298, 309 (1992) to support its undue burden claim.  To rehearse, in

*Quill*, the Court concluded that undue burdens on interstate commerce sometimes may be avoided by the application of a bright line rule.  According to *Quill*, the dormant Commerce Clause and the Court's earlier holding in *National Bellas Hess, Inc. v. Department of Revenue of State of Ill.*, 386 U.S. 753, 758 (1967) create a bright line rule with regard to the collection of sales and use tax.  This law creates a "safe harbor for vendors whose only connection with customers in the [taxing] State is by common carrier or the United States mail.  Under *Bellas Hess*, such vendors are free from state-imposed duties to collect sales and use taxes."  *Quill*, 504 U.S. at 315 (internal quotation omitted).  Many members of the DMA are vendors that have no physical presence in Colorado and whose only connection with Colorado customers is by common carrier, the United States mail, and/or the internet.

The *Quill* Court examined and applied the quadripartite test enunciated in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).  Under *Complete Auto*, a state tax will survive a Commerce Clause challenge as long as the tax (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state.  *Complete Auto*, 430 U.S. at 279.  *Complete Auto* rejected the previously applied distinction between direct and indirect taxes on interstate commerce "because that formalism allowed the validity of statutes to hinge on legal terminology, draftsmanship and phraseology."  *Quill*, 430 U.S. at 310 (internal quotation, citation, and brackets omitted).  The *Complete Auto* test emphasizes the importance of looking past the formal language of a tax statue to its practical effect.  *Quill*, 504 U.S. at 310.  The first and fourth prongs of the *Complete*

*Auto* test "limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce." *Quill*, 504 U.S. at 313.  The safe harbor established in *Quill* is a meant to delineate and define the limits of the substantial nexus requirement of the *Complete Auto* test to ensure that a state tax law does not impose an undue burden on interstate commerce. *Id*.

As the defendant notes, the Act and the Regulations do not require out-of-state retailers to collect sales and use taxes.  However, they do require out-of-state retailers to gather, maintain, and report information, and to provide notices to their Colorado customers and to the DOR.  Those notices are required to provide information about the out-of-state retailers and their Colorado customers.  The sole purpose of these requirements is to enhance the collection of use taxes by the State of Colorado. The defendant asserts no other reason to require such reporting.

Correctly, the defendant notes that the holding in *Quill* has a very "narrow focus on sales and use taxes." *Capital One Bank v. Commissioner of Revenue*, 899 N.E.2d 76, 84 (Mass. 2009).  When addressing taxes and regulations outside of that narrow focus, many cases hold that *Quill's* narrow focus should not be expanded into other areas. *See, e.g., Capital One* 899 N.E.2d at 86 (*Quill* dormant Commerce Clause standard is not applicable to financial institution excise taxes); *American Target Advertising, Inc. v. Giani*,199 F.3d 1241, 1255 (10th Cir. 2000) (narrow analysis of *Quill* not applicable to law requiring all professional fund raising consultants to register).

In this case, the burden of the notice and reporting obligations imposed by the Act and the Regulations is somewhat different than the burden of collecting and remitting sales and use taxes.  However, the sole purpose of the burdens imposed by the Act and the Regulations is the ultimate collection of use taxes when sales taxes

16

cannot be colleted.  Looking to the practical effect of the Act and the Regulations, as *Quill* instructs, I conclude that the burdens imposed by the Act and the Regulations are inextricably related in kind and purpose to the burdens condemned in *Quill*.  The Act and the Regulations impose these burdens on out-of-state retailers who have no physical presence in Colorado and no connection with Colorado customers other than by common carrier, the United States mail, and the internet. Those retailers are protected from such burdens on interstate commerce by the safe-harbor established in *Quill*.

Viewing the undisputed facts in the record in the light most favorable to the defendant, I conclude that the Act, codified at §39-21-112(3.5), C.R.S. (2010), and the concomitant Regulations promulgated by the Colorado Department of Revenue (DOR) to implement the Act, 1 Colo. Code Regs. § 201-1:39-21-112.3.5 (2010), are unconstitutional under the dormant Commerce Clause.  That is true because, under the standard established in *Quill*, a state law that imposes a use tax collection burden on a retailer with no physical presence in the state causes an undue burden on interstate commerce.  The burdens imposed by the Act and the Regulations are inextricably related in kind and purpose to the burdens condemned in *Quill*.  Thus, the Act and the Regulations impose an undue burden on interstate commerce.  The plaintiff is entitled to summary judgment on their second claim for relief, asserting an undue burden claim under the Commerce Clause.  Thus, the defendant's motion for summary judgment on this claim must be denied.

### VII.  DECLARATORY & INJUNCTIVE RELIEF

#### A.  DECLARATORY RELIEF

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 - 2202, the court may

enter a judgment declaring "the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. Such a judgment or decree is reviewable as a final judgment. *Id.* The DMA seeks a declaration that the Act and the Regulations are unconstitutional. The DMA has established that the Act and the Regulations are unconstitutional and, therefore, the DMA is entitled to a declaratory judgment to that effect.

## B. INJUNCTIVE RELIEF

A party may obtain a permanent injunction if it proves: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir.2003); *See also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007). The DMA has established each of these elements.

1. Success on the Merits. In this order, the court grants summary judgment to DMA on its two claims asserting that the Act and the Regulations violate the Commerce Clause. With that, the DMA has achieved success on the merits of these two claims.

2. Irreparable Harm. When the impairment of a constitutional right is at issue, no further showing of irreparable harm is necessary. *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). In a recent case, the United States Court of Appeals for the Tenth Circuit indicated that violation of Commerce Clause rights constitutes irreparable injury. *American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 2010) (citing *American Libraries Ass'n v. Pataki*, 969 F.Supp. 160, 168 - 183 (S.D.N.Y. 1997)). Although the Tenth Circuit's statement in *Johnson* is dicta, I conclude that

18

violation of the constitutional rights of the members of DMA under the Commerce Clause constitutes irreparable injury.  Thus. the DMA has established irreparable harm.

3.  Balance of Harms & Public Interest.  When considering an injunction against a law that has been found to be unconstitutional, the balance of harms and public interest considerations largely collapse into each other.  The Colorado Department of Revenue does not have a legitimate interest in enforcing a law that is unconstitutional.  ***Chamber of Commerce of U.S. v. Edmondson***, 594 F.3d 742, 771 (10th Cir. 2010).  Moreover, "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law."  ***Id***.  Both of these factors have been established.

4.  Conclusion.  The DMA has established the four elements necessary to support the entry of a permanent injunction.  The court will enter an order permanently enjoining enforcement of the Act and the Regulations against retailers who have no physical presence in the state of Colorado.

## VII.  CONCLUSION & ORDERS

The Act and the Regulations violate the Commerce Clause and, therefore, are unconstitutional.  This is true for two reasons.  First, the Act and the Regulations directly regulate and discriminate against out-of-state retailers and interstate commerce.  That discrimination triggers the virtually per se rule of facial invalidity.  The defendant has not overcome this facial invalidity by showing that the Act and the Regulations serve legitimate state purposes that cannot be served adequately by reasonable nondiscriminatory alternatives.  Second, the Act and the Regulations impose an undue burden on interstate commerce under the standard established in ***Quill Corp. v. North Dakota By and Through Heitkamp***, 504 U.S. 298, 309 (1992).

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Plaintiff's Motion for Summary Judgment as to Counts I and II Alleging Violations of the Commerce Clause** [#98] filed May 6, 2011, is **GRANTED**;

2.  That the **Defendant's Motion for Partial Summary Judgment - Counts I and II (Commerce Clause)** [#99] filed May 6, 2011, is **DENIED**;

3.  That under 28 U.S.C. § 2201, the plaintiff, The Direct Marketing Association, is entitled to a judgment declaring that the provisions of §39-21-112(3.5), C.R.S. (2010) (the Act), and the regulations promulgated thereunder, 1 Colo. Code Regs. § 201-1:39-21-112.3.5 (2010) (the Regulations), are unconstitutional to the extent that the Act and the Regulations require

   A.  that a retailer must notify their Colorado customers that the retailer does not collect Colorado sales tax and, as a result, the purchaser is obligated to self-report and pay use tax to the Colorado Department of Revenue (Transactional Notice); and

   B.  that a retailer must provide to each of its Colorado customers an annual report detailing that customer's purchases from the retailer in the previous calendar year, informing the customer that he or she is obligated to report and pay use tax on such purchases, and informing the customer that the retailer is required by law to report the customer's name and the total amount of the customer's purchases from that retailer to the Colorado Department of Revenue (Annual Purchase Summary); and

   C.  that a retailer must provide the Colorado Department of Revenue with an annual report concerning each of the retailer's Colorado customers stating the name, billing address, shipping addresses, and the

total amount of purchases from the retailer by each of the retailer's

Colorado customers (Customer Information Report);

4.   That effective forthwith defendant Roxy Huber, in her capacity as Executive

Director, Colorado Department of Revenue, together with her agents, servants,

employees, attorneys-in-fact, or anyone acting on their behalf, are **PERMANENTLY**

**ENJOINED AND RESTRAINED** from enforcing the provisions of §39-21-112(3.5),

C.R.S. (2010) (the Act) and the regulations promulgated thereunder, 1 Colo. Code

Regs. § 201-1:39-21-112.3.5 (2010) (the Regulations), to the extent that the Act and the

Regulations require

A.   that a retailer must notify their Colorado customers that the

retailer does not collect Colorado sales tax and, as a result, the purchaser

is obligated to self-report and pay use tax to the Colorado Department of

Revenue (Transactional Notice); and

B.   that a retailer must provide to each of its Colorado customers an

annual report detailing that customer's purchases from the retailer in the

previous calendar year, informing the customer that he or she is obligated

to report and pay use tax on such purchases, and informing the customer

that the retailer is required by law to report the customer's name and the

total amount of the customer's purchases from that retailer to the Colorado

Department of Revenue (Annual Purchase Summary); and

C.   that a retailer must provide the Colorado Department of

Revenue with an annual report concerning each of the retailer's Colorado

customers stating the name, billing address, shipping addresses, and the

total amount of purchases from the retailer by each of the retailer's

Colorado customers (Customer Information Report);

5.  That this injunction **SHALL LIMIT** the enforcement of the Act and the
Regulations against retailers who sell to customers in Colorado, but who have no
physical presence in the State of Colorado and whose only connection to the State of
Colorado is by common carrier or the United States Mail; and

6.  That the court will address in a separate order the parties' request that the
court certify this order as a final judgment under FED. R. CIV. P. 54(b).

Dated March 30, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge